# EXHIBIT A



1  MARC J. FAGEL (Cal. Bar No. 154425)
   CARY S. ROBNETT (Cal. Bar No. 160585)
2  ROBERT S. LEACH (Cal. Bar No. 196191)
     leachr@sec.gov
3  ERIN E. SCHNEIDER (Cal. Bar No. 216114)
     schneidere@sec.gov
4
   Attorneys for Plaintiff
5  SECURITIES AND EXCHANGE COMMISSION
   44 Montgomery Street, Suite 2600
6  San Francisco, California 94104
   Telephone: (415) 705-2500
7  Facsimile: (415) 705-2501

8

9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12                  SAN JOSE DIVISION

13

14  SECURITIES AND EXCHANGE COMMISSION,    Case No. **07        6121**

15              Plaintiff,
                                           COMPLAINT
16         v.

17  MAXIM INTEGRATED PRODUCTS, INC. and
    JOHN F. GIFFORD,
18
                Defendants.
19

20
       Plaintiff Securities and Exchange Commission (the "Commission") alleges:
21
                    **SUMMARY OF THE ACTION**
22
       1.    From at least 2000 through 2005, Maxim Integrated Products, Inc. ("Maxim" or the
23
    "Company"), a Sunnyvale, California semiconductor company, engaged in a scheme to illegally
24
    backdate stock options granted to Maxim employees and directors, concealing millions of dollars in
25
    expenses from investors and significantly overstating the Company's income. Defendant John F.
26
    Gifford, Maxim's former Chief Executive Officer, was aware of instances of backdating, and should
27
    have known that the Company did not properly account for or accurately disclose its resulting stock
28

                                    1

1 | option compensation expenses.

2 |     2.    Under well-settled accounting principles in effect during the relevant period, Maxim
3 | did not need to record an expense for options granted to employees with an exercise price equal to the
4 | current market price ("at-the-money"), while the Company was required to record an expense in its
5 | financial statements for any options granted with an exercise price below the current market price
6 | ("in-the-money"). In order to provide Maxim's employees and outside directors with valuable "in-
7 | the-money" options without recording an expense, Maxim routinely backdated stock options to dates
8 | corresponding to historical lows in Maxim's stock price, and falsified records to make it appear as
9 | though the options were granted "at-the-money." For ten consecutive quarters, from the second
10 | quarter of fiscal year 2002 to the fourth quarter of fiscal year 2004, Maxim granted options to current
11 | employees with an exercise price equal to the lowest price of the quarter. Maxim then fraudulently
12 | failed to record compensation expenses for those options, thus overstating its income by millions of
13 | dollars and falsely representing in certain filings that it had incurred no expense for option grants.

14 |     3.    Gifford several times authorized the granting of options on purported dates that had
15 | been selected with hindsight, which resulted in the issuance of undisclosed "in-the-money" options to
16 | Maxim employees and directors. Gifford was aware there were accounting implications for granting
17 | "in-the-money" options. He instructed other Maxim executives to record compensation expenses if
18 | they were material and/or consult with Maxim's outside auditors. Gifford should have known that
19 | the Company was failing to report expenses for these "in-the-money" stock options and was falsely
20 | reporting that it only granted options at fair market value.

21 |     4.    The Commission seeks an order enjoining Maxim and Gifford from future violations
22 | of the securities laws, requiring Gifford to pay disgorgement with prejudgment interest, requiring
23 | Gifford to pay a civil monetary penalty, and providing other appropriate relief.

24 | **JURISDICTION, VENUE, AND INTRADISTRICT ASSIGMENT**

25 |     5.    The Commission brings this action pursuant to Sections 20(b) and 20(d) of the
26 | Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b) and 77t(d)] and Sections 21(d) and
27 | 21(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d) and 78u(e)].

28 |

SEC v. MAXIM INTEGRATED PRODUCTS, INC., et al.
COMPLAINT

1    6.    This Court has jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the

2    Securities Act [15 U.S.C. §§ 77t(b) and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange

3    Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

4    7.    Venue is proper in this district pursuant to Section 22 of the Securities Act [15 U.S.C.

5    § 77v] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].  Maxim's principal place of business

6    is in the Northern District of California.  Gifford resides in the Northern District of California.  Acts

7    or transactions constituting violations of the federal securities laws occurred in this district.

8    8.    Assignment to the San Jose Division is appropriate pursuant to Civil Local Rules 3-

9    2(c) and 3-2(d) because acts and omissions giving rise to the Commission's claims occurred, among

10    other places in this district, in Santa Clara County.

11    **DEFENDANTS**

12    9.    Maxim is a Sunnyvale, California corporation that makes integrated circuits.  At all

13    relevant times, Maxim's common stock was registered with the Commission pursuant to Section

14    12(g) of the Exchange Act and traded on the NASDAQ National Market under the symbol "MXIM."

15    At all times relevant to this action, Maxim used a fiscal year that ended on the last Saturday of June.

16    10.    John F. Gifford, age 67, resides in Menlo Park, California.  Gifford served as Maxim's

17    President, Chief Executive Officer, and Chairman of the Board from April 1983 through December

18    2006.

19    **FACTUAL ALLEGATIONS**

20    **A.    Maxim Used Stock Options Liberally To Recruit And Retain Employees.**

21    11.    During the relevant period, Maxim regularly used employee stock options as a form of

22    compensation to recruit, retain, and incentivize key employees.  Maxim also used stock options to

23    compensate members of its Board of Directors.  Each option gave the grantee the right to buy Maxim

24    common stock from the Company at a set price, called the "exercise" or "strike" price, on a future

25    date after the option vested.  The option was "in-the-money" when granted if the trading price of

26    Maxim common stock on the date of the grant exceeded the option's exercise price.  The option was

27

28

1  "at-the-money" when granted if the trading price of Maxim's common stock on the date of the grant

2  and the exercise price were the same.

3      12.    Stock options were the most important part of Maxim's compensation mix. Maxim

4  generally paid its officers and technical employees lower salaries than its peers; it competed against

5  other companies for employees by offering the potential gains provided by stock options. Maxim's

6  ability to recruit and retain the engineers who designed and produced its new products was closely

7  tied to its stock option program. In addition, Maxim attributed its earnings growth and positive

8  stockholder returns in part to its option practices. The Company repeatedly emphasized these facts in

9  communications with its shareholders.

10     13.    Maxim granted options to almost all new employees when they were hired. Maxim

11  also granted employees additional options every year as part of their annual performance review.

12  Because it granted so many options, Maxim had to ask shareholders to approve increases in the

13  number of shares available for issuance under its primary stock option plan every year from 1999

14  through 2005.

15     14.    Maxim's primary stock option plan authorized it to grant both "incentive" stock

16  options and "non-qualified" stock options. Maxim's plan defined an incentive stock option as an

17  option intended to qualify as an incentive stock option within the meaning of certain provisions of the

18  Internal Revenue Code. Maxim's plan defined a "non-qualified" option as any option not intended to

19  qualify as an incentive stock option.

20     **B.    Maxim Told The Public It Granted Stock Options At Fair Market Value.**

21     15.    From at least 2000 and continuing through June 30, 2004, Maxim's primary stock

22  option plan prohibited it from granting incentive stock options with an exercise price less than the

23  stock's fair market value on the date of grant. In other words, the plan did not allow incentive stock

24  options to be granted "in-the-money."

