MARC J. FAGEL (Cal. Bar No. 154425)
JUDITH L. ANDERSON (Cal Bar No. 124281)
 andersonj@sec.gov
MARK P. FICKES (Cal. Bar No. 178570)
 fickesm@sec.gov
ERIN E. SCHNEIDER (Cal. Bar No. 216114)
 schneidere@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2600
San Francisco, California  94104
Telephone:  (415) 705-2500
Facsimile:  (415) 705-2501

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>              Plaintiff,<br><br>     vs.<br><br>CARL W. JASPER,<br><br>              Defendant. | Case No. CV 07-6122 JW<br><br>**SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO MOTION TO DISMISS**<br><br>Date:  April 7, 2008<br>Time:  9:00 a.m.<br>Location:   Courtroom 8, Fourth Floor<br>                 Hon. James Ware |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     ISSUES TO BE DECIDED .............................................................................. 2

III.    THE FACTUAL BACKGROUND ..................................................................... 3

        A.      Summary Of Allegations ................................................................. 3

        B.      Maxim Used Backdated Options To Recruit And Retain
                Employees .......................................................................................... 3

        C.      Jasper Actively Participated In Maxim's Backdating Scheme ........... 3

        D.      Jasper Understood Accounting Rules Required Maxim To
                Record An Expense For Any Backdated Stock Options ..................... 5

        E.      Jasper Prepared Maxim's False And Misleading Public Filings ......... 6

        F.      Jasper Misled Maxim's Auditors ....................................................... 7

        G.      Jasper Profited From His Participation In Maxim's Backdating
                Scheme ............................................................................................... 7

VI.     ARGUMENT .................................................................................................. 8

        A.      The Applicable Legal Standards Require Denial Of Jasper's
                Motion ................................................................................................ 7

                1.      Federal Rule Of Civil Procedure 12(b)(6) ............................ 8

                2.      Federal Rule Of Civil Procedure 9(b) .................................. 8

        B.      The Complaint Spells Out Jasper's Fraudulent Conduct With
                More Than The Requisite Particularity .............................................. 9

        C.      Jasper Acted Knowingly and Recklessly .......................................... 12

        D.      Jasper's Misstatements and Omissions Are Material ....................... 14

        E.      Jasper Violated Other Securities Laws ............................................. 17

        F.      The Commission's Claims For Relief Are Not Time-Barred ............. 19

        G.      The Commission's Prayers For Relief Cannot Be Adjudicated
                On A Motion To Dismiss .................................................................. 21

V.      CONCLUSION ............................................................................................. 21

# TABLE OF AUTHORITIES

**Page**

## Cases

*Aaron v. SEC*,
   463 U.S. 646 (1983).................................................................................................. 18

*Barrie v. Intervioce-Brite, Inc.*,
   397 F.3d 249 (5th Cir. 2005)................................................................................... 15

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988).................................................................................................. 14

*Bell Atlantic Corp. v. Twombly*,
   127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .......................................................... 8

*Bly-Magee v. California*,
   236 F.3d 1014 (9th Cir. 2001)................................................................................ 9

*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994)............................................................................... 8, 16

*Cahill v. Liberty Mut. Ins. Co.*,
   80 F.3d 336 (9th Cir. 1996)............................................................................... 8, 15

*Campbell v. PricewaterhouseCoopers, LLP*,
   No. CIV.S-06-2376 LKK GGH (E.D. Cal. Mar. 20,
   2007) (Karlton, J.), Slip op., 2007 WL 841694 ..................................................... 19

*Cash v. Frederick & Co., Inc.*,
   57 F.R.D. 71 (E.D. Wisc. 1972)............................................................................ 20

*Church of Scientology v. Flynn*,
   744 F.2d 694 (9th Cir. 1984).................................................................................. 8

*Conley v. Gibson*,
   355 U.S. 41 (1957).................................................................................................... 8

*Cooper v. Picket*,
   137 F.3d 616 (9th Cir. 1997)................................................................................. 12

*Dayco Corp. v. Goodyear Tire & Rubber Co.*,
   523 F.2d 389 (6th Cir. 1975).................................................................................. 20

*FEC v. Williams*,
   104 F.3d 237 (9th Cir. 1996).................................................................................. 20

*Fecht v. The Price Company*,
   70 F.3d 1078 (9th Cir. 1995)................................................................................... 9

*Freedman v. Louisiana-Pac. Corp.*,
   922 F. Supp. 377 (D. Or. 1996) ........................................................................... 16

*Galbraith v. County of Santa Clara*,
   307 F.3d 1119 (9th Cir. 2002) ............................................................................. 8

*Gilligan v. Jamco Dev. Corp.*,
   108 F.3d 246 (9th Cir. 1997) ............................................................................... 8

*Greenhouse v. MCG Capital Corp.*,
   392 F.3d 650 (4th Cir. 2004) ............................................................................. 16

*Herzfeld v. Laventhol, Krekstein, Horwath & Horwath*,
   378 F. Supp. 112 (S.D.N.Y. 1974), *affd*, 540 F.2d 27 (2d
   Cir. 1976) ............................................................................................................ 15

*Hollinger v. Titan Capital Corp.*,
   914 F.2d 1569 (9th Cir. 1990) ........................................................................... 12

*Holmberg v. Armbrecht*,
   327 U.S. 392 (1946) .......................................................................................... 20

*Howard v. Everex Systems, Inc.*,
   228 F.3d 1057 (9th Cir. 2000) ..................................................................... 11, 13

*In re CNET Networks, Inc. Deriv. Litig.*,
   483 F.Supp. 2d 947 (N.D. Cal. 2007) ................................................................ 11

*In re Cylink Securities Litig.*,
   178 F. Supp. 2d 1077 (N.D. Cal. 2001) ............................................................. 13

*In re Daou Sys., Inc.*,
   411 F.3d 1006 (9th Cir. 2005) ........................................................................... 15

*In re GlenFed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994) .......................................................................... 9, 12

*In re Kidder Peabody Secs. Litig.*,
   10 F. Supp. 2d 398 (S.D.N.Y. 1998) ................................................................. 16

*In re McKesson HBOC*,
   126 F. Supp. 2d 1248 (N.D. Cal. 2000) ........................................................ 13, 18

*In re UnitedHealth Group PSLRA Litig.*,
   (D. Minn. June 4, 2007), Slip op.,
   2007 WL 1621456, Fed. Sec. L. Rep. P 94, 344 ......................................... 11, 12

*Iolab Corp. v. Seaboard Sur. Co.*,
   15 F.3d 1500 (9th Cir. 1994) ............................................................................... 8

*Livid Holdings, Ltd. v. Salomon Smith Barney Holdings,*
   *Inc.*, 416 F.3d 940 (9th Cir. 2005) .................................................................... 15

*Lynx Ventures LP v. Canadian Imperial Bank of*
   *Commerce*, No. CV 99-07160 RSWL MANX, (C.D.
   Cal. Apr. 18, 2000) (Lew, J.) 2000 WL 33223384 .............................................. 8

*Moore v. Kayport,*
    885 F.2d 531 (9th Cir. 1989).............................................................................. 9, 11

*Neubronner v. Milken,*
    6 F.3d 666 (9th Cir. 1993).................................................................................... 9

*No. 84 Employer-Teamster Joint Council Pension Trust*
    *Fund v. Am. W. Holding Corp.,*
    320 F.3d 920 (9th Cir. 2003)............................................................................... 16

*Occidental Life Ins. Co. v. EEOC,*
    432 U.S. 355 (1977)........................................................................................... 20

*Ponce v. SEC,*
    345 F.3d 722 (9th Cir 2003)............................................................................... 18

*Schwartz v. Celestial Seasonings, Inc.,*
    124 F.3d 1246 (10th Cir 1997)........................................................................... 18

*SEC v. Alexander,*
    No. 06-CV-3844 NGG RER (E.D.N.Y. Sept. 26, 2007)
    (Garaufis, J.), __ F. Supp. 2d. __, 2007 WL 2816195 ...................................... 20