25     16.    During the same time period, Maxim's primary stock option plan allowed some

26  flexibility in granting non-qualified stock options with an exercise price less than the stock's fair

27  market value on the date of grant, but only subject to certain conditions not applicable here.

28

17.    Under Accounting Principles Board Opinion No. 25, "Accounting for Stock Issued to Employees" ("APB 25") and the accounting rules in effect from 1997 through 2005, issuers were required to record an expense on their financial statements for the "in-the-money" portion of any option grant. According to APB 25, that difference must be recorded as a compensation expense to be recognized over the vesting period of the option. Consequently, granting "in-the-money" options to employees could have a significant impact on the expenses and income (or loss) reported to the shareholders of a public company. APB 25 allowed companies, where the key terms of an option grant were known, to grant employee stock options without recording any compensation expense so long as the option exercise price was not below the stock's market price on the date of the grant.

18.    Maxim publicly reported, in its annual reports on Form 10-K for fiscal years 2000 through 2005, that the Company accounted for its employee stock options in accordance with APB 25. Additionally, during the relevant time period, Maxim represented that the Company generally granted options "at-the-money," not "in-the-money." Hence, in its annual reports for fiscal years 2000 through 2005, Maxim did not report any compensation expenses for stock options.

**C.    Maxim Backdated Employee And Director Option Grants.**

19.    Maxim's primary stock option plan provided that it was to be administered by the Board of Directors or a committee designated by the Board. The Board had the ability to select employees, directors, and consultants to whom options would be granted, to determine the number of shares to be covered by each option, and to determine the terms and conditions of any option granted under the plan.

20.    Maxim's Board delegated to Gifford the authority to grant stock options to non-officer employees as well as to outside directors. From at least 1999 and continuing through at least Maxim's 2004 fiscal year, Gifford approved all option grants made to non-officer employees and outside directors.

21.    Maxim repeatedly backdated option grants made to current employees, to newly hired employees, and to outside directors. These backdated grants reflected historically low prices of Maxim stock for the weeks prior to the date on which the price actually was selected. For ten consecutive quarters, from the second quarter of fiscal year 2002 to the fourth quarter of fiscal year

1 | 2004, Maxim granted options to current employees with an exercise price equal to the lowest price of

2 | the quarter. By backdating the option grants to make it falsely appear that "in-the-money" option

3 | grants had been "at-the-money" when granted, Maxim avoided reporting in its financial statements

4 | compensation expenses for the options.

5 |           **a.    Maxim's Option Grants To Employees**

6 |           22.    During the relevant time period, Maxim granted options to current employees on a

7 | quarterly basis. Each quarter, Maxim's managers proposed to Gifford the number of options to be

8 | granted to employees whose annual performance reviews fell within that quarter. Gifford either

9 | approved, or first revised and then approved, the number of proposed options for each employee.

10 | Maxim's stock administration department accumulated the employee options approved by Gifford

11 | until it learned the grant date for those options.

12 |           23.    Gifford approved the grant date and price for some options awarded to current

13 | employees. The grant date then was communicated to Maxim's stock administration department so

14 | that the grants could be recorded in Maxim's books and records.

15 |           24.    A number of grant dates used for options awarded to Maxim's current employees were

16 | selected with hindsight. This allowed Maxim to select the lowest possible price for the options. No

17 | compensation expenses were recorded for the undisclosed "in-the-money" option grants to current

18 | employees.

19 |           25.    During the relevant time period, Maxim also granted options to new hires on a

20 | quarterly basis. Similar to the current employee grants, Gifford approved the number of options to be

21 | granted to new hires. Maxim's stock administration department accumulated the options approved by

22 | Gifford until it learned the applicable grant date.

23 |           26.    As with stock options awarded to current employees, grant dates used for options

24 | awarded to new hires were selected with hindsight. Maxim determined the grant dates by

25 | determining a date with a low stock price for the quarter after the date on which the employee was

26 | hired. No compensation expenses were recorded for the undisclosed "in-the-money" grants to new

27 | hires.

28 |

SEC v. MAXIM INTEGRATED PRODUCTS, INC., et al.
COMPLAINT

27.     In connection with certain grants to current employees and new hires, Gifford signed backdated memoranda (drafted by Maxim's Chief Financial Officer and, at times, other Maxim employees) indicating that he had selected the grant date on the dates indicated in the memoranda. One of the purposes of the grant approval memoranda was to serve as an audit trail and make it appear as though the options had been granted at the market price on the earlier date. Gifford signed these memoranda and similar documents without making any effort to confirm that they accurately reflected the actual date on which the selection of the grant date in fact had been made. These memoranda did not accurately reflect the dates on which decisions were made to grant options.

28.     With respect to at least four backdated option grants, Gifford in writing instructed Maxim's CFO to record compensation expenses. But no compensation expenses were recorded.

**b.     Examples Of Maxim's Backdated Employee Options**

29.     Maxim purportedly granted approximately 2.7 million options to employees on June 30, 2003, with an exercise price equal to that day's closing stock price of $34.10. This was Maxim's lowest stock price of the quarter. In reality, the grant was not made until on or around August 26, 2003, when the stock was trading at $43.26. On or around August 22, 2003, Gifford asked Maxim's CFO: "What is the lowest price we can use for Q1 options?" The CFO responded: "The best price is the first day of the quarter – June 30, 2003. The price was $34.10 on that date." Gifford approved the grant using the June 30th price, but also instructed the CFO to record a compensation expense if it was material. Although the options were "in-the-money" when granted, Maxim failed to record compensation expenses for the options.

30.     In another example, Maxim purportedly granted 2.4 million options to certain employees on October 2, 2001, with an exercise price equal to that day's closing stock price of $33.40. This was Maxim's lowest stock price of the quarter. In reality, the grant was not made until on or around December 28, 2001, when the stock was trading at $54.61. On or around December 28, Maxim's CFO proposed to Gifford that Maxim use October 2 as the grant date for options awarded to certain current employees, and November 28 and December 24 for options awarded to certain new hires (depending on their hire date). Maxim used the dates suggested by its CFO to grant options.

1   Although the options were in-the-money when granted, Maxim failed to record compensation

2   expenses for the options.

3       31.     Additionally, Maxim purportedly granted 3.2 million options to existing employees on

4   September 30, 2003, with an exercise price equal to that day's closing stock price of $39.39. This

5   was Maxim's lowest stock price of the quarter. In reality, the grant was not made until significantly

6   later in the quarter. Maxim's stock administration department did not learn about the grant date until

7   on or about November 25, 2003, when Maxim's stock was trading at $51.47. Gifford later signed a

8   memorandum (drafted by another Maxim employee) dated September 30, 2003, that stated: "I have

9   granted options today for all existing employees for this quarter, and for new hires up through this

10  date – the stock closed at $39.39." Although the options were "in-the-money" when granted, Maxim

11  failed to record compensation expenses for the options.

12      32.     Maxim purportedly granted options to new employees hired after February 28, 2002

13  on March 25, 2002, with an exercise price equal to the March 25th closing stock price of $51.81. In

14  reality, these grants were not made until sometime in late April 2002, after the quarter had ended. On

15  or about April 22, Maxim's CFO asked Gifford to sign a grant approval memorandum dated March

16  25, 2002, to "keep [Maxim's] documentation and records straight." Gifford signed the memorandum,

17  which stated: "I want you to make sure that any new hire who started at Maxim between March 1,

18  2002 and today has their stock granted at today's closing price of $51.81." Maxim's stock

19  administration department did not learn of the supposed March 25th grant date until on or about April

20  24, 2002.