*SEC v. Baxter,*
    No. C-05-03843 RMW (N.D. Cal. Jul. 11, 2007) (Whyte,
    J.) Slip op., 2007 WL 2013958 ............................................................... 10, 11, 13

*SEC v. Caserta,*
    75 F. Supp. 2d 79 (E.D.N.Y. 1999).............................................................. 16, 19

*SEC v. Colello,*
    139 F.3d 674 (9th Cir. 1998).............................................................................. 14

*SEC v. Dain Rauscher, Inc.,*
    254 F.3d 852 (9th Cir. 2001).............................................................................. 18

*SEC v. Fehn,*
    97 F.3d 1276 (9th Cir. 1996).............................................................................. 11

*SEC v. ICN Pharmaceuticals, Inc.,*
    84 F. Supp. 2d 1097 (C.D. Cal. 2000) ............................................................... 12

*SEC v. McNulty,*
    137 F.3d 732 (2d Cir 1998)................................................................................ 18

*SEC v. Murphy,*
    626 F.2d 633 (9th Cir. 1980).............................................................................. 16

*SEC v. Phan,*
    500 F.3d 895 (9th Cir. 2007).............................................................................. 15

*SEC v. Reyes et al.,*
    No. C 06-04435 CRB (N.D. Cal. Feb. 21, 2008)
    (Breyer, J.), Slip op., 2008 WL 410614 ............................................................ 21

*SEC v. Rind*,
   991 F.2d 1486 (9th Cir. 1993) ..................................................................... 20

*SEC v. Systems Software Assoc., Inc.*,
   145 F. Supp. 2d 954 (N.D. Ill. 2001) ....................................................... 16

*SEC v. Trabulse*,
   526 F. Supp. 2d 1001 (N.D. Cal. 2007) ......................................... 9, 10, 14

*SEC v. Yuen*,
   No. CV 03-4376 (C.D. Cal. Mar. 16, 2006) (Pfaelzer, J.)
   2006 WL 1390828 ..................................................................................... 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007) ....................................... 12, 13

*The Takara Trust v. Molex Inc.*,
   429 F. Supp. 2d 960 (N.D. Ill. 2006) ....................................................... 16

*TSC Indus., Inc. v. Northway, Inc.*,
   426 U.S. 438 (1976) ................................................................................... 14

*United States v. Core Laboratories, Inc.*,
   759 F.2d 480 (5th Cir. 1985) ..................................................................... 20

*United States v. Reyes*,
   No. CR-06-0556 CRB (N.D. Cal. May 30, 2007)
   (Breyer, J.), Slip op., 2007 WL 1574540 ................................................ 14

*Walling v. Beverly Enters.*,
   476 F.2d 393 (9th Cir. 1973) ....................................................................... 9

*Warshaw v. Xoma Corp.*,
   74 F.3d 955 (9th Cir. 1996) ................................................................... 9, 11

*Wool v. Tandem Computers, Inc.*,
   818 F.2d 1433 (9th Cir. 1987) ..................................................................... 9

**Statutes**

15 U.S.C. § 77q(a) ............................................................................................ 18

15 U.S.C. § 78m(a) ........................................................................................... 17

15 U.S.C. § 78m(b)(2)(A) ................................................................................. 17

15 U.S.C. § 78m(b)(2)(B) ................................................................................. 17

15 U.S.C. § 78m(b)(5) ...................................................................................... 18

15 U.S.C. § 78n(a) ............................................................................................ 18

15 U.S.C. § 7243 .............................................................................................. 21

28 U.S.C. § 2462 ................................................................................. 2, 3, 19, 20

1

## Rules

2

Fed R. Civ. Pro. § 8 ................................................................................................... 8

3

Fed. R. Civ. Pro. § 9(b) .......................................................................................... 8, 9

4

Fed. R. Civ. Pro. § 12(b)(6) ...................................................................................... 8

5

Fed R. Civ. Pro. § 12(f) .......................................................................................... 19

6

## Regulations

7

8

17 CFR § 210.4-01 ................................................................................................... 15

9

17 C.F.R. § 240.12b-20 ............................................................................................ 17

10

17 C.F.R. § 240.13a-1 .............................................................................................. 17

11

17 C.F.R. § 240.13a-11 ............................................................................................ 17

12

17 C.F.R. § 240.13a-13 ............................................................................................ 17

13

17 C.F.R. § 240.13a-14 ............................................................................................ 18

14

17 C.F.R. § 240.13b2-1 ............................................................................................ 18

15

17 C.F.R. § 240.13b2-2 ............................................................................................ 18

16

17 C.F.R. § 240.14a-9 .............................................................................................. 18

17

## Other Authorities

18

19

Accounting Principles Board Opinion No. 25 ...................................................... 5, 17

20

FASB Statement of Concepts No. 1 ¶ 34 ................................................................ 15

FASB Statement of Concepts No. 2 ¶¶ 58-59 ........................................................ 15

21

Private Securities Litigation Reform Act of 1995,
    109 Stat. 737 ...................................................................................................... 12

22

23

Staff Accounting Bulletin No. 99,
    64 Fed. Reg. 45150 (1999) ................................................................................. 16

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>**Treatises**</u>

2 A James Wm. Moore et al.,
*Moore Federal Practice* ¶ 903, at 1930 (2d ed. 1972)................................................. 9

5 Charles A. Wright & Arthur R. Miller,
*Federal Practice and Procedure* § 1298 (2d ed. 1990) ......................................... 8, 9

5 Charles A. Wright & Arthur R. Miller,
*Federal Practice and Procedure* § 1382 (2d ed. 1990) .......................................... 19

1    **I.    INTRODUCTION**

2          In this securities fraud action, the Securities and Exchange Commission ("Commission")

3    alleges that, from at least 2000 through 2005, defendant Carl W. Jasper ("Jasper"), while Chief

4    Financial Officer at Maxim Integrated Products, Inc. ("Maxim" or the "Company"), participated in a

5    scheme to backdate stock options issued to Maxim's employees and outside directors so that they

6    would receive more valuable options.  As part of the scheme, Maxim failed to record compensation

7    expenses for those backdated options, thus overstating income by millions of dollars and falsely

8    representing in its public filings that it had incurred no expenses for the options.

9          Jasper now moves to dismiss the Commission's first amended complaint ("FAC"), arguing

10   that the very detailed complaint does not plead fraud with sufficient particularity under Federal Rule

11   of Civil Procedure 9(b).  His motion is misguided and invites the misapplication of well-settled law.

12   Above all, Jasper's motion fails by ignoring the crux of the Commission's fraud allegations:  that

13   Jasper knew of and actively participated in Maxim's backdating scheme, and knowing that Maxim

14   should have recorded an expense for its backdated options, Jasper drafted, reviewed and signed

15   Maxim's annual reports on Form 10-K for the fiscal years ended June 24, 2000 through June 25,

16   2005.

17         The allegations in the FAC, which the Court must presume are true, set forth in detail how

18   Jasper violated the antifraud and related securities laws by: (1) repeatedly suggesting to Maxim's

19   CEO that the Company backdate options; (2) knowing that Maxim's CEO was selecting certain grant

20   dates with hindsight; (2) communicating backdated grant dates and stock option prices to Maxim's

21   stock administrator and knowing that the administrator was selecting certain grant dates with

22   hindsight; (3) with this knowledge, falsifying memoranda provided to Maxim's auditors to make it

23   appear as though Maxim had granted the options on an earlier date; and (4) knowingly or recklessly

24   drafting and filing with the Commission (and disseminating to the public) numerous reports that

25   contained false and misleading statements about Maxim's stock option program and income.