21          c.     **Maxim's Option Grants To Outside Directors**

22      33.     Maxim also backdated certain stock option grants to its outside directors. For

23  example, Maxim purportedly granted the directors 36,000 options on October 1, 2001, at an exercise

24  price equal to that day's closing stock price of $34.06. This grant was not actually made until on or

25  around December 11, 2001, when Maxim's stock was trading at $57.90. In or around December

26  2001, Maxim's CFO proposed to Gifford a range of historical dates for the outside director grants.

27  On or around December 11, Gifford approved using a grant date of October 1, 2001, but also in

28

8                           SEC v. MAXIM INTEGRATED PRODUCTS, INC., et al.
                                           COMPLAINT

1    writing instructed the CFO to record an expense if it was material. Gifford later signed meeting

2    minutes stating that he held a meeting on October 1, 2001, and granted options at the fair market

3    value on that date. Although the options were "in-the-money" when granted, Maxim failed to record

4    compensation expenses for the options.

5              **d.     Maxim Executives Understood The Implications Of Backdating**

6         34.    Gifford understood there were accounting implications for awarding "in-the-money"

7    options. Indeed, Gifford told Maxim employees that Maxim's stock option program helped Maxim's

8    bottom line because "an option granted at fair market value does not result in expense for profit &

9    loss purposes, so profit is increased."

10        35.    Maxim's CFO also understood the accounting implications of awarding "in-the-

11   money" options. For example, he warned Gifford in writing that Maxim should record a

12   compensation expense where it contemplated giving one employee a retroactively-priced option but

13   noted that "for one person, we will just get it done."

14        36.    Gifford instructed Maxim's CFO on several occasions to record a compensation

15   expense for option grants, demonstrating familiarity with stock option accounting principles. In one

16   handwritten note to the CFO, Gifford stated: "I would like to use [a price from eight weeks ago] for

17   our employees but we will have to expense the difference if it is material."

18        **D.     As A Result Of The Backdating, Maxim Publicly Reported False And Misleading**
           **Financial Information.**
19

20        37.    Maxim is a public company. Accordingly, it filed with the Commission annual reports

     on Form 10-K for the fiscal years ended June 24, 2000 (filed September 22, 2000), June 30, 2001
21

     (filed September 24, 2001), June 29, 2002 (filed September 25, 2002), June 28, 2003 (filed
22

     September 22, 2003), June 26, 2004 (filed September 9, 2004), and June 25, 2005 (filed September 8,
23

     2005) which included audited financial statements that were certified by the Company's outside
24

     auditors.
25

26        38.    Both Gifford and Maxim's CFO reviewed Maxim's annual reports filed on Forms 10-

     K before they were filed with the Commission for its 2000 through 2005 fiscal years. In connection
27

     with Maxim's 2003, 2004, and 2005 annual reports, Gifford and Maxim's CFO signed certifications
28

1  stating that they had reviewed the annual reports and that the annual reports did not contain any

2  untrue statements of a material fact or omit to state a material fact necessary to make the statements

3  made, in light of the circumstances under which such statements were made, not misleading.

4       39.    In the notes to its audited financial statements, which were included in its annual

5  reports for fiscal years 2000 through 2005, Maxim affirmatively stated that the Company accounted

6  for its employee stock option plans in accordance with APB 25.  Additionally, in its annual reports

7  for fiscal years 2000 through 2003, Maxim stated that under the Company's stock option plans,

8  options generally were granted at prices not less than the fair market value of the Company's common

9  stock on the grant date.  Maxim's annual reports for fiscal years 2004 and 2005 stated that options

10 were granted at prices not less than the fair market value of the Company's common stock on the

11 grant date.  In its annual report for fiscal year 2004, Maxim stated affirmatively that it was not

12 required to record compensation expenses in connection with stock option grants to employees.

13 Maxim knew or was reckless in not knowing that these statements were false and misleading, because

14 Maxim was aware it granted "in-the-money" options but concealed them through the use of

15 backdating.

16      40.    In its financial statements accompanying its annual reports, Maxim failed to record

17 compensation expenses in connection with the backdated, "in-the-money" option grants.  It was

18 aware it granted "in-the-money" options and was aware it was required to record compensation

19 expenses for these options, yet it failed to do so.  Maxim materially understated its expenses and

20 overstated its net income in the financial statements included in its annual reports by more than 10%

21 for its fiscal years 2003 through 2005.

22      41.    Maxim also filed with the Commission quarterly reports on Form 10-Q for the quarters

23 ended September 28, 2002 (filed November 8, 2002), December 28, 2002 (filed February 11, 2003),

24 March 29, 2003 (filed May 12, 2003), September 27, 2003 (filed November 6, 2003), December 27,

25 2003 (filed February 5, 2004), March 27, 2004 (filed May 6, 2004), September 25, 2004 (filed

26 November 4, 2004), December 25, 2004 (filed February 3, 2004), and March 26, 2005 (filed May 5,

27 2005), which contained Maxim's quarterly financial statements.  These financial statements were

28

1  materially false or misleading because Maxim failed to record in its quarterly financial statements

2  compensation expenses associated with "in-the-money" options.

3      42.    Both Gifford and Maxim's CFO reviewed the above Forms 10-Q before they were

4  filed with the Commission.  Additionally, for the quarters ended September 28, 2002, December 28,

5  2002, and March 29, 2003, they certified that the quarterly reports fairly presented Maxim's financial

6  condition and results of operation.  For the quarter ended September 27, 2003 through the quarter

7  ended March 26, 2005, they certified that they had reviewed the quarterly reports and that they were

8  not aware of any material misstatements of fact or omissions in those reports.

9      43.    In addition, Maxim filed with the Commission current reports on Form 8-K on April

10  29, 2003, August 12, 2003, October 28, 2003, February 5, 2004, April 27, 2004, August 6, 2004,

11  November 1, 2004, February 1, 2005, and May 3, 2005, each of which announced the Company's

12  financial results for the prior quarter.  These current reports contained materially false and misleading

13  financial information because Maxim failed to record compensation expenses associated with

14  undisclosed grants of "in-the-money" stock options.

15      44.    Maxim's proxy statements (which were sent to its shareholders) also made materially

16  false representations about Maxim's stock option grants.  Gifford reviewed and edited Maxim's

17  proxy statements before they were filed with the Commission.  In Maxim's proxy statement filed

18  August 19, 2004, Gifford signed an introductory letter discussing Maxim's request that its

19  shareholders approve an additional 13 million shares for its stock option plan.  In urging shareholders

20  to approve the additional shares, the letter stated that Maxim's stock option plan was "managed for

21  the best interests of the stockholders," in part because "all of Maxim's options are granted at fair

22  market value."  These statements were repeated elsewhere in the proxy statement.

23      45.    In Maxim's proxy statement filed October 7, 2005, Gifford signed an introductory

24  letter discussing Maxim's request that its shareholders authorize an additional 10.8 million shares for

25  its option plan.  In urging shareholders to approve the additional shares, the letter similarly stated that

26  Maxim's stock option plan was "managed for the best interests of the stockholders" in part because

27

28

SEC v. MAXIM INTEGRATED PRODUCTS, INC., et al.
COMPLAINT

1  "Maxim's stock options have always been granted with an exercise price equal to the fair market

2  value of Maxim's stock." These statements were repeated elsewhere in the proxy statement.