26         Because the circumstances of defendant's fraudulent scheme, including the "time, place and

27   nature" of the fraud, are abundantly clear in the FAC, the Commission has fully satisfied Rule 9(b)'s

28   particularity requirement, and neither further amendment of the complaint nor dismissal are

1 | warranted.  The Court should reject Jasper's overly narrow focus in which he argues that the FAC has

2 | not detailed his role with respect to each and every grant made over a five-year period.  This request

3 | seeks to impose a pleading standard far beyond the requirements of Rule 9(b).  Jasper also incorrectly

4 | argues that the Commission must plead particularized facts under an imported scienter standard

5 | applicable only to private litigants that would require pleading allegations giving rise to a "strong

6 | inference of fraud."  To the contrary, Rule 9(b) plainly states that scienter may be averred generally.[1]

7 | Moreover, Jasper's plaint that the Commission's allegations are too vague to allow him to prepare an

8 | adequate answer rings hollow in view of his refusal to testify during the Commission's investigation

9 | by invoking his Fifth Amendment privilege.

10 |       Jasper additionally contends that the "majority of" the Commission's claims are time-barred

11 | by 28 U.S.C. § 2462, the statute of limitations that applies to the government's collections of fines

12 | and forfeitures.  As an initial matter, Jasper's concession that the FAC alleges conduct that occurred

13 | less than five years prior to the filing of the complaint utterly dispenses with the issue.[2]  Even if

14 | Jasper's claim were accurate, the statute of limitations would apply to only the Commission's ability

15 | to request a civil penalty, as there is no statute of limitations applicable to the other remedies the

16 | Commission seeks against Jasper:  a permanent injunction against further violations, disgorgement of

17 | ill-gotten gains with prejudgment interest; and a prophylactic bar against defendant serving as an

18 | officer or director of a public company.

19 |       Accordingly, Jasper's motion should be rejected in its entirety.

20 | **II.   ISSUES TO BE DECIDED**

21 |       1.   Whether the FAC, which sets forth in detail Jasper's involvement in a multi-year

22 | scheme to falsify corporate records by "backdating" options grants to make them more valuable to

23 |

24 | _____

25 | [1] Even if Jasper's invented pleading standard applied to this action, the FAC would certainly satisfy that standard as well.

26 | [2] Moreover, Jasper's claim that "the majority" or "most" of the allegations are outside of the statute

27 | of limitations is demonstrably false.  (Jasper Mot. to Dismiss at 2, 9.)  Jasper limits his focus to the backdated grants and ignores the repeated misrepresentations related to those backdated grants made

28 | in Maxim's financial statements and other public filings.

1  employees while concealing in Maxim's public filings the Company's failure to record material

2  expenses sufficiently alleges securities fraud and related securities law violations.

3      2.      Whether, taking as true the Commission's allegations of defendant's fraudulent

4  scheme spanning from at least Maxim's fiscal years 2000 through 2005, any of the Commission's

5  claims for remedial relief, including a permanent injunction, disgorgement, an officer and director bar

6  or a civil penalty, are time barred under 28 U.S.C. § 2462.

7  **III.   THE FACTUAL BACKGROUND**

8      **A.      Summary Of Allegations**

9      On December 4, 2007, the Commission brought this action under the federal securities laws to

10 enforce defendant's compliance with the antifraud and related provisions of the securities laws.  The

11 FAC alleges that beginning in at least Maxim's 2000 fiscal year and continuing through its 2005

12 fiscal year, Jasper, as Maxim's Chief Financial Officer, caused Maxim to report false information

13 about compensation and expenses to the Company's shareholders and in public filings with the

14 Commission.  Jasper personally was involved in Maxim's backdating scheme, including by

15 suggesting Maxim backdate options and by creating false documents to conceal the backdating.

16 Additionally, with knowledge that Maxim backdated options, an did not record the compensation

17 expenses, Jasper personally drafted, reviewed and signed or certified Maxim's false public filings.

18 FAC ¶¶ 1-3, 20-21, 23, 25, 26, 28-29, 34-42.

19     **B.      Maxim Used Backdated Options To Recruit And Retain Employees**

20     During the time period alleged in the FAC, Maxim regularly used employee stock options as a

21 form of compensation to recruit and retain key employees and its Board of Directors.  FAC ¶ 11.

22 Stock options were the most important part of Maxim's compensation mix because the Company

23 generally paid its employees lower salaries than its peers.  FAC ¶ 12.  Maxim attributed its earnings

24 growth and positive stockholder returns in part to its option practices and emphasized such facts in its

25 public communications with its shareholders.  *Id.*

26     **C.      Jasper Actively Participated In Maxim's Backdating Scheme**

27     From at least fiscal years 2000 through the fourth quarter of 2004, Jasper repeatedly

28 participated in backdating option grants made to current employees, newly hired employees, and to

1  outside directors.  FAC ¶¶ 1, 20, 23, 28-31.  The backdated grants reflected historically low prices of

2  Maxim stock for the weeks prior to the date on which the price actually was selected.  FAC ¶ 20.  For

3  ten consecutive quarters, from the second quarter of fiscal year 2002 to the fourth quarter of fiscal

4  year 2004, Maxim granted backdated options to current employees with an exercise price equal to the

5  lowest price of the quarter.  FAC ¶ 20.

6        Jasper repeatedly suggested to Maxim's CEO that the Company grant backdated options.

7  FAC ¶ 23.  For example, on or around December 28, 2001, Jasper proposed to Maxim's CEO that

8  Maxim use October 2 as the grant date for options for certain employees, and November 28 and

9  December 24 for options for certain new hires.  FAC ¶ 29.  In or around December 2001, Jasper

10  proposed to Maxim's CEO that Maxim use dates selected with hindsight for its grants to outside

11  directors (as Jasper knew, Maxim's CEO ultimately chose to use October 1, 2001).  FAC ¶ 31.

12  Jasper also was aware that Maxim's CEO at times selected grant dates with hindsight.  FAC ¶ 23.

13  For example, on or around August 22, 2003, Maxim's CEO asked Jasper what was the lowest price

14  Maxim could use for that quarter's options.  FAC ¶ 28.  Jasper responded that June 30, 2003 was the

15  best price of the quarter (Maxim's CEO ultimately chose to use June 30, 2003).  FAC ¶ 28.  Jasper

16  communicated the backdated grant dates to Maxim's stock administration department who input the

17  dates into Maxim's equity software.  FAC ¶¶ 22, 24.

18        Jasper also was aware that Maxim's stock administrator determined grant dates for certain

19  new hires by selecting a date with a low stock price for the quarter after the date on which the

20  employee was hired; Jasper confirmed with her the use of those dates.  FAC ¶ 25.  In addition, Jasper

21  drafted backdated memoranda for Maxim's CEO to sign indicating that the CEO had selected the

22  grant date on the dates indicated in the memoranda.  FAC ¶¶ 26, 30.  Jasper knew that these

23  memoranda did not accurately reflect the dates on which decisions were made to grant options.  FAC

24  ¶¶ 26, 30.  He also knew that the grant approval memoranda would be provided to Maxim's auditors

25  as support for the purported grant dates.  FAC ¶¶ 26, 44.

26

27

28

1

2

### D.    Jasper Understood Accounting Rules Required Maxim To Record An Expense For Any Backdated Stock Options

3

4

5

6

7

8

9

10

Under Accounting Principles Board Opinion No. 25, "Accounting for Stock Issued to Employees" ("APB 25") and the accounting principles in effect from 1997 through 2005, issuers like Maxim were required to record an expense on their financial statements for the "in-the-money" portion of any options grant.[3] FAC ¶ 17.  According to APB 25, that difference must be recorded as a compensation expense to be recognized over the vesting period of the option.  FAC ¶ 17.  APB 25 allowed companies, where the key terms of an option grant were known, to grant employee stock options without recording any compensation expense so long as the option exercise price was not below the stock's market price on the date of the grant (*i.e.*, "at-the money").  FAC ¶ 17.

11

12

13

14

15

16

17

18

19

Jasper, Maxim's CFO, understood the accounting implications of awarding "in-the-money" options.  FAC ¶¶ 9, 32, 33.  For example, he warned Maxim's CEO in writing that Maxim should record a compensation expense where it contemplated giving one employee a retroactively-priced option but noted that "for one person, we will just get it done."  FAC ¶ 32.  Jasper also told Maxim's Board that he understood Maxim would have to record an expense if it backdated options to get a lower price.  FAC ¶ 32.  In addition, Maxim's CEO instructed Jasper on several occasions to record a compensation expense for option grants whose grant dates were selected with hindsight.  FAC ¶¶ 27, 28, 33.  Yet, as Jasper knew, Maxim did not record compensation expenses for any of its "in-the-money" options.  FAC ¶¶ 27, 28, 33.