3      46.     Maxim also sold securities pursuant to offering documents, including registration

4  statements on Forms S-8, which incorporated Maxim's false and misleading financial statements.

5  Those Forms S-8 were filed with the Commission on April 12, 2001 (incorporating Maxim's annual

6  report on Form 10-K for the year ended June 24, 2000, Maxim's quarterly reports on Forms 10-Q for

7  the quarters ended September 23, 2000 and December 30, 2000, and Maxim's current reports on

8  Forms 8-K filed on January 30, 2001 and April 11, 2001); February 13, 2003 (incorporating Maxim's

9  annual report on Form 10-K for the year ended June 29, 2002 and Maxim's quarterly reports on

10 Forms 10-Q for the quarters ended September 28, 2002 and December 28, 2002); and April 24, 2005

11 (incorporating Maxim's annual report on Form 10-K for the year ended June 26, 2004, Maxim's

12 quarterly reports on Forms 10-Q for the quarterly periods ended September 25, 2004 and December

13 25, 2004, Maxim's current report on Form 8-K filed December 20, 2004, and Maxim's proxy

14 statements filed August 19, 2004 and October 18, 2004). Both Gifford and Maxim's CFO signed

15 these Form S-8s.

16      47.     Gifford was aware that Maxim used hindsight to select grant dates for some options.

17 He also was aware there were accounting implications for granting in-the-money options. In

18 connection with at least four backdated option grants, he instructed Maxim executives to record

19 compensation expenses for "in-the-money" options. Based on these actions, Gifford should have

20 known that Maxim did not properly account for its resulting stock option compensation expenses in

21 its financial statements which were included in its Forms 10-K, Forms 10-Q, Forms 8-K, and Forms

22 S-8. Gifford also should have known that Maxim did not accurately describe its stock option grants

23 in its proxy statements and annual reports on Forms 10-K.

24      48.     Maxim was aware that it used hindsight to select grant dates for options. Maxim also

25 was aware of the accounting implications of granting in-the-money options. Maxim knew, or was

26 reckless in not knowing, that its annual reports on Forms 10-K, quarterly reports on Form 10-Q,

27

28

SEC v. MAXIM INTEGRATED PRODUCTS, INC., et al.
                                                                                          COMPLAINT

1   Forms 8-K, Forms S-8, and proxy statements contained false and misleading statements and

2   omissions regarding Maxim's stock option grants.

3       49.     Maxim provided documentation, which failed to disclose the true grant dates for

4   options to employees and outside directors, to the Company's external auditors in connection with

5   audits of Maxim's financial statements.

6       50.     In June 2006, the Special Committee of Maxim's Board began to investigate the

7   Company's historical option granting practices.  As a result of the Special Committee investigation,

8   Maxim in January 2007 announced that it believed the accounting adjustments needed to properly

9   record expenses for options granted to employees and outside directors were material and that it

10  expected to restate its financial statements for Maxim's fiscal years 2000 through 2005 and the

11  related interim periods through March 25, 2006.  Maxim also warned that its financial statements,

12  related reports, and all earnings press releases and similar communications relating to those periods

13  should not be relied upon.  Maxim further announced that the Special Committee found no evidence

14  that the outside directors engaged in any wrongdoing with respect to Maxim's stock option grants.

15      51.     During the relevant period, Gifford received annual bonuses tied in part to the

16  Company's achievements and reported profitability.

17  **FIRST CLAIM FOR RELIEF**
    *(Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder by Maxim)*

18      52.     The Commission realleges and incorporates by reference paragraphs 1 through 51.

19      53.     By engaging in the conduct described above, Maxim, directly or indirectly, in

20  connection with the purchase or sale of securities, by the use of means or instrumentalities of

21  interstate commerce, or the mails, with scienter:

22          a.   Employed devices, schemes, or artifices to defraud;

23          b.   Made untrue statements of material facts or omitted to state material facts

24               necessary in order to make the statements made, in the light of the circumstances

25               under which they were made, not misleading; and

26

27

28

                                    13                SEC v. MAXIM INTEGRATED PRODUCTS, INC., et al.
                                                                        COMPLAINT

c.   Engaged in acts, practices, or courses of business which operated or would operate

as a fraud or deceit upon other persons, including purchasers and sellers of

securities.

54.   By reason of the foregoing, Maxim has violated and, unless restrained and enjoined, will

continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R.

§ 240.10b-5].

## SECOND CLAIM FOR RELIEF
*(Violations of Securities Act Section 17(a)(1) by Maxim)*

55.   The Commission realleges and incorporates by reference Paragraphs 1 through 51.

56.   By engaging in the conduct described above, Maxim, directly or indirectly, in the offer

or sale of securities, by use of the means or instruments of transportation or communication in

interstate commerce or by use of the mails, with scienter, employed devices, schemes, or artifices to

defraud.

57.   By reason of the foregoing, Maxim violated and, unless restrained and enjoined, will

continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)].

## THIRD CLAIM FOR RELIEF
*(Violations of Securities Act Section 17(a)(2) by Maxim)*

58.   The Commission realleges and incorporates by reference Paragraphs 1 through 51.

59.   By engaging in the conduct described above, Maxim, directly or indirectly, in the offer

or sale of securities, by use of the means or instruments of transportation or communication in

interstate commerce or by use of the mails obtained money or property by means of untrue statements

of material fact or by omitting to state a material fact necessary in order to make the statements made,

in light of the circumstances under which they were made, not misleading.

60.   By reason of the foregoing, Maxim has violated and, unless restrained and enjoined,

will continue to violate Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

## FOURTH CLAIM FOR RELIEF
*(Violations of Section 17(a)(3) of the Securities Act by Defendants)*

61.   The Commission realleges and incorporates by this reference Paragraphs 1 through 51.

14

62.     By engaging in the acts and conduct alleged above, Maxim and Gifford, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchasers.

63.     By reason of the foregoing, Maxim and Gifford have violated and, unless restrained and enjoined, will continue to violate Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

### FIFTH CLAIM FOR RELIEF
*(False Periodic Reports – Violations of and Aiding and Abetting Violations of Exchange Act Section 13(a) and Rules 12b-20, 13a-1, 13a-11, and 13a-13 Thereunder by Defendants)*

64.     The Commission realleges and incorporates by reference Paragraphs 1 through 51.

65.     Based on the conduct alleged above, Maxim violated Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13], which obligate issuers of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78*l*] to file with the Commission accurate periodic reports, including annual, current, and quarterly reports.  Unless restrained and enjoined, Maxim will continue to violate Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13].

66.     By engaging in the acts and conduct alleged above, Gifford knowingly provided substantial assistance to Maxim's filing of materially false and misleading reports with the Commission.

67.     By reason of the foregoing, Gifford aided and abetted Maxim's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, 13a-11, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13] thereunder.  Unless restrained and enjoined, Gifford will continue to aid and abet such violations.

### SIXTH CLAIM FOR RELIEF
*(False Books and Records – Violations of and Aiding and Abetting Violations of Exchange Act Section 13(b)(2)(A) by Defendants)*

68.     The Commission realleges and incorporates by reference Paragraphs 1 through 51.

69.     Based on the conduct alleged above, Maxim violated Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)], which obligates issuers of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] to make and keep books, records and accounts which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer. Unless restrained and enjoined, Maxim will continue to violate Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

70.     By engaging in the acts and conduct alleged above, Gifford knowingly provided substantial assistance to Maxim's failure to make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflect its transactions and dispositions of its assets.