20

21

22

23

24

Jasper concealed Maxim's backdating scheme from the Company's Board.  FAC ¶ 21.  On at least two occasions, in 2004 and again in 2006, Jasper falsely told Maxim's directors that Maxim did not backdate stock options.  FAC ¶ 21.  When Commission staff asked Jasper about the facts and circumstances alleged in the FAC, Jasper asserted his Fifth Amendment right against self-incrimination and refused to answer the Commission staff's questions.  FAC ¶ 9.

25

———————————————

26

27

28

[3] An option is "at-the-money" when granted if the trading price of the common stock on the date of the grant and the "exercise" or "strike" price are the same.  FAC ¶ 11.  An option is "in-the-money" when granted if the trading price of the common stock on the date of the grant is higher than the option's strike price.  *Id.*

1  **E.      Jasper Prepared Maxim's False And Misleading Public Filings**

2  Jasper was Maxim's Chief Financial Officer, Principal Accounting Officer, and Vice

3  President from April 1999 through January 2007.  He obtained his California Certified Public

4  Accountant license in 1984.  Before joining Maxim, Jasper was an auditor at Ernst & Young.  FAC

5  ¶ 9.

6  Despite actively participating in Maxim's backdating scheme, and knowing that Maxim

7  should have recorded an expense for its backdated options, Jasper drafted, reviewed and signed

8  Maxim's annual reports on Form 10-K for the fiscal years ended June 24, 2000 through June 25,

9  2005.  FAC ¶¶ 23, 25, 28-33, 35.  Further, Jasper signed certifications stating that he had reviewed

10  Maxim's 2003, 2004, and 2005 annual reports and that the annual reports did not contain any untrue

11  statements of a material fact or omit to state a material fact necessary to make the statements made, in

12  light of the circumstances under which such statements were made, not misleading.  FAC ¶ 35.  More

13  specifically, Jasper certified Maxim's false statements that it:  (a) accounted for its employee stock

14  option plans in accordance with APB 25, requiring the Company to record an expense for "in-the-

15  money" options (FAC ¶ 36) (fiscal years 2000-2005); (b) generally granted options at prices not less

16  than the fair market value of the Company's common stock on the grant date (FAC ¶ 36) (fiscal years

17  2000-2003); (c) granted options at prices not less than the fair market value of the Company's

18  common stock on the grant date (FAC ¶ 36) (fiscal years 2004-2005); and (d) was not required to

19  record compensation expenses in connection with stock option grants to employees (FAC ¶ 36)

20  (fiscal year 2004*).*  As a result of the repeated backdating, Maxim's financial statements included in

21  its annual reports for its fiscal years 2003 through 2005 - which Jasper drafted, reviewed, signed and

22  certified - overstated the Company's net income by more than 10 percent.  FAC ¶¶ 35, 37.

23  Jasper also reviewed and certified Maxim's quarterly reports on Form 10-Q during its fiscal

24  years 2002 through 2005, all of which contained Maxim's quarterly financial statements.  FAC ¶¶ 38,

25  39.  Jasper reviewed these Forms 10-Q before they were filed with the Commission.  FAC ¶ 39.  But,

26  as Jasper understood, these reports were materially false and misleading because Maxim failed to

27  record compensation expenses in connection with its "in-the-money" options.  FAC ¶ 38.

28

In addition, Jasper drafted or reviewed Maxim's proxy statements before they were filed with the Commission. FAC ¶ 42. But, as Jasper understood, Maxim's proxy statements made materially false representations about Maxim's stock option grants. FAC ¶ 42. For example, Maxim's October 7, 2005 proxy statement requested shareholders approve additional shares for its stock option plan, and stated falsely that the Company's plan was "managed for the best interests of the stockholders" in part because "Maxim's stock options have always been granted with an exercise price equal to the fair market value of Maxim's stock." *Id.*

Furthermore, Jasper signed Maxim's current reports on Form 8-K during the years 2003 though 2005, each of which announced the Company's financial results for the prior quarter. FAC ¶ 40. As Jasper understood, these current reports contained materially false and misleading financial information because Maxim failed to record compensation expenses associated with undisclosed grants of "in-the-money" stock options. FAC ¶ 40. Finally, Jasper signed Maxim's registration statements on Forms S-8, which incorporated Maxim's false and misleading financial statements. FAC ¶ 41.

In early 2007, Maxim announced that it believed the accounting adjustments needed to properly record expenses for options granted to employees and outside directors were material and that it expected to restate its financial statements for its fiscal years 2000 through 2005. FAC ¶ 45.

### F.    Jasper Misled Maxim's Auditors

Jasper was aware that the grant approval memoranda he drafted, which failed to disclose the true grant dates for options to employees and outside directors, were provided to Maxim's external auditors in connection with audits of Maxim's financial statements. FAC ¶ 44. In addition, Jasper signed management representation letters to the auditors that made misleading statements or omitted important information from them. FAC ¶ 44.

### G.    Jasper Profited From His Participation In Maxim's Backdating Scheme

During the time period alleged in the FAC, Jasper profited handsomely from his misconduct. He received Maxim stock options and sold Maxim stock. FAC ¶ 46. He also received annual bonuses tied in part to the Company's profitability. FAC ¶ 44.

1  **VI.    ARGUMENT**

2      **A.    The Applicable Legal Standards Require Denial Of Jasper's Motion**

3          **1.    Federal Rule Of Civil Procedure 12(b)(6)**

4          Motions to dismiss are disfavored and rarely granted. *Conley v. Gibson,* 355 U.S. 41, 45-46

5  (1957), *overruled on other grounds by Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 167 L. Ed.

6  2d 929 (2007); *see also Church of Scientology v. Flynn*, 744 F.2d 694, 695-96 (9th Cir. 1984) ("The

7  conditions that must be met before a motion may be granted under Federal Rule of Civil Procedure

8  12(b)(6) are quite strict."). A motion to dismiss under Fed. R. Civ. Pro. § 12(b)(6) tests the legal

9  sufficiency of the causes of action set forth in the complaint. *Church of Scientology*, 744 F.2d at 695-

10 96. A court should not grant a motion to dismiss unless the plaintiff has failed to plead "enough facts

11 to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974.

12         In deciding a motion to dismiss, a district court generally "may not consider any material

13 beyond the pleadings." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other*

14 *grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). All material

15 allegations of the complaint must be taken as true and construed in the light most favorable to the

16 nonmoving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 340 (9th Cir. 1996). In addition, all

17 reasonable inferences from the facts alleged in the complaint are drawn in the plaintiff's favor. *Iolab*

18 *Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504 (9th Cir. 1994). The Court does not determine

19 whether the Commission will ultimately win the case, but whether the Commission is entitled to offer

20 evidence to support the allegations in the complaint. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246,

21 249 (9th Cir. 1997).

22         **2.    Federal Rule Of Civil Procedure 9(b)**

23         When a claim is based on fraud, Rule 9(b) requires that the circumstances of the fraud be

24 alleged with particularity. Fed. R. Civ. Pro. § 9(b). However, Rule 9(b) must be read in conjunction

25 with the mandate of Fed R. Civ. Pro. § 8 that a complaint consist of a short and plain statement

26 showing why a party is entitled to relief. *Lynx Ventures LP v. Canadian Imperial Bank of*

27 *Commerce,* No. CV 99-07160 RSWL MANX,  (C.D. Cal. Apr. 18, 2000) (Lew, J.) 2000 WL

28 33223384 at *1 (*citing* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §

1298 (2d ed. 1990)). Thus, a complaint is sufficient under Rule 9(b) if it provides a defendant fair

notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive

pleading. *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001); *Warshaw v. Xoma Corp.*,

74 F.3d 955, 960 (9th Cir. 1996); *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994)

(en banc). Thus, contrary to Jasper's claim, Rule 9(b) does not require the pleading of detailed

evidence. *Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973) (*quoting* 2 A James Wm.