71.     By reason of the foregoing, Gifford has aided and abetted violations by Maxim of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)]. Unless restrained and enjoined, Gifford will continue to aid and abet such violations.

### SEVENTH CLAIM FOR RELIEF
*(Inadequate Internal Accounting Controls—Violations of and Aiding and Abetting Violations of Section 13(b)(2)(B) of the Exchange Act by Defendants)*

72.     The Commission realleges and incorporates by this reference Paragraphs 1 through 51.

73.     Based on the conduct alleged above, Maxim violated Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)], which obligates issuers of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] to devise and maintain a sufficient system of internal accounting controls. Unless restrained and enjoined, Maxim will continue to violate Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)].

74.     By engaging in the acts and conduct alleged above, Gifford knowingly provided substantial assistance to Maxim's failure to devise and maintain a sufficient system of internal accounting controls.

75.     By reason of the foregoing, Gifford aided and abetted violations by Maxim of Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)]. Unless restrained and enjoined, Gifford will continue to aid and abet such violations.

### EIGHTH CLAIM FOR RELIEF
*(False Proxy Statements—Violations*

SEC v. MAXIM INTEGRATED PRODUCTS, INC., et al.
COMPLAINT

*of Section 14(a) of the Exchange Act and Rule 14a-9 Thereunder by Defendants)*

76.    The Commission realleges and incorporates by this reference Paragraphs 1 through 51.

77.    Based on the conduct alleged above, Maxim and Gifford violated Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Rule 14a-9 thereunder [17 C.F.R. § 240.14a-9], which prohibits solicitations by means of a proxy statement, form of proxy, notice of meeting, or other communication, written or oral, that contains a statement which, at the time and in the light of the circumstances under which it was made, was false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which had become false or misleading.

78.    By reason of the foregoing, Maxim and Gifford violated Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Rule 14a-9 [17 C.F.R. § 240.14a-9] thereunder.  Unless restrained and enjoined, Maxim and Gifford will continue to violate Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Rule 14a-9 [17 C.F.R. § 240.14a-9] thereunder

### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

I.

Permanently enjoin Maxim from directly or indirectly violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Sections 10(b), 13(a), 13(b)(2)(A), 13(b)(2)(B), and 14(a) of the Exchange Act [15 U.S.C. §§ 78j(b), 78m(a), 78m(b)(2)(A), 78m(b)(2)(B) and 78n(a)], and Rules 10b-5, 12b-20, 13a-1, 13a-11, 13a-13, and 14a-9 [17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1, 240.13a-11, 240.13a-13, and 240.14a-9] thereunder; and

Permanently enjoin Gifford from directly or indirectly violating Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)] and Section 14(a) of the Exchange Act [15 U.S.C. § 78p(a)], and Rule 14a-9 thereunder [17 C.F.R. § 240.14a-9], and from aiding and abetting violations of Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B)] and Rules 12b-20, 13a-1, 13a-11, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13] thereunder.

SEC v. MAXIM INTEGRATED PRODUCTS, INC., et al.
COMPLAINT

II.

Order Gifford to pay disgorgement, including prejudgment interest.

III.

Order Gifford to pay a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

IV.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

V.

Grant such other and further relief as this Court may determine to be just and necessary.

DATED: December 4, 2007          Respectfully Submitted,


Erin E. Schneider
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION

18

# EXHIBIT B

1   HELANE L. MORRISON (Cal. Bar No. 127752)
    MARC J. FAGEL (Cal. Bar No. 154425)
2   CARY S. ROBNETT (Cal. Bar No. 160585)
    ROBERT S. LEACH (Cal. Bar No. 196191)
3     leachr@sec.gov
    ERIN E. SCHNEIDER (Cal. Bar No. 216114)
4     schneidere@sec.gov

5   Attorneys for Plaintiff
    SECURITIES AND EXCHANGE COMMISSION
6   44 Montgomery Street, Suite 2600
    San Francisco, California 941 04
7   Telephone: (415) 705-2500
    Facsimile: (415) 705-2501

8

9                     UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                         SAN JOSE DIVISION

12   SECURITIES AND EXCHANGE          )
     COMMISSION,                      )
13                                    )   [PROPOSED] FINAL JUDGMENT AS TO
                  Plaintiff,          )   DEFENDANT JOHN F. GIFFORD
14                                    )
          vs.                         )
15                                    )
     JOHN F. GIFFORD,                 )
16                                    )
                  Defendant.          )
17   _____)

18          [PROPOSED] FINAL JUDGMENT AS TO DEFENDANT JOHN F. GIFFORD

19          The Securities and Exchange Commission having filed a Complaint and Defendant

20   John F. Gifford having entered a general appearance; consented to the Court's jurisdiction over

21   Defendant and the subject matter of this action; consented to entry of this Final Judgment without

22   admitting or denying the allegations of the Complaint (except as to jurisdiction); waived findings

23   of fact and conclusions of law; and waived any right to appeal from this Final Judgment:

24                                         I.

25          IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant and

26   Defendant's agents, servants, employees, attorneys, and all persons in active concert or

27   participation with them who receive actual notice of this Final Judgment by personal service or

28   otherwise are permanently restrained and enjoined from violating Section 17(a)(3) of the

1    Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)(3)] in the offer or sale of any

2    security by the use of any means or instruments of transportation or communication in interstate

3    commerce or by use of the mails, directly or indirectly to engage in any transaction, practice, or

4    course of business which operates or would operate as a fraud or deceit upon the purchaser.

5                                                    II.

6          IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant and

7    Defendant's agents, servants, employees, attorneys, and all persons in active concert or

8    participation with any of them, who receive actual notice of this Final Judgment, by personal

9    service or otherwise, and each of them, are permanently enjoined and restrained from aiding and

10   abetting any violation of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules

11   12b-20, 13a-1, 13a-11, and 13a-13 promulgated thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1,

12   240.13a-11, and 240.13a-13] by knowingly providing substantial assistance to an issuer which has

13   a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78*l*] or

14   Section 15(d) of the Exchange Act [15 U.S.C. § 78o] in failing to file with the Commission such

15   accurate and complete information, reports, and documents as are required to be filed with the

16   Commission pursuant to Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and the

17   Commission's rules thereunder, including but not limited to, quarterly reports on Form 10-Q

18   [17 C.F.R. § 249.308] as prescribed by Commission Rule 13a-1 [17 C.F.R. § 240.13a-13], current

19   reports on Form 8-K [17 C.F.R. § 249.308] as prescribed by Commission Rule 13a-11 [17 C.F.R.

20   § 240.13a-11], and annual reports on Form 10-K [17 C.F.R. § 249.308] as prescribed by

21   Commission Rule 13a-1 [17 C.F.R. § 240.13a-1], such information and documents to contain, in

22   addition to such information as is expressly required to be included in a statement or report to the

23   Commission, such further material information, if any, as may be necessary to make the required

24   statements, in the light of the circumstances under which they are made, not misleading, as

25   prescribed by Commission Rule 12b-20 [17 C.F.R. § 240.12b-20].