Moore et al., *Moore Federal Practice* ¶ 903, at 1930 (2d ed. 1972).

Rule 9(b) provides, in part, that "in all averments of fraud or mistake, the circumstances

constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. Pro. § 9(b). Rule 9(b)

further provides: "Malice, intent, knowledge, and other condition of mind of a person may be averred

generally." In securities fraud actions, the plaintiff must plead with particularity the circumstances

constituting the fraud so that the defendant can prepare an adequate answer. This notice requirement

is satisfied by allegations of the "time, place and nature of the alleged fraudulent activities." *Fecht v.

The Price Company*, 70 F.3d 1078, 1082 (9th Cir. 1995); *accord Warshaw*, 74 F.3d at 960. When a

false or misleading statement is alleged, the plaintiff must set out what is false or misleading about

the statement, and why it is false. *In re Glen Fed*, 42 F.3d at 1548. Where, as here, certain matters

are within the opposing party's knowledge, the pleading requirements of Rule 9(b) may be relaxed.

*Moore v. Kayport*, 885 F.2d 531, 540 (9th Cir. 1989); *Wool v. Tandem Computers, Inc.*, 818 F.2d

1433, 1439 (9th Cir. 1987).

## B.    The Complaint Spells Out Jasper's Fraudulent Conduct With More Than The Requisite Particularity

The FAC's detailed factual allegations meet the Rule 9(b) standard by fully identifying "the

circumstances constituting fraud so that [Jasper] can prepare an adequate answer from the

allegations," specifying "such facts as the times, dates, places, benefits received, and other details of

the alleged fraudulent activity." *Neubronner v. Milken,* 6 F.3d 666, 671-72 (9th Cir. 1993). The

Commission satisfies the particularity requirement in actions alleging an individual's participation in

a financial fraud by identifying the false statement or manipulative acts in which the defendant

participated, and describing the defendant's role in the fraudulent scheme. *See, e.g., SEC v. Trabulse*,

1   526 F. Supp. 2d 1001, 1004 (N.D. Cal. 2007) (denying motion to dismiss complaint for lack of

2   particularity, finding that "examples provided by the SEC do provide times, dates, places, benefits

3   received, and other details of the alleged fraud"); *SEC v. Baxter*, No. C-05-03843 RMW (N.D. Cal.

4   Jul. 11, 2007) (Whyte, J.) Slip op., 2007 WL 2013958 at * 4-5 (finding SEC allegations in financial

5   fraud met the particularity requirements first, by identifying the false or misleading financial

6   statements at issue; second, by alleging the falsity of the statements by referring to contemporaneous

7   information the defendant had which contradicted the statements; and third by alleging sufficient

8   facts regarding the specific defendant's role in the preparation of false financials).

9           Jasper overreaches in complaining that "*what*" the fraud was and "*how*" he was involved can

10  only be adequately pled by describing in detail each and every options grant over a five-year period.

11  This is more detail than Rule 9(b) requires to put Jasper on notice of the claims against him. *See,*

12  *e.g., Trabulse*, 526 F. Supp. 2d at 1005. The FAC sufficiently alleges that Jasper participated in a

13  scheme at Maxim from at least 2000 through 2005 to illegally backdate stock options granted to

14  Maxim employees and outside directors, providing detailed examples of Jasper's conduct. FAC ¶¶ 1-

15  3, 20, 22-25, 28-31. Moreover, by focusing narrowly on the FAC's backdating allegations, Jasper

16  tries to gloss over a key aspect of *what* the fraud was and "*how*" he was involved: that, as part of this

17  scheme, Jasper, as Maxim's CFO, knowingly or recklessly made numerous false and misleading

18  statements in Maxim's public filings and reports. The FAC specifies in great detail the annual

19  reports, quarterly reports, periodic current reports, proxy statements, and registration statements that

20  contained false statements to shareholders about how Maxim granted options and how Maxim

21  accounted for, or failed to account for, such options.[4] For instance, the FAC describes how Maxim's

22  annual reports for fiscal years 2004 and 2005 falsely stated that options were granted at prices not

23  less than the fair market value of the Company's common stock on the grant date. The FAC further

24  alleges that Maxim's financial statements included in its annual reports for its fiscal years 2003

25  through 2005 overstated the Company's net income by more than 10 percent. Likewise, the FAC

26  _____

27  [4] Jasper appears to premise his argument on the notion that the four specific examples of backdating
    fail to satisfy Rule 9(b). Not only is he wrong on the law, *e.g., Trabulse*, 526 F. Supp. 2d at 1005, he

28  is wrong on the facts inasmuch as the four examples, standing alone, are sufficient to meet Rule 9(b).

1   details the ways in which Maxim's quarterly reports, periodic current reports, proxy statements, and

2   registration statements were also false and misleading.  FAC ¶¶ 34-42.

3          Jasper also incorrectly argues that the FAC lacks particularity in regard to "*who*" committed

4   the fraud because it alleges that Jasper "and others" participated in a fraudulent scheme.  Whether

5   Jasper acted alone or with others in authoring the fraudulent public statements described above, the

6   salient fact is that the FAC sufficiently alleges his conduct in the fraudulent scheme.  As a district

7   court here recognized in another financial fraud matter:

8          Moreover, the Ninth Circuit has recognized that it is difficult to attribute particular
           fraudulent conduct to each defendant individually in cases where corporate fraud is
9          alleged.  *Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531, 540 (9th Cir. 1989).
           Therefore, "[t]o overcome such difficulties in cases of corporate fraud, the allegations
10         should include the misrepresentations themselves with particularity and, where possible,
           the roles of the individual defendants in the misrepresentations."

11

12  *Baxter*, 2007 WL 2013958 at *6.  Thus, even though Jasper "and others" were involved in making

13  the false statements, he is directly liable for their public dissemination.  *See, e.g., Warshaw*, 74 F.3d

14  at 959 (defendants liable for false public statements by securities analysts because they intentionally

15  misled the analysts in order to disseminate the false information); *see also Howard v. Everex Systems,*

16  *Inc.*, 228 F.3d 1057, 1061 (9th Cir. 2000) (corporate officer signing document such as Form 10-K on

17  behalf of corporation with requisite scienter can be liable for making false statement).  Jasper is also

18  responsible for the material omissions from those public filings about the true nature of each

19  company's options program.  *SEC v. Fehn*, 97 F.3d 1276, 1290-91 (9th Cir. 1996).

20         Jasper cannot reasonably maintain that his role in the Maxim backdating scheme cannot

21  constitute fraud.  As a court in this district recently observed:

22         Intentionally employing hindsight to adjust the grant date to an advantageously low price,
           or "backdating," is fraud.  Backdating is done to avoid recognizing compensation
23         expenses.  Yet grantees get options that start out in-the-money which enriches them by
           that amount.  This is particularly pernicious where options are granted as incentive-based
24         compensation.  The employee gets the incentive without doing anything to increase the
           company's value.
25

26  *In re CNET Networks, Inc. Deriv. Litig.*, 483 F.Supp. 2d 947, 956 (N.D. Cal. 2007).  *See In re*

27  *UnitedHealth Group PSLRA Litig.*, (D. Minn. June 4, 2007), Slip op., 2007 WL 1621456 at *2, Fed.

28

1  Sec. L. Rep. P 94, 344 (finding claim stated after likening the alleged backdating scheme to the ruse

2  in the 1973 film, *The Sting*).

3      **C.    Jasper Acted Knowingly and Recklessly**

4      In arguing that the FAC fails to plead scienter with particularity, Jasper ignores the plain

5  dictates of Rule 9(b), which provide that "intent, knowledge, and other condition of mind of a person

6  may be averred generally."  *See Cooper v. Picket*, 137 F.3d 616, 628 (9th Cir. 1997) (under Rule

7  9(b), knowledge may be averred generally; there is no independent requirement that the complaint

8  allege with particularity facts giving rise to an inference of scienter) (citation omitted); *SEC v. ICN*

9  *Pharmaceuticals, Inc.*, 84 F. Supp. 2d 1097, 1098 (C.D. Cal. 2000) (same).  Scienter can be

10  established by a showing of recklessness.  *See Hollinger v. Titan Capital Corp*., 914 F.2d 1564, 1569

11  (9th Cir. 1990) (en banc).