26                                                   III.

27         IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant and

28   Defendant's agents, servants, employees, attorneys, and all persons in active concert or

1   participation with any of them, who receive actual notice of this Final Judgment, by personal

2   service or otherwise, and each of them, are permanently enjoined and restrained from aiding and

3   abetting any violation of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)] by

4   knowingly providing substantial assistance to any issuer which has a class of securities registered

5   pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or Section 15(d) of the Exchange

6   Act [15 U.S.C. § 78o] in failing to make or keep books, records or accounts, which, in reasonable

7   detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer.

8                                   IV.

9        IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant and

10   Defendant's agents, servants, employees, attorneys, and all persons in active concert or

11   participation with any of them, who receive actual notice of this Final Judgment, by personal

12   service or otherwise, and each of them, are permanently enjoined and restrained from aiding and

13   abetting any violation of Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)] by

14   knowingly providing substantial assistance to any issuer which has a class of securities registered

15   pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or Section 15(d) of the Exchange

16   Act [15 U.S.C. § 78o] in failing to devise and maintain a system of internal accounting controls

17   sufficient to provide reasonable assurances that:

18        A.     transactions are executed in accordance with management's general or specific

19   authorization;

20        B.     transactions are recorded as necessary (i) to permit preparation of financial

21   statements in conformity with generally accepted accounting principles or any other criteria

22   applicable to such statements, and (ii) to maintain accountability for assets;

23        C.     access to assets is permitted only in accordance with management's general or

24   specific authorization; and

25        D.     the recorded accountability for assets is compared with the existing assets at

26   reasonable intervals and appropriate action is taken with respect to any differences.

27

28

V.

1

2  IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant and

3 Defendant's agents, servants, employees, attorneys, and all persons in active concert or

4 participation with any of them, who receive actual notice of this Final Judgment, by personal

5 service or otherwise, and each of them, are permanently restrained and enjoined from violating

6 Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Rule 14a-9 promulgated thereunder

7 [17 C.F.R. § 240.14a-9] by making or causing to be made solicitations by means of a proxy

8 statement, form of proxy, notice of meeting, or other communication, written or oral, containing a

9 statement which, at the time and in the light of the circumstances under which it was made, was

10 false or misleading with respect to any material fact, or which omitted to state any material fact

11 necessary in order to make the statements therein not false or misleading or necessary to correct

12 any statement in any earlier communication with respect to the solicitation of a proxy for the same

13 meeting or subject matter which has become false or misleading.

14

VI.

15  IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is liable for

16 disgorgement of $536,692, representing profits gained as a result of the conduct alleged in the

17 Complaint, together with prejudgment interest thereon in the amount of $115,989. Defendant

18 shall satisfy this obligation by paying $652,681 within ten (10) business days after entry of this

19 Final Judgment by certified check, bank cashier's check, or United States postal money order

20 payable to the Securities and Exchange Commission. The payment shall be delivered or mailed to

21 the Office of Financial Management, Securities and Exchange Commission, Operations Center,

22 6432 General Green Way, Mail Stop 0-3, Alexandria, Virginia, 22312, and shall be accompanied

23 by a letter identifying John F. Gifford as a defendant in this action; setting forth the title and civil

24 action number of this action and the name of this Court; and specifying that payment is made

25 pursuant to this Final Judgment. Defendant shall simultaneously transmit photocopies of such

26 payment and letter to the attention of Marc J. Fagel, Associate Regional Director, San Francisco

27 Regional Office, United States Securities and Exchange Commission, 44 Montgomery Street,

28 Suite 2600, San Francisco, California, 94104. Defendant shall pay post-judgment interest on any

- 4 -

[PROPOSED] FINAL JUDGMENT AS TO JOHN
F. GIFFORD

1  delinquent amounts pursuant to 28 U.S.C. § 1961.  The Commission shall remit the funds paid

2  pursuant to this paragraph to the United States Treasury.

3                                                    VII.

4          IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant shall pay a

5  civil penalty in the amount of $150,000 pursuant to Section 20(d) of the Securities Act and

6  Section 21 (a) of the Exchange Act.  Defendant shall make this payment within ten (10) business

7  days after entry of this Final Judgment by certified check, bank cashier's check, or United States

8  postal money order payable to the Securities and Exchange Commission.  The payment shall be

9  delivered or mailed to the Office of Financial Management, Securities and Exchange Commission,

10  Operations Center, 6432 General Green Way, Mail Stop 0-3, Alexandria, Virginia, 22312, and

11  shall be accompanied by a letter identifying John. F. Gifford as a defendant in this action; setting

12  forth the title and civil action number of this action and the name of this Court; and specifying that

13  payment is made pursuant to this Final Judgment.  A copy of the cover letter and money order or

14  check shall be sent to Marc J. Fagel, Associate Regional Director, San Francisco Regional Office,

15  United States Securities and Exchange Commission, 44 Montgomery Street, Suite 2600,

16  San Francisco, California 94104.  Defendant shall pay post-judgment interest on any delinquent

17  amounts pursuant to 28 USC § 1961.  The Commission shall remit the funds paid pursuant to this

18  paragraph to the United States Treasury.

19                                                    VIII.

20          IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is

21  incorporated herein with the same force and effect as if fully set forth herein, and that Defendant

22  shall comply with all of the undertakings and agreements set forth therein.

23                                                    IX.

24          IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain

25  jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

26                                                    X.

27          There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil

28  Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

1  PRESENTED BY:

2

3  _____

~~Helane L. Morrison~~ /sr
4  Marc J. Fagel

5  Cary S. Robnett
   Robert S. Leach
6  Erin E. Schneider

7  Attorneys for Plaintiff
   SECURITIES AND EXCHANGE COMMISSION
8  44 Montgomery Street, Suite 2600
   San Francisco, California  94104
9  Telephone:  (415) 705-2500

10 Fax: (415) 705-2501

11 APPROVED AS TO FORM:

12

13 _____

David Siegel, Esq.
14 Irell & Manella LLP
   1800 Ave of the Stars, Suite 900
15 Los Angeles, CA 90067
   Telephone:  (310) 277-1010
16 Fax:  (310) 203-7199

17 ATTORNEY FOR DEFENDANT JOHN F. GIFFORD

18

19

20 Dated this _23_ day of _January_, 2007    _____
                                            UNITED STATES DISTRICT JUDGE
21

22

23

24

25

26

27

28

1753363.1 05                        - 6 -

# EXHIBIT C

1  HELANE L. MORRISON (Cal. Bar No. 127752)
   MARC J. FAGEL (Cal. Bar No. 154425)
2  CARY S. ROBNETT (Cal. Bar No. 160585)
   ROBERT S. LEACH (Cal. Bar No. 196191)
3  leachr@sec.gov
   ERIN E. SCHNEIDER (Cal. Bar No. 216114)
4  schneidere@sec.gov

5  Attorneys for Plaintiff
   SECURITIES AND EXCHANGE COMMISSION
6  44 Montgomery Street, Suite 2600
   San Francisco, California 94104
7  Telephone: (415) 705-2500
   Facsimile:  (415) 705-2501
8

RECEIVED

07 DEC -4 AM 9: 30
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NO. THERN DIST. AICT OF CA.

E-filing

FILED

JAN 2 3 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

9
10              UNITED STATES DISTRICT COURT
11              NORTHERN DISTRICT OF CALIFORNIA
12              SAN JOSE DIVISION
13
14  SECURITIES AND EXCHANGE COMMISSION,     CV 07          6121     RMW
                                            Case No.                RS
15              Plaintiff,
16      vs.
17  MAXIM INTEGRATED PRODUCTS, INC.,        [PROPOSED] FINAL JUDGMENT AS TO
                                            DEFENDANT MAXIM INTEGRATED
18              Defendant.                  PRODUCTS, INC.
19
20          [PROPOSED] FINAL JUDGMENT AS TO DEFENDANT MAXIM INTEGRATED
21                                   PRODUCTS, INC.
22      The Securities and Exchange Commission having filed a Complaint and Defendant Maxim
23  Integrated Products, Inc. having entered a general appearance; consented to the Court's jurisdiction
24  over Defendant and the subject matter of this action; consented to entry of this Final Judgment
25  without admitting or denying the allegations of the Complaint (except as to jurisdiction); waived
26  findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:
27                                          I.
28

FINAL JUDGMENT OF MAXIM INTEGRATED
PRODUCTS, INC.