12      Seeking to ratchet the standard up yet another notch, Jasper further asks the Court to apply a

13  heightened standard requiring a plaintiff to plead a "strong inference" of scienter.  Jasper's proposed

14  standard is squarely contradicted by the law, as this standard, set forth in the Private Securities

15  Litigation Reform Act of 1995, applies *only* to private litigants.  *See* Private Securities Litigation

16  Reform Act of 1995, 109 Stat. 737 ("PSLRA"); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.

17  Ct. 2499, 2504, 168 L. Ed. 2d 179 (2007) (PSLRA enacted as a "check against abusive litigation by

18  private parties"); *Baxter*, 2007 WL 2013958 at *3 (quoting Rule 9(b) and citing *In re GlenFed*, 42

19  F.3d 1541, 9th Cir. 1994)); *ICN Pharmaceuticals, Inc.*, 84 F. Supp. 2d at 1099 ("the 'more rigorous'

20  pleading requirements under the PSLRA, which go beyond the Rule 9(b) requirements, only apply to

21  private securities fraud actions; they do not apply to a case, such as this, brought by the SEC").[5]

22      Based upon this incorrect standard, Jasper erroneously contends that the FAC fails to allege

23  scienter because it "does not contain any facts other than purported violations of GAAP to establish

24  ─────────────────

25  [5]  Jasper's only support for importing the PSLRA standard in this case consists of two district court
    cases outside of the Ninth Circuit, both decided before *Tellabs*.  As described in *Tellabs*, prior to the

26  enactment of the PSLRA, there was a divergence among the circuits as to whether there should be
    heightened pleading standards for scienter in securities fraud cases, with the Second Circuit imposing

27  the highest, "strong inference" standard, which was rejected by the Ninth Circuit in *GlenFed*.
    *Tellabs*, 127 S. Ct. at 2508.

28

1  the requisite scienter" and that it does not state particular facts to establish motive. *Tellab*s teaches,

2  however, that on a motion to dismiss, courts must consider the complaint in its entirety and, in

3  considering scienter, must take into account plausible opposing inferences. *Tellabs*, 127 S. Ct. at

4  2509. 2513. The *Tellabs* court also stated that (even under the PSLRA standard) while "motive can

5  be a relevant consideration" in pleading scienter, "the absence of a motive is not fatal." *Id.* at 2511.

6  Moreover, "particular facts about significant and specific GAAP violations *can* support an inference

7  that the individuals responsible for such violations acted with scienter." *In re Cylink Securities Litig.*,

8  178 F. Supp. 2d 1077, 1082 (N.D. Cal. 2001) (decided under PSLRA) (emphasis added); *see Baxter*,

9  2007 WL 2013958 at *22 (adopting Ninth Circuit's reasoning in *Howard*, 228 F.3d at 1064, that

10  allegations that a defendant signed a financial statement in the face of "potentially alarming

11  information" concerning the company's financial condition sufficiently supported an inference of

12  scienter); *In re McKesson HBOC*, 126 F. Supp. 2d 1248, 1273 (N.D. Cal. 2000) (under PSLRA

13  standard, "when significant GAAP violations are described with particularity in the complaint, they

14  may provide powerful indirect evidence of scienter. After all, books do not cook themselves.").

15       The FAC is replete with allegations that amply meet the applicable Rule 9(b) scienter

16  standard (as well as the PSLRA standard). Jasper earned a CPA license, was an auditor at Ernst &

17  Young for several years, and served as Maxim's CFO, Principal Accounting Officer, and Vice

18  President from April 1999 through January 31, 2007. He understood the accounting implications of

19  awarding "in-the-money" options and even warned Maxim's CEO that Maxim should record a

20  compensation expense when it contemplated giving one employee a retroactively-priced option.

21  Jasper also told Maxim's Board that he understood Maxim would have to record an expense if it

22  backdated options to get a lower price. Moreover, Jasper specifically was instructed on at least four

23  occasions to record compensation expense in connection with Maxim's backdated options; yet, no

24  compensation expense was recorded. In addition, Jasper drafted false memoranda to serve as an audit

25  trail to make it appear as though the options had been granted at an earlier date knowing that these

26  false documents would be provided to Maxim's auditors. Jasper also signed false management

27  representation letters for the auditors. As if this mountain of allegations are not enough to support a

28  plausible inference of scienter, the allegation that Jasper made a concerted effort to conceal the in-

1    the-money options grants by falsely telling Maxim's directors on two occasions that Maxim did not

2    backdate options raises a further inference of Jasper's knowledge.  FAC ¶¶ 9, 21, 26-27, 32-33, 44.

3        Moreover, notwithstanding his awareness of Maxim's backdating practices and his knowledge

4    that GAAP required Maxim to recognize expenses for awarding "in-the-money" options, Jasper

5    knowingly or recklessly drafted, reviewed, signed or certified numerous public filings falsely

6    representing the Company's options granting policies and overstating Maxim's income by millions of

7    dollars.  In short, the FAC sufficiently alleges Jasper's state of mind by describing specific events in

8    which he was confronted with the application of the accounting rules to expensing of stock options;

9    his direct participation in Maxim's disclosures to its shareholders; his repeated backdating of

10    documents to evade the requirement that they be expensed; and his lies to Maxim's directors.  FAC

11    ¶¶ 21, 26-28, 30, 32-33, 35-36, 38-42.  In considering a motion to dismiss an indictment in another

12    backdating fraud matter, the district court pointed out that similar contentions by the defendants

13    might amount to a defense, "[b]ut none of these possibilities are capable of determination 'without a

14    trial of the general issue.'"  *United States v. Reyes*, No. CR-06-0556 CRB (N.D. Cal. May 30, 2007)

15    (Breyer, J.), Slip op., 2007 WL 1574540 at *4 (quotation and citation omitted).

16        It is noteworthy that when asked about the facts and circumstances alleged in the FAC, Jasper

17    asserted his Fifth Amendment right against self-incrimination and refused to answer the Commission

18    staff's questions.  Indeed, Jasper's fraudulent intent may be inferred from his refusal to answer

19    questions on the grounds that he might incriminate himself.  *See SEC v. Colello*, 139 F.3d 674, 677

20    (9th Cir. 1998) ("Parties are free to invoke the Fifth Amendment in civil cases, but the court is

21    equally free to draw adverse inferences from their failure of proof"); *Trabulse*, 526 F. Supp. 2d at

22    1007, fn. 4 (denying motion to dismiss SEC complaint for lack of particularity, finding that the

23    "Court is entitled to make an adverse inference").

24        **D.    Jasper's Misstatements and Omissions Are Material**

25        To constitute a violation of the antifraud provisions, the deception, misstatement or omission

26    must be "material."  *See Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (*quoting TSC Indus.,*

27    *Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).  A fact is material if there is a substantial

28    likelihood that a reasonable investor would consider it important in making an investment decision.