1    IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's

2    agents, servants, employees, attorneys, and all persons in active concert or participation with them

3    who receive actual notice of this Final Judgment by personal service or otherwise are permanently

4    enjoined and restrained from, directly or indirectly, violating Section 17(a) of the Securities Act of

5    1933 ("Securities Act") [15 U.S.C. § 77q(a)] by:

6        1.  employing any device, scheme, or artifice to defraud;

7        2.  obtaining money or property by means of any untrue statement of a material fact or any

8            omission to state a material fact necessary in order to make the statements made, in light

9            of the circumstances under which they were made, not misleading; or

10       3.  engaging in any transaction, practice, or course of business which operates or would

11           operate as a fraud or deceit upon the purchaser,

12   in the offer or sale of any securities by the use of any means or instruments of transportation or

13   communication in interstate commerce, or by use of the mails.

14                                      II.

15       IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's

16   agents, servants, employees, attorneys, and all persons in active concert or participation with them

17   who receive actual notice of this Final Judgment by personal service or otherwise are permanently

18   enjoined and restrained from, directly or indirectly, violating Section 10(b) of the Securities

19   Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-

20   5] thereunder by:

21       1.  employing any device, scheme, or artifice to defraud;

22       2.  making any untrue statement of a material fact or omitting to state a material fact

23           necessary in order to make the statements made, in the light of the circumstances

24           under which they were made, not misleading; or

25       3.  engaging in any act, practice, or course of business which operates or would operate as

26           a fraud or deceit upon any person,

27

28

FINAL JUDGMENT AS TO MAXIM INTEGRATED
                                                PRODUCTS, INC.

1  in connection with the purchase or sale of the securities of any issuer, by the use of any means or

2  instrumentality of interstate commerce, or of the mails, or of any facility of any national securities

3  exchange.

4                                  III.

5        IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's

6  agents, servants, employees, attorneys, and all persons in active concert or participation with them

7  who receive actual notice of this Final Judgment by personal service or otherwise are permanently

8  enjoined and restrained from violating Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and

9  Rules 12b-20, 13a-1, 13a-11, and 13a-13 promulgated thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-

10  1, 240.13a-11, and 240.13a-13] by failing, with respect to any issuer which has a class of securities

11  registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78*l*] or Section 15(d) of the

12  Exchange Act [15 U.S.C. § 78o], to file with the Commission such accurate and complete

13  information, reports, and documents as are required to be filed with the Commission pursuant to

14  Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and the Commission's rules thereunder,

15  including but not limited to, quarterly reports on Form 10-Q [17 C.F.R. § 249.308a] as prescribed by

16  Commission Rule 13a-13 [17 C.F.R. § 240.13a-13], current reports on Form 8-K [17 C.F.R. §

17  249.308] as prescribed by Commission Rule 13a-11 [17 C.F.R. § 240.13a-11], and annual reports on

18  Form 10-K [17 C.F.R. § 249.308] as prescribed by Commission Rule 13a-1 [17 C.F.R. § 240.13a-1],

19  such information and documents to contain, in addition to such information as is expressly required

20  to be included in a statement or report to the Commission, such further material information, if any,

21  as may be necessary to make the required statements, in the light of the circumstances under which

22  they are made, not misleading, as prescribed by Commission Rule 12b-20 [17 C.F.R. § 240.12b-20].

23                                  IV.

24        IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's

25  agents, servants, employees, attorneys, and all persons in active concert or participation with them

26  who receive actual notice of this Final Judgment by personal service or otherwise are permanently

27  enjoined and restrained from violating Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. §

28  78m(b)(2)(A)] by failing, with respect to any issuer which has a class of securities registered pursuant

FINAL JUDGMENT AS TO MAXIM INTEGRATED
PRODUCTS, INC.

1  to Section 12 of the Exchange Act [15 U.S.C. § 78*l*] or Section 15(d) of the Exchange Act [15 U.S.C.

2  § 78o], to make or keep books, records or accounts, which, in reasonable detail, accurately and fairly

3  reflect the transactions and dispositions of the assets of the issuer.

4                                        V.

5         IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's

6  agents, servants, employees, attorneys, and all persons in active concert or participation with them

7  who receive actual notice of this Final Judgment by personal service or otherwise are permanently

8  enjoined and restrained from violating Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. §

9  78m(b)(2)(B)] by failing, with respect to any issuer which has a class of securities registered pursuant

10 to Section 12 of the Exchange Act [15 U.S.C. § 78*l*] or Section 15(d) of the Exchange Act [15 U.S.C.

11 § 78o], to devise and maintain a system of internal accounting controls sufficient to provide

12 reasonable assurances that:

13         A.    transactions are executed in accordance with management's general or specific

14 authorization;

15         B.    transactions are recorded as necessary (i) to permit preparation of financial

16 statements in conformity with generally accepted accounting principles or any other criteria

17 applicable to such statements, and (ii) to maintain accountability for assets;

18         C.    access to assets is permitted only in accordance with management's general or

19 specific authorization; and

20         D.    the recorded accountability for assets is compared with the existing assets at

21 reasonable intervals and appropriate action is taken with respect to any differences.

22                                       VI.

23        IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's

24 agents, servants, employees, attorneys, and all persons in active concert or participation with them

25 who receive actual notice of this Final Judgment by personal service or otherwise are permanently

26 restrained and enjoined from violating Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and

27 Rule 14a-9 promulgated thereunder [17 C.F.R. § 240.14a-9] by making or causing to be made

28 solicitations by means of a proxy statement, form of proxy, notice of meeting, or other

                                    -4-    FINAL JUDGMENT AS TO MAXIM INTEGRATED
                                           PRODUCTS, INC.

1  communication, written or oral, containing a statement which, at the time and in the light of the

2  circumstances under which it was made, was false or misleading with respect to any material fact, or

3  which omitted to state any material fact necessary in order to make the statements therein not false or

4  misleading or necessary to correct any statement in any earlier communication with respect to the

5  solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

6                                              VII.

7           IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is

8  incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall

9  comply with all of the undertakings and agreements set forth therein.

10                                             VIII.

11          IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain

12  jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

13                                              IX.

14          There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil

15  Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

16

17  PRESENTED BY:

18

19

20  Helane L. Morrison /s/
    Marc J. Fagel
    Cary S. Robnett
21  Robert S. Leach
    Erin E. Schneider
22

23  Attorneys for Plaintiff
    SECURITIES AND EXCHANGE COMMISSION
24  44 Montgomery Street, Suite 2600
    San Francisco, California 94104
25  Telephone: (415) 705-2500
    Fax: (415) 705-2501
26

27

28

-5-                    FINAL JUDGMENT AS TO MAXIM INTEGRATED
                                    PRODUCTS, INC.