1  *TSC Indus.*, 426 U.S. at 449.  Materiality is a mixed question of law and fact.  *E.g.*, *SEC v. Phan*, 500

2  F.3d 895, 908 (9th Cir. 2007).  Thus, a court should not address a question of materiality on a motion

3  to dismiss.  *E.g.*, *Barrie v. Intervioce-Brite, Inc.*, 397 F.3d 249, 257 (5th Cir. 2005) (dismissal

4  inappropriate because accounting questions are disputed).  Thus, the Commission is required only to

5  allege, not prove, materiality at this early stage of the litigation.  Moreover, the facts alleged in the

6  FAC are presumed to be true for the purposes of a motion to dismiss.  *Cahill,* 80 F.3d at 340.  In

7  *Livid Holdings, Ltd. v. Salomon Smith Barney Holdings, Inc.*, 416 F.3d 940, 946-47 (9th Cir. 2005), a

8  case upon which Jasper relies, the Ninth Circuit that a complaint sufficiently pled materiality by

9  alleging facts raising a substantial likelihood that a reasonable investor would have made a different

10  investment decision if the misrepresentations about the company's financial condition alleged in the

11  complaint had not been made.  Materiality ordinarily should be left to the trier of fact.  *Phan*, 500

12  F.3d at 908 (reversing district court's granting of summary judgment on materiality issue).[6]

13      The Commission's complaint meets the above pleading standard.  Maxim had the legal duty

14  to provide its shareholders with financial statements that were "useful to present and future investors

15  and creditors and other users in making rational investment, credit and similar decisions" and that

16  were "reliable in that [they] represent[] what [they] purport[] to represent."  *See In re Daou Sys., Inc.*,

17  411 F.3d 1006, 1019 (9th Cir. 2005) (quoting FASB Statement of Concepts No. 1 ¶ 34 & FASB

18  Statement of Concepts No. 2 ¶¶ 58-59) (internal quotations omitted); s*ee also Herzfeld v. Laventhol,*

19  *Krekstein, Horwath & Horwath*, 378 F. Supp. 112, 122 (S.D.N.Y. 1974), *affd*, 540 F.2d 27 (2d Cir.

20  1976).  All financial statements by public companies, such as Maxim, must comply with GAAP.

21  Indeed, "[f]inancial statements filed with the Commission which are not prepared in accordance with

22  generally accepted accounting principles will be presumed to be misleading or inaccurate, despite

23  footnote or other disclosures. . . ."  17 CFR § 210.4-01.

24      The same concept of materiality governs both financial accounting and the federal securities

25  laws.  For this reason, courts often note that "[a] financial statement that . . . does not conform to the

26

27  [6] Jasper inexplicably cites *Phan* as requiring the Commission to plead particularized facts on
    materiality under Rule 9(b).  In fact, *Phan* articulated a summary judgment standard inapplicable
28  here.  *Phan*, 500 F.3d at 908-09.

1  requirements of GAAP is presumptively a false or misleading statement of material fact under Rule

2  10(b)-5." *See, e.g., SEC v. Systems Software Assoc., Inc.*, 145 F. Supp. 2d 954, 958 (N.D. Ill. 2001).

3  The Ninth Circuit has also held that "information relating to a company's financial condition and

4  profitability is generally material." *SEC v. Yuen*, No. CV 03-4376 (C.D. Cal. Mar. 16, 2006)

5  (Pfaelzer, J.) 2006 WL 1390828 at *36 (citing *SEC v. Murphy*, 626 F.2d 633, 653 (9th Cir. 1980));

6  *see also Freedman v. Louisiana-Pac. Corp.*, 922 F. Supp. 377, 390-91 (D. Or. 1996) (a violation of

7  GAAP "is evidence that the company overstated its income which may be used to show a violation of

8  §10(b) and 10b-5"). Likewise, information affecting Maxim's reported income and earnings is

9  presumptively material. *See SEC v. Caserta*, 75 F. Supp. 2d 79, 92-93 (E.D.N.Y. 1999); *In re Kidder*

10  *Peabody Secs. Litig.*, 10 F. Supp. 2d 398, 410 (S.D.N.Y. 1998); *Yuen*, 2006 WL 1390828 at *36.[7]

11       The concept of materiality encompasses qualitative as well as quantitative factors. SEC

12  guidance indicates that "[q]ualitative factors may cause misstatements of quantitatively small

13  amounts to be material." Staff Accounting Bulletin ("SAB") No. 99, 64 Fed. Reg. 45150, 45152

14  (1999). Therefore, "magnitude by itself, without regard to the nature of the item and the

15  circumstances in which the judgment has to be made, will not generally be a sufficient basis for a

16  materiality judgment." SAB 99. Among the relevant factors are whether the misstatement concerns

17  a portion of the company's business that plays a significant part in the company's profitability,

18  whether the misstatement has the effect of increasing management's compensation, and whether the

19  misstatement involves concealment of an unlawful transaction. *Id*.

20       Finally, "investors may reasonably question the integrity of the company's management, and

21  thus cause an alleged misstatement or omission to be material." *The Takara Trust v. Molex Inc.*, 429

22  F. Supp. 2d 960, 975 (N.D. Ill. 2006) (citing *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 659

23  (4th Cir. 2004)).

24  ─────────────────

[7] Jasper argues that the FAC has not sufficiently alleged materiality because Maxim's stock price did
25  not react to the revelation of the backdating scheme. This is incorrect. First, the Court cannot rely on
extrinsic evidence in considering the motion to dismiss. *Branch v. Tunnell*, 14 F.3d 449, 453 (9th
26  Cir. 1994) (In ruling on a motion to dismiss, a district court generally "may not consider any material
beyond the pleadings."). Moreover, the lack of an immediate market reaction does not preclude a
27  finding that misrepresentations are material. *See No. 84 Employer-Teamster Joint Council Pension
Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 934 (9th Cir. 2003).
28

The FAC alleges that Jasper signed and certified Maxim's financial statements, which failed to include stock compensation expenses, that such failure resulted in Maxim's net income being overstated by more than 10%, and that that difference was material. As noted above, information relating to a company's financial condition and profitability is generally material. *Yuen*, 2006 WL 1390828 at *36 (C.D. Cal. 2006). Additionally, Maxim itself announced that it believed the accounting adjustments needed to properly record expenses for options granted to employees and outside directors were material and that it expected to restate its financial statements for Maxim's fiscal years 2000 through 2005.

Further, the FAC allows the inference that Maxim's failure to record stock compensation expense also was qualitatively material. As noted above, misstatements concerning a portion of a company's business that plays a significant part in its profitability can be material. SAB 99. Maxim itself attributed its earnings growth and positive stockholder returns in part to its option practices. Moreover, the FAC alleges Jasper signed and certified annual reports falsely stating that Maxim accounted for its stock options in accordance with APB 25 and that it granted options at fair market value. Jasper also drafted or reviewed proxy statements falsely stating that Maxim always granted options at fair market value. Finally, the FAC alleges that Jasper deliberately circumvented Maxim's accounting controls and falsified its books and records. Obviously, misconduct by a CFO who is entrusted with the honest operation of the company would be a serious matter to any reasonable investor.

### E.    Jasper Violated Other Securities Laws

The FAC additionally alleges that Jasper violated: (1) Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13, which obligate issuers of securities to file with the Commission accurate periodic reports; (2) Section 13(b)(2)(A) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(A), which obligates issuers of securities to make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; (3) Section 13(b)(2)(B) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(B), which obligates issuers of securities to devise and maintain a sufficient system of internal accounting

controls; (4) Section 13(b)(5) of the Exchange Act, 15 U.S.C. § 78m(b)(5), which provides that "no person shall knowingly circumvent or knowingly fail to implement a system of internal accounting controls or knowingly falsify any book, record, or account" required to be kept under the statute; (5) Rule 13b2-1, 17 C.F.R. § 240.13b2-1, which provides that "no person shall, directly or indirectly, falsify or cause to be falsified, any book, record or account" required to be kept under the statute; (6) Rule 13b2-2, 17 C.F.R. § 240.13b2-2, which prohibits making false statements and omissions to accountants and auditors; and finally, (7) Rule 13a-14, 17 C.F.R. § 240.13a-14, which prohibits false certifications.

Jasper argues that the pleading requirements of Rule 9(b) apply to the Section 13 claims alleged in the FAC because they "sound in fraud."[8]  However, scienter is not an element of these offenses, *see*, *e.g. Ponce v. SEC,* 345 F.3d 722, 737 (9th Cir 2003); *SEC v. McNulty*, 137 F.3d 732, 741 (2d Cir 1998); *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1253 (10th Cir 1997), and the mere fact that a claim may "sound in fraud" does not mean that Jasper can import a scienter requirement into the Commission's claims for violations of Section 13.  *See In re McKesson HBOC*, 126 F. Supp. 2d at 1266.  Jasper further argues, without citing any authority, that Rule 9(b) also applies to negligence claims brought under Sections 17(a)(2) and (3) of the Securities Act, 15 U.S.C. § 77q(a), Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9 thereunder, 17 C.F.R. § 240.14a-9.  These claims similarly do not require scienter.  *See Aaron v. SEC*, 463 U.S. 646, 696 (1983) (Sections 17(a)(2) and (3) of the Securities Act); *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir. 2001) (same); *In re McKesson HBOC*, 126 F. Supp. 2d at 1263.