1    APPROVED AS TO FORM:

2

3

4    John Potter, Esq.
     Quinn Emanuel Urquhart Oliver & Hedges, LLP
5    50 California Street, 22nd Floor
     San Francisco, California 94111
6    Telephone: 415.875.6600
     ATTORNEY FOR DEFENDANT MAXIM INTEGRATED PRODUCTS, INC.
7

8

9

10   Dated this 23 day of January, 2007          _____
                                                   UNITED STATES DISTRICT JUDGE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                  -6-        FINAL JUDGMENT AS TO MAXIM INTEGRATED
                                                            PRODUCTS, INC.

# EXHIBIT D

# *Press Information*

FOR IMMEDIATE RELEASE
PINK SHEETS SYMBOL MXIM

Contact: Paresh Maniar
Executive Director, Investor Relations
(408) 470-5348

## MAXIM PROVIDES UPDATE ON ITS RESTATEMENT

SUNNYVALE, CA–January 17, 2008–Maxim Integrated Products, Inc., (Pink Sheets: MXIM) issued the following statement today.

On January 31, 2007, Maxim Integrated Products, Inc. announced that it would need to restate certain historical financial statements to record additional stock-based compensation charges and that such financial statements should no longer be relied upon. At this time, Maxim expects to restate its financial statements from Fiscal 1997 through Fiscal 2005 and the related interim periods through March 25, 2006, and to record additional non-cash compensation expense during Fiscal 1997 through Fiscal 2006 in the estimated range of $550 to $650 million on a pre-tax basis and $360 to $425 million on an after-tax basis.

Maxim also announced that its estimated completion date of the restatement will be delayed from the first calendar quarter of 2008. The Company recently determined that the scope of the project must expand to include a review of stock options granted in years 1995 and 1996, and to conduct further analysis of certain aspects of stock option activity such as employees who either terminated their employ or changed their employment status. Based on these new requirements and the overall complexity of the project, Maxim currently estimates that the restatement will be completed in June 2008, but it cannot give assurances that it will meet this targeted completion date.

-   more   -

The Company remains committed to working diligently with Deloitte & Touche LLP, its independent auditors, and Ernst & Young LLP, its former independent auditors, to complete the restatement and become current with its public filings as soon as possible.

**Cautionary Note Regarding Forward-Looking Statements**

This press release contains forward-looking statements within the meaning of Section 27A of the Securities Act of 1933, as amended, and Section 21E of the Securities Exchange Act of 1934, as amended, including the statements concerning the scope and timing of its restatement activities; that the Company expects it will restate its financial statements from Fiscal 1997 through Fiscal 2005 and the related interim periods through March 25, 2006; that, for such period, the Company expects to record additional non-cash compensation expense, on a pre-tax basis, of between $550 to $650 million and, on an after-tax basis, of between $360 to $425 million; that the Company is working with independent auditors to complete its restatement and become current with its public filings as soon as possible; and that it estimates the review will be completed in June 2008. Actual results and outcomes could differ significantly from our current expectations due to a range of factors, including a change in the required scope of the restatement activities, the discovery of additional information relevant to the restatement, the application of accounting or tax principles in an unanticipated manner, and an unanticipated delay in the completion of the restatement or the preparation and filing of the Company's required reports with the SEC. For additional factors and risks, please refer to our SEC filings, including our Annual Report on Form 10-K for the fiscal year ended June 25, 2005, our Quarterly Report on Form 10-Q for the quarter ended March 25, 2006, as well as similar disclosures in subsequent SEC filings.

Maxim Integrated Products is a leading international supplier of quality analog and mixed-signal products for applications that require real-world signal processing.

# # #

# EXHIBIT E



## U.S. Securities and Exchange Commission

## SEC Sues Maxim Integrated Products and Former Senior Officers in Stock Option Backdating Scheme

**Former CEO Agrees to Pay $800,000**

**FOR IMMEDIATE RELEASE**
**2007-250**

*Washington, D.C., Dec. 4, 2007* - The Securities and Exchange Commission today filed civil charges against Maxim Integrated Products, Inc., a Silicon Valley semiconductor company, and the company's former CEO and CFO, alleging that they reported false financial information to investors by improperly backdating stock option grants to Maxim employees and directors.

Linda Chatman Thomsen, the SEC's Director of Enforcement, stated, "Maxim's seeming ability to pick favorable grant dates for its employees was too good to be true — in ten consecutive quarters, Maxim granted options on the date with the lowest stock price of the quarter. In reality, Maxim selected these supposed grant dates with the benefit of hindsight, allowing it to hide millions of dollars in expenses from shareholders."

Marc J. Fagel, Co-Acting Regional Director of the SEC's San Francisco Regional Office, added, "Of particular concern here was the CFO's abandoning his role as corporate gatekeeper and instead facilitating Maxim's misrepresentations about its stock option program and financial condition."

The Commission alleges that former CFO Carl W. Jasper, of San Jose, Calif., helped the company fraudulently conceal tens of millions of dollars in compensation expenses through the use of backdated, "in-the-money" option grants. In a separate action, former President, CEO, and Chairman of the Board John F. Gifford, of Menlo Park, Calif., agreed to pay more than $800,000 in disgorgement, interest, and penalties to settle charges relating to his role in the options backdating. Maxim similarly has agreed to settle the Commission's charges against it.

The Commission's complaints, filed in federal district court in San Jose, allege that Maxim routinely provided potentially lucrative in-the-money options (i.e., options granted at below market prices) to employees. Under well-settled accounting principles, granting in-the-money options obligated the company to report compensation expenses to shareholders. The Commission alleges that Maxim avoided reporting these expenses by backdating paperwork to make it appear that the options had been granted on an earlier date. As a result, the company overstated its net income by more than 10% for its fiscal years 2003 through 2005.

The Commission's complaints also allege that former CFO Jasper was aware of the improper backdating practices, drafted backdated grant approval documents for Maxim's CEO to sign, and disregarded instructions from CEO Gifford to record an expense in connection with certain backdated options. According to the Commission, Gifford should have known that the company was not reporting expenses for those in-the-money stock options and instead was falsely reporting that they were granted at fair market value.

Maxim, without admitting or denying the Commission's allegations, consented to a permanent injunction against violations of the antifraud and other provisions of the federal securities laws. Gifford, also without admitting or denying the allegations, agreed to a permanent injunction against further violations of certain provisions of the federal securities laws and also agreed to disgorge a portion of his bonuses (totaling $652,681 with prejudgment interest) and pay a $150,000 civil penalty.

The Commission's litigated action against Jasper charges him with violating the antifraud and other provisions of the federal securities laws. The Commission seeks injunctive relief, disgorgement of wrongful profits, a civil penalty, and an order barring him from acting as an officer or director of a public company.

# # #

For more information, contact:

Marc J. Fagel
Co-Acting Regional Director
(415) 705-2449

Cary S. Robnett
Assistant Regional Director
(415) 705-2335

United States Securities and Exchange Commission
San Francisco Regional Office

➤ Additional materials: Litigation Release No. 20381

*http://www.sec.gov/news/press/2007/2007-250.htm*