As noted above, the Commission has more than adequately alleged the "who, what, where, and, when" required by Rule 9(b).  Consequently, the Commission has also satisfied any Rule 9(b) requirements that may apply to the FAC's allegations that Jasper violated Sections 17(a)(2) and (3) of the Securities Act, Section 13(a) of the Exchange Act and the rules thereunder, Section 13(b) of the

---

[8] Jasper devotes one sentence to these seven causes of action without providing any analysis concerning why they should be dismissed.  Jasper's silence speaks volumes.  Once the Court examines what conduct is proscribed by these statutes and rules, it becomes abundantly clear that Jasper's motion must fail.

1   Exchange Act and the rules thereunder, and Section 14(a) of the Exchange Act and the rules

2   thereunder.

3   **F.    The Commission's Claims For Relief Are Not Time-Barred**

4   Jasper argues that the Court should "dismiss" the FAC or "strike" some of its claims,

5   erroneously asserting that the "most of" the Commission's claims are barred by the statute of

6   limitations that applies to the government's collection of a fine, 28 U.S.C. § 2462.[9]  This argument

7   fails both on the law and the facts.  First, Jasper concedes, as he must, that the FAC does allege

8   conduct that occurred less than five years prior to the filing of the complaint.  As a matter of law, this

9   circumstance alone disposes entirely of his argument, as claims may be dismissed under Rule

10  12(b)(6) only if, taking the factual allegations as true, *no* relief may be granted.  Jasper's argument

11  does not imply that no penalty may be imposed.  *See Caserta*, 75 F. Supp. 2d at 89 (where relief may

12  be predicated on conduct within five-year period, statute of limitations does not bar claim); *see also*

13  *Campbell v. PricewaterhouseCoopers, LLP*, No. CIV.S-06-2376 LKK GGH (E.D. Cal. Mar. 20,

14  2007) (Karlton, J.), Slip op., 2007 WL 841694 at *6 and fn. 4.

15  Jasper's motion focuses solely on the allegations regarding his conduct in personally

16  backdating Maxim's option grants, but conveniently ignores the FAC's allegations surrounding his

17  preparation and certification of Maxim's false and misleading public reports and filings in 2003,

18  2004, and 2005.  On this basis alone, there can be no statute of limitations bar.

19  Yet, even were it not the case that Jasper's fraudulent scheme continued through 2005, as

20  alleged in the FAC, the statute of limitations he cites would not result in dismissal of the

21  Commission's complaint or any of the "acts alleged."  Section 2462 of Title 28 states:

22  Except as otherwise provided by Act of Congress, an action, suit or proceeding
    for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or

23

24  [9] Federal Rule of Civil Procedure 12(f) permits a court to strike from any pleading any "redundant,
    immaterial, impertinent, or scandalous matter."  Fed R. Civ. Pro. § 12(f).  Motions to strike are
25  disfavored, often being considered "time wasters," and should be denied unless the challenged
    allegations have no possible relation or logical connection to the subject matter and may cause
26  significant prejudice to a party.  5 Charles A. Wright & Arthur R. Miller, *Federal Practice and
    Procedure* § 1382 (2d ed. 1990).  Jasper's motion fails to offer any rational basis for striking
27  allegations from the complaint based on the relevant legal standard.  His so-called "motion to strike"
    should be denied on this basis alone.
28

1  otherwise, shall not be entertained unless commenced within five years from the
2  date when the claim first accrued if, within the same period, the offender or the
   property is found within the United States in order that proper service may be
3  made thereon.

4  The limitations period provided by 28 U.S.C. § 2462 applies, by its terms, only to claims for "any

5  civil fine, penalty, or forfeiture" and not to equitable claims for disgorgement or injunctive relief.

6  There is no implied statute of limitations applicable to SEC actions seeking equitable remedies such

7  as an injunction or disgorgement. *SEC v. Rind*, 991 F.2d 1486, 1488-92 (9th Cir. 1993). As the

8  Court noted, "[i]mposing a state or any other statute of limitations on Commission civil enforcement

9  actions would also conflict with the underlying policies of the securities laws; this conclusion

10 strongly negates any inference that Congress intended a limitations period to apply." *Id*. at 1492

11 (citing *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 367 (1977)).

12      Moreover, Jasper's efforts to conceal evidence, his lies, and his invocation of the Fifth

13 Amendment clearly require equitable tolling of any applicable statutes of limitations. *See, e.g., FEC

14 v. Williams*, 104 F.3d 237, 240 (9th Cir. 1996) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397

15 (1946)); *United States v. Core Laboratories, Inc.*, 759 F.2d 480, 484 (5th Cir. 1985); *Dayco Corp. v.

16 Goodyear Tire & Rubber Co.*, 523 F.2d 389 (6th Cir. 1975); *see SEC v. Alexander*, No. 06-CV-3844

17 NGG RER (E.D.N.Y. Sept. 26, 2007) (Garaufis, J.), __ F. Supp. 2d. __, 2007 WL 2816195, at *15

18 (determining on motion to strike affirmative defenses that applicability of equitable tolling of fraud

19 claims in options backdating case too difficult to analyze at that time).

20      Lastly, even if Jasper's arguments about the application of 28 U.S.C. § 2462 had any merit,

21 which they do not, he overreaches by requesting that the Court "dismiss" or "strike" allegations from

22 the complaint. Rule 12(b)(6) permits for dismissal only of "a claim for relief." Where a plaintiff's

23 allegations support any claim, those allegations are not independently subject to removal from the

24 complaint. *Cash v. Frederick & Co., Inc.*, 57 F.R.D. 71, 78-79 (E.D. Wisc. 1972). It is far too

25 premature to pick among the evidence to delineate what will be relevant.

26

27

28

**G.    The Commission's Prayers For Relief Cannot Be Adjudicated On A Motion To Dismiss**

Jasper's request to "strike" or limit the Commission's prayers for relief are inappropriate on a motion to dismiss.  First, the Commission is not seeking "retroactive" application of Section 304 of the Sarbanes-Oxley Act, 15 U.S.C. § 7243.  Rather, the Commission seeks forfeiture of bonuses received *after* enactment of Sarbanes-Oxley.  Jasper falsely claims that the Commission "concedes" that he never profited from his misconduct.  To the contrary, the FAC clearly alleges that Japer profited handsomely from his misconduct; he received Maxim stock options, he sold Maxim stock, and he also received annual bonuses tied in part to the Company's profitability.  FAC ¶ 46.  In another options backdating case, a district court recently denied a similar motion to "strike" the Commission's request for a civil penalty.  There, the Court found that because the Commission adequately pled facts that could sustain violations of § 10(b) of the Exchange Act and § 17(a) of the Securities Act, the Commission was entitled to move forward with its case.  *See SEC v. Reyes et al.*, No. C 06-04435 CRB (N.D. Cal. Feb. 21, 2008)  (Breyer, J.), Slip op., 2008 WL 410614 at * 2.  Defendant's request to "strike" or otherwise limit the Commission's effort to pursue appropriate remedies is frivolous and should be summarily denied.

**V.    CONCLUSION**

For all the above reasons, the defendant's motion to dismiss should be denied.


Dated: February 29, 2008                         Respectfully Submitted,


                                                  /s/  Mark P. Fickes
                                                  Marc J. Fagel
                                                  Judith L. Anderson
                                                  Mark P. Fickes
                                                  Erin E. Schneider

                                                  Attorneys for Plaintiff
                                                  SECURITIES AND EXCHANGE COMMISSION