# **EXHIBIT D**

Westlaw.

Slip Copy                                                                                                              Page 1
Slip Copy, 2007 WL 2013958 (N.D.Cal.)
**(Cite as: Slip Copy)**

S.E.C. v. Baxter
N.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
San Jose Division.
SECURITIES and EXCHANGE COMMISSION,
Plaintiff,
v.
Keith G. BAXTER, Ronald J. Goedde, and Richard D. Nye, Defendants.
No. C-05-03843 RMW.

July 11, 2007.

Elizabeth Espinosa Krupa, Thomas J. Krysa, for Plaintiff.
Susan D. Resley, Amy M. Ross, Grant P. Fondo, Monique R. Sherman, Laura R. Smith, for Defendants.

ORDER DENYING DEFENDANT NYE'S MOTION TO DISMISS

RONALD M. WHYTE, United States District Judge.
**\*1** Before this court is defendant Richard D. Nye's ("Nye") motion to dismiss the Securities and Exchange Commission's ("SEC") First Amended Complaint ("FAC") for failure to state a claim. Defendant Keith G. Baxter ("Baxter") [FN1] originally noticed a motion to dismiss set for hearing the same day. However, the SEC and Baxter filed notice that they have negotiated a proposed settlement and stipulated to extend the briefing schedule with respect to Baxter's motion to dismiss.[FN2] The SEC opposes Nye's motion. The court has read the moving and opposing briefs and considered the arguments of counsel. For the reasons set forth below, the court DENIES defendant Nye's motion to dismiss.

> [FN1.] Baxter was Cornerstone's chief executive officer and chairman of the board of directors. FAC ¶ 18.
>
> [FN2.] On January 5, 2007 Baxter filed notice of a Consent to Final Judgment and the court entered final judgment against him shortly thereafter.

At the April 7, 2006 hearing for defendants' motion to dismiss the SEC's complaint the court noted that it was difficult to tell from the complaint which facts supported which of the SEC's claims. The parties then advised the court that they had entered into a stipulation for the SEC to amend its complaint. Defendant Nye now moves to dismiss the FAC.

Cornerstone Propane Partners, L.P. ("Cornerstone") was formerly one of the nation's largest propane marketers. FAC ¶ 1. It was formed in October 1996 by Northwestern Corp., headquartered in Sioux Falls, South Dakota, to hold and operate Northwestern's non-regulated propane business. *Id.* ¶ 24. It consisted of two divisions: a retail division that sold propane through customer service centers and Coast Energy Group ("CEG"), the larger subsidiary, which handled the wholesale of propane and other energy products. *Id.* ¶¶ 1, 30. In 1996 Cornerstone completed an initial public offering of its limited partnership units, which were registered with the SEC and traded on the New York Stock Exchange. *Id.* ¶ 23. Cornerstone's fiscal year ends June 30. Cornerstone was required to file annual and quarterly reports with the SEC, including financial statements prepared in conformity with Generally Accepted Accounting Principles ("GAAP"). *Id.* ¶ 4. At issue are disclosures in Cornerstone's forms 10-K for 2000 and 2001, its forms 10-Q for the first three quarters of 2001, and a September 28, 2001 press release.

Nye was vice president of finance and administration of Cornerstone from January 1998 to November 2002 and acting chief financial officer of Cornerstone from July 2001 to June 2002. *Id.* ¶ 20. Between 1997 and 2000 CEG was the subject of numerous record-keeping problems. *See* Mot. at 4-5; FAC ¶ 31. At the end of the 1998 audit, the outside auditors brought CEG's accounting deficiencies to the attention of Cornerstone management. FAC ¶ 47. The SEC alleges that from 1998 through 2000 Nye knew that Cornerstone failed to improve its accounting systems, hire additional accounting staff, or enhance its record-keeping processes to keep pace with the company's dramatic growth and diversification. *Id.* ¶ 32. The SEC contends that Nye knew that proper documentation had not been maintained and that CEG was unable to verify various significant account balances in its books and records which led to non-conforming financials. *Id.* ¶ 36. The SEC alleges that from 1996 through 2000 CEG was unable to verify balances for accounts such as accounts receivable,

accounts payable, cost of sales, cash, and clearing accounts. *Id.* ¶¶ 37-40.In addition, between 1999 and 2000 Nye allegedly knew that the intercompany accounts did not balance and knew that the company's Canadian-denominated transactions were not properly converted by either the accounting system or manually, but did nothing to fix the errors. *Id.* ¶¶ 42-43.Starting in January 1999 Cornerstone began maintaining CEG's accounting records on a new accounting system. However, the account balances on this new system apparently differed significantly from the balances maintained in CEG's accounting system due to improper record keeping. *Id.* ¶ 45.

**\*2** During 2000 and 2001 Cornerstone hired new management at CEG to oversee a project to verify "hundreds of millions of dollars of account balances" recorded in its accounting records and hired a new controller to improve record-keeping and substantiation of accounts. *Id.* ¶¶ 2, 49.The project included identifying account balances that could not be substantiated, which were then transferred to a "holding account" for further research. *Id.* ¶¶ 52-54.According to the SEC, by the time Cornerstone prepared its 2000 financial statements there were still unreconciled discrepancies between Cornerstone's accounting records for CEG and CEG's own accounting records, including $25 million for accounts payable, $6 million for accounts receivable, and $16 million for clearing accounts. *Id.* ¶ 59.Nye allegedly directed Robert Ellington, Cornerstone's controller at the time, to reclassify the unverified account balances in order to conceal them from the auditors. *Id.* ¶¶ 57-61.Nye (and others) reviewed and signed Cornerstone's fiscal year 2000 annual report on form 10-K. *Id.* ¶ 63.Nye also reviewed the 2001 forms 10-Q and signed the management representation letters in connection with the audit and quarterly reviews for 2000 and 2001, which provided, *inter alia:* (1) Cornerstone's financial statements were fairly presented in conformity with GAAP; (2) there were no material transactions that had not been properly recorded in the accounting records underlying the financial statements; and (3) the accounting records underlying the financial statements accurately and fairly reflected, in reasonable detail, the transactions of the company and its subsidiaries. *Id.* ¶¶ 10-11, 70, 82.

The SEC alleges that the project uncovered hundreds of millions of dollars of unsubstantiated account balances from many of CEG's business units. *Id.* ¶¶ 3-4.As a result, the SEC contends, the financial statements disclosed in Cornerstone's filings with the SEC did not accurately reflect the transactions of the company and were therefore not in compliance with GAAP. *Id.* ¶ 4. In addition, the SEC submits that during the course of the substantiation project Cornerstone failed to disclose the likelihood that the company would be forced to write-off those balances that it was unable to verify or substantiate.*Id.* ¶ 5.

The SEC alleges that at the end of 2001 the holding account included more than $320 million of unsubstantiated account balances. *Id.* ¶ 83.The project results indicated that CEG should write-off (presumably a net balance) of more than $15 million in unsubstantiated balances. *Id.* ¶ 84.In July 2001 Nye informed the outside auditors of the unsubstantiated balances and was told the balances either needed to be substantiated or written off or Cornerstone would not receive an unqualified audit opinion. *Id.* ¶ 85.Thereafter, the SEC alleges, Cornerstone, with the assistance of its outside auditors, performed a verification project of CEG's Canadian crude oil and natural gas businesses for the prior 18 months which did not uncover any errors. On September 28, 2001 Cornerstone issued a press release disclosing a write-off as of June 30, 2001, purportedly drafted in part by Nye:

**\*3** Cornerstone Propane Partners, L.P. today reported that it is recording a $9.8 million non-cash charge to its fiscal 2001 fourth quarter results following a detailed review of the Canadian crude oil and U.S.-based petroleum liquids processing operations of Coast Energy Group ("CEG"), Cornerstone's commercial energy wholesale and integrated logistics division. The review was performed in connection with the documentation of the final accounting treatment of the sale of CEG's Canadian crude oil business in fiscal 2001.

*Id.* ¶¶ 87-91.[FN3]The 2001 form 10-K repeated these statements regarding the write-off. The SEC alleges these disclosures (1) falsely attributed the write-off entirely to 2001, (2) falsely attributed the write-off only to the Canadian crude oil business and U.S.-based petroleum liquids processing operations; and (3) misleadingly omitted disclosure of the gross unsubstantiated balances that were in the hundreds of millions of dollars by disclosing only the net balance of $9.8 million. *Id.* ¶¶ 98-99.Cornerstone filed for bankruptcy in 2004.

FN3. The SEC also appears to allege that, at

Baxter's direction and with Nye's knowledge, Cornerstone deleted disclosures in the September 28, 2001 press release that indicated the write-offs related to accounting problems and errors prior to 2001. ¶ 96.

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Dismissal can be based on the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."*Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.1988)*. The issue is not whether the non-moving party will ultimately prevail but whether it is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir.1997)*. When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Barron v. Reich, 13 F.3d 1370, 1374 (9th Cir.1994)*. However, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."*Bell Atlantic Corp. v. Twombly,* 530 U.S. ----, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).

Fed.R.Civ.P. 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."*See also In re GlenFed Inc. Securities Litig., 42 F.3d 1541 (9th Cir.1993)* (en banc). Therefore, the SEC's allegations of falsity must be stated with particularity. *Id.* at 1548."Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged."*Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir.2003)*."[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false."*Id.* In addition, Rule 9(b) applies not only to claims in which fraud is an essential element, but also to claims grounded in allegations of fraudulent conduct. *Id.* at 1103-04 (explaining that where a plaintiff alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of a claim, the claim is said to be "grounded in fraud" or to "sound in fraud" and the pleading of that claim as a whole must satisfy Rule 9(b)).

**\*4** Nye argues that each of the SEC's claims fail to state one or more element with the requisite particularity. The parties do not dispute that the SEC's first, third, fourth, and fifth claims against Nye are grounded in fraud and subject to the heightened pleading requirements of Fed.R.Civ.P. 9(b). The SEC contends that its second and sixth claims for relief do not sound in fraud and, accordingly, are not subject to the heightened pleading requirements of Rule 9(b). The court addresses each in turn.

### A. Section 10(b) and Rule 10b-5 Claims

The SEC's first claim allege that Nye violated section 10(b) of the Exchange Act and Rule 10b-5 thereunder by making false statements or omissions in connection with the offer or sale of publicly-traded partnership shares of Cornerstone. Nye argues that the complaint (1) fails to state with particularity the alleged statements that are false and misleading and (2) fails to specify the conduct of Nye individually. Although not specifically argued, the FAC also adequately alleges the requisite scienter.

### 1. Alleged False and Misleading Statements

Nye argues that falsity has not been pled with particularity. Specifically, he contends that: (1) the complaint merely alleges that the "financial statements" were false and failed to conform with GAAP, but fails to identify which balances were false and misleading or to quantify such items, the allegations of the statements describing the write-off do not show that those statements were false, and (3) falsity is not alleged with particularity because no contemporaneous statements showing falsity have been alleged.[FN4]The court finds that although the complaint is not easy to follow, the allegations state with particularity, and sufficiently under Rule 9(b), "the time, place and nature of the alleged fraudulent activities of defendants," that is sufficient under Rule 9(b).*See Semegen v. Weidner,* 780 F.2d 727, 734-35 (9th Cir.1985); *see also Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir.2007) (citation omitted).

> FN4. Nye also argues that, in any event, the SEC has not alleged a duty to disclose the in-progress reconciliation. Nye relies upon *Brody v. Transitional Hosp. Corp.,* 280 F.3d 997, 1006 (9th Cir.2002) for the proposition that "Rule 10b-5 ... prohibit[s] only misleading and untrue statements, not

statements that are incomplete ."He also cites *In re Convergent Tech. Sec. Litig.,* 948 F.2d 507, 516 (9th Cir.1991) for the proposition that "[t]he securities laws do not require management to 'bury the shareholders in an avalanche of trivial information-a result that is hardly conducive to informed decision-making.' " *See* Mot. Dismiss at 10:19-25. However, the SEC's claims do not rest on allegations of incomplete statements or trivial information. The complaint alleges substantially misleading and untrue statements.

First, the court finds that the allegations are sufficient in pointing to particular financial statement balances the SEC contends were false and misleading when issued. As to the financial statements in the form 10-K for 2000, the SEC alleges that during 1999 and 2000 CEG was unable to verify that the accounts receivable, accounts payable, cost of sales, cash, and clearing accounts. Variances between the Cornerstone's accounting system and CEG's accounting system for the CEG division showed discrepancies of $25 million for accounts payable, $6 million for accounts receivable, and $16 million for the clearing account as of the 2000 fiscal year end. Cornerstone was unable to properly eliminate its intercompany balances by approximately $1.5 million as of June 30, 2000. As to its 2001 quarterly financial statements, Cornerstone was unable to substantiate balances totaling "hundreds of millions of dollars," which it transferred to a holding account. Cornerstone did not properly account for currency differences for Canadian dollar transactions. These allegations that the accounting records did not fairly and accurately reflect Cornerstone's transactions and operations (and did not comply with GAAP) support the inference that its financial statements were materially false and misleading. *See, e.g., S.E.C. v. Sandifur,* 2006 WL 538210, *3 (W.D.Wash.2006) (holding that "[b]ecause the complaint specifically alleges that the 10-Q and the 10-K misstated Metropolitan's pre-tax net income, the Court finds that the complaint identifies with sufficient particularity the alleged misstatements made by Defendant Ness in these documents").

*****5** Although unclear, the complaint does not appear to allege that the June 30, 2001 financial statements were false and misleading since Cornerstone apparently had reclassified unsubstantiated balances to a holding account and then written-off the net amount.[FN5]Rather, the SEC alleges that the disclosure of the write-off in the June 30, 2001 form 10-K and September 28, 2001 press release was false and misleading. The 2001 form 10-K and press release stated:

> [FN5.] The complaint does suggest that the write-off attributed to 2001 should have been at least partially attributed to 1999 and 2000.

Cornerstone Propane Partners, L.P. today reported that it is recording a $9.8 million non-cash charge to its fiscal 2001 fourth quarter results following a detailed review of the Canadian crude oil and U.S.-based petroleum liquids processing operations of Coast Energy Group ("CEG"), Cornerstone's commercial energy wholesale and integrated logistics division. The review was performed in connection with the documentation of the final accounting treatment of the sale of CEG's Canadian crude oil business in fiscal 2001.
FAC ¶ 91. Specifically, the SEC alleges that Cornerstone recorded the $9.8 million write-off because of the remaining unreconciled balances resulting from years of unsubstantiated balances. Therefore, the SEC contends recording the write-off entirely in 2001 was false and misleading. The SEC contends that the statement that the write-off was prompted by the recent sale of the Canadian crude oil business unit was false because the write-off was actually prompted by years of poor record-keeping and lack of internal controls in all areas of CEG's business. The SEC also alleges that the statement that the write-off was primarily attributed to a "recent sale" of the Canadian crude oil business unit was false because the write-off was actually a result of unsubstantiated balances for many of CEG's business units (and therefore the statements were misleading of the nature and scope of the accounting problems that caused the write-off). In addition, the SEC contends, even if the net impact of the unsubstantiated balances was $9.8 million, the disclosure was false and misleading because it failed to also disclose that the gross unsubstantiated balance in the holding account was more than $320 million.

Second, the court finds that the SEC has alleged with sufficient particularity the falsity of the statements. "[A] plaintiff can satisfy Rule 9(b)'s particularity requirements for alleging the falsity of a statement by 'pointing to inconsistent contemporaneous statements or information (such as internal reports) which were

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                         Page 5
Slip Copy, 2007 WL 2013958 (N.D.Cal.)
**(Cite as: Slip Copy)**

made by or available to the defendants."*Yourish v. Cal. Amplifier,* 191 F.3d 983, 994 (9th Cir.1999) (citing *GlenFed,* 42 F.3d at 1549). Here, the SEC has adequately alleged the existence of contemporaneous information available to or known by defendant Nye at the time the financial statements were issued. As to the falsity of the 2000 annual financial statements and 2001 quarterly financial statements, the SEC alleges that Cornerstone management had identified unsubstantiated balances from years of record-keeping errors and had commenced a project to reconcile such balances as early as March 2000. The SEC alleges that these efforts included the hiring of additional accounting staff, discussion of the remaining unreconciled balances among the accounting personnel, including Nye, and the reclassification of unreconciled balances, including at the direction of Nye. The SEC alleges that at the time the 2000 annual financial statements and 2001 quarterly financial statements were issued, these efforts continued and there remained substantial unreconciled balances (resulting in financial statements that were not in conformity with GAAP). These factual allegations, taken together, sufficiently set forth contemporaneous information showing falsity of the statements to satisfy Rule 9(b)'s particularity requirement.

**\*6** Defendant further argued at the hearing on the motion that the complaint is insufficient in that it mixes the scienter allegations with the falsity allegations. Although the requirements of falsity and scienter are distinct and both elements are necessary for a § 10(b) claim, *see*15 U.S.C. §§ 78u-4(b)(1) and (2), the dual pleading requirements are typically incorporated into a single inquiry because falsity and scienter are generally inferred from the same set of facts. *In re Read-Rite Corp.,* 335 F.3d 843, 846 (9th Cir.2003); *Ronconi v. Larkin,* 253 F.3d 423, 429 (9th Cir.2001). Here, plaintiff's factual allegations satisfy the falsity requirement, as discussed above, even if certain of the same allegations also support the scienter requirement.

### 2. Specificity of Individual Conduct

Nye also contends that the complaint fails to satisfy the specificity required by Rule 9(b) because it improperly groups the defendants in describing alleged improper conduct or accuses them of engaging in identical acts. In *Howard v. Everex Systems, Inc.,* 228 F.3d 1057, 1061 (9th Cir.2000), the Ninth Circuit held that a corporate officer's signature on the document containing the alleged false and misleading statements, when coupled with scienter on the part of the officer, is sufficient to show that he made the statement. The *Howard* court stated: "[W]hen a corporate officer signs a document on behalf of the corporation, that signature will be rendered meaningless unless the officer believes that the statements in the document are true."*Id.*"Key corporate officers should not be allowed to make important false financial statements knowingly or recklessly, yet still shield themselves from liability to investors simply by failing to be involved in the preparation of those statements."*Id.* at 1062.Moreover, the Ninth Circuit has recognized that it is difficult to attribute particular fraudulent conduct to each defendant individually in cases where corporate fraud is alleged. *Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531, 540 (9th Cir.1989). Therefore, "[t]o overcome such difficulties in cases of corporate fraud, the allegations should include the misrepresentations themselves with particularity and, where possible, the roles of the individual defendants in the misrepresentations."*Id.*

Nye was vice president of finance and administration from January 1998 to November 2002 and acting chief financial officer from July 2001 to June 2002. FAC ¶ 20. Although some allegations attribute conduct to the defendants collectively, the complaint also includes allegations specific to Nye's role.[FN6] For example, the complaint alleges that Nye directed CEG's controller to reclassify the unverified account balances in order to conceal them from the auditors. *Id.* ¶ 58.Nye approved of the reclassification of discrepancies between Cornerstone's accounting system and CEG's accounting system to a holding account. *Id.* ¶ 59.Nye participated in preparing the disclosures regarding the write-off in the 2001 form 10-K and press release. *Id.* ¶¶ 87-90.Nye received updates throughout 2001 as to the incomplete status of the account verification project. *Id.* ¶ 76.Nye and Ellington participated in detailed quarterly reviews of specific unsubstantiated balances and balances transferred to the holding account. *Id.* Nye reviewed divisional financial statements, including CEG's, and reviewed Cornerstone's consolidated financial statements. *Id.* ¶ 34.Nye reviewed and signed the forms 10-K and 10-Q and the management representation letters in connection with the yearly audits and quarterly reviews. *Id.* ¶¶ 10-11, 63, 77.While the complaint is vague to the extent it refers generically to email communications and reports sent to Nye about the accounting problems and to internal

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 6
Slip Copy, 2007 WL 2013958 (N.D.Cal.)
**(Cite as: Slip Copy)**

meetings without any specificity, the complaint alleges sufficient facts as to Nye's role in the alleged false and misleading statements to survive Rule 12(b)(6) dismissal. See *Swartz, 476 F.3d at 765* ("In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identify the role of each defendant in the alleged fraudulent scheme.'") (citing *Moore, 885 F.2d at 541*) (internal edits omitted); Compare *Hokama v. E.F. Hutton Co., 566 F.Supp. 636, 646 (C.D.Cal.1983)* (finding that conclusory allegations that merely stated the defendants participated and provided substantial assistance to be insufficient under Rule 9(b)).

> FN6. Moreover, the SEC does not rely upon the "group published doctrine" as defendant argues since it does not attribute responsibility for false and misleading statements to a group of defendants, but rather alleges that Nye was responsible for, *inter alia,* reviewing the divisional and consolidated financial statements, reviewing and discussing the unsubstantiated account balances, reviewing and signing the forms 10-K and 10-Q, and drafting the press release statements that are alleged to be false and misleading.

### 3. Scienter

**\*7** Defendant Nye does not argue that scienter is not adequately pled. However, a showing of scienter is an element of an enforcement action pursuant to section 10(b) and Rule 10b-5. *S.E.C. v. Rubera, 350 F.3d 1084, 1094 (9th Cir.2003)* (citing *Aaron v. SEC, 446 U.S. 680, 701-02 (1980)*); *S.E.C. v. Rana Research, Inc., 8 F.3d 1358, 1364 (9th Cir.1993).* Scienter may be established by a showing of recklessness, defined as:
[A] highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

*Id.* (citing *Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1569 (9th Cir.1990)* (en banc)). A defendant is reckless "if he had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although he could have done so without extraordinary effort."*Howard, 228 F.3d at 1064* (internal quotations and citation omitted). In *Howard,* the Ninth Circuit held that allegations that the defendant signed the financial statements "in the face of potentially alarming information concerning [the company's] financial condition" were sufficient to support an inference of scienter. *Id.* Such "alarming information" included the outsider auditor's reporting of weaknesses in the company's internal financial controls, even though the auditor did not conclude that the financial statements were generated on the basis of faulty accounting practices. *Id.*

Here, the Ninth Circuit's reasoning in *Howard* applies. As in *Howard,* the complaint alleges that Cornerstone's outside auditors informed the company of problems with its internal accounting controls as early as the end of the 1998 audit. The record-keeping problems and inadequate accounting resulted in significant unsubstantiated account balances which were reclassified to a holding account for further research. Among other things, Cornerstone commenced a reconciliation project to verify CEG's unsubstantiated balances. There were significant discrepancies between two accounting systems both purporting to reflect the CEG division's accounting records. The intercompany accounts did not balance. As alleged, these accounting problems spanned at least from 1999 through 2001. During this period, Nye is alleged to have signed the financial statements filed with the SEC and the representation letters with the auditors. As in *Howard,* the allegations that Nye signed the financial statements and representation letters "in the face of potentially alarming information concerning [the company's] financial condition" are sufficient to support an inference of scienter on Nye's part.

### B. Primary Violations of Sections 13(a) and 13(b) and Rules Thereunder

**\*8** The SEC claims that defendant violated section 13(b)(5), Rule 13b2-1, and Rule 13b2-2. Section 13(b)(5) provides that "[n]o person shall knowingly circumvent or knowingly fail to implement a system of internal accounting controls or knowingly falsify any book, record, or account described in" § 13(b)(2).15 U.S.C. § 78m(b)(5). Rule 13b2-1 imposes a prohibition narrower in subject-matter scope but without any requirement that violations be knowing: "No person shall directly or indirectly, falsify or cause to be falsified, any book, record or account subject to Section 13(b)(2)(A) of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 7
Slip Copy, 2007 WL 2013958 (N.D.Cal.)
**(Cite as: Slip Copy)**

Securities Exchange Act."Rule 13b2-2 provides (1) a director or officer of a company commits a violation by making to an accountant a false statement or misleading omission in connection with an audit, 17 C.F.R. § 240.13b2-2(a), and an officer or director may not "directly or indirectly take any action to coerce, manipulate, mislead, or fraudulently influence any independent public or certified public accountant" in connection with an audit "if that person knew or should have known that such action, if successful, could result in rendering the issuer's financial statements materially misleading,"17 C.F.R. § 240.13b2-2(b).[FN7]

> [FN7.] The third part of the rule applies only to certain investment and business development companies, see 17 C.F.R. § 240.13b2-2(c), and does not

Defendant argues that the heightened pleading requirements or Rule 9(b) applies to the section 13 claims. The SEC argues in opposition that Rule 9(b) does not apply to claims under sections 13(a) or 13(b) "because scienter or fraudulent intent is not an element of those claims."*See* Opp. at 21 (citing *Ponce v. SEC,* 345 F.3d 722, 737 n. 10 (9th Cir.2003); *see also* SEC v. McNulty, 137 F.3d 732, 741 (2d Cir.1998); *Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1253 (10th Cir.1997)). Although sections 13(a) and 13(b) may not impose a scienter requirement, this does not necessarily mean that Rule 9(b) does not apply. The court reads Rule 13b2-2 to impose liability for both unintentional (i.e., mistakes) and fraudulent false statements or omissions to auditors. Rule 13b2-2 appears to also impose a scienter requirement. Because averments of *either* fraud or mistake must be pled with particularity under Rule 9(b), the heightened pleading standard applies to the section 13 claims.[FN8]In any event, as discussed below, the court finds that the SEC's complaint satisfies the requirements of Rule 9(b).

> [FN8.] In addition, under Rule 9(b) scienter may be averred generally only where the matter does not involve fraud or mistake.

### 1. Section 13(b)(5) and Rule 13b2-1

In support of its section 13(b)(5) and Rule 13b2-1 claim, the SEC alleges that the outside auditors informed Cornerstone management of deficiencies in the accounting internal controls as early as the end of the 1998 audit. FAC ¶ 47. The SEC alleges that "Nye knew that Cornerstone had failed to improve its accounting systems, hire additional accounting staff, or enhance its record-keeping processes to keep pace with the company's dramatic growth and diversification."*Id.* ¶ 32.CEG was unable to verify various significant account balances because proper documentation had not been maintained. *Id.* ¶ 36.The SEC alleges that the intercompany accounts did not balance. *Id.* ¶ 42.These accounting problems and the inability to substantiate significant account balances apparently continued through the end of the 2001 fiscal year. If proven, this would constitute a violation of § 13(b)(5).

### 2. Rule 13b2-2

**\*9** In support of its Rule 13b2-2 claim, the SEC alleges that in connection with the 2000 audit and 2001 quarterly reviews, Nye failed to inform the auditors of: (1) the scope and extent of the reconciliation project and the facts developed during that project, (2) the accounting problems at CEG, including that significant accounts were unsubstantiated, (3) adjusting entries made to conceal the accounting problems, (4) intercompany accounts that did not balance, (5) foreign currency translation errors, (6) the extent of entries into the holding account, and (7) failure to timely revise estimates to clearing and "pooling" accounts and failure to timely reconcile these accounts. *Id.* ¶ 150.In addition, Nye signed the management representation letters in connection with the audits and reviews. The management representation letter falsely stated that, among other things: (1) Cornerstone's financial statements were fairly presented in conformity with GAAP; (2) there were no material transactions that had not been properly recorded in the accounting records underlying the financial statements; and (3) the accounting records underlying the financial statements accurately and fairly reflected, in reasonable detail, the transactions of the company and its subsidiaries. These allegations adequately set forth the alleged misstatements and omissions on Nye's part to the auditors. The SEC relies upon the same allegations of falsity as for its section 10(b) and Rule 10b-5 claims. As discussed at III.A.1, *supra,* the falsity of these alleged misstatements and omissions, including what is false or misleading about a statement, and why it is false, is adequately set forth in the complaint.

### C. Aiding and Abetting of Section 13(a) and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2013958 (N.D.Cal.)
**(Cite as: Slip Copy)**

Page 8

### Section 13(b) Violations[FN9]

> FN9. Section 13(a) requires all issuers with securities registered pursuant to section 12 of the Exchange Act to file periodic and other reports with the SEC containing the disclosures required by rules promulgated by the SEC. appear applicable to the present action.

Defendant argues that the SEC has failed to allege facts showing Nye knew of the primary section 13(a) and 13(b) violations and that Nye provided substantial assistance in those violations. To prove a claim for aiding and abetting a company's "violation of federal securities laws," a plaintiff must prove (1) that the company "violated the relevant securities laws," (2) that the defendant knew "of the primary violation" of the securities laws, that (3) the defendant knew "of his or her own role in furthering" the company's violation, and (4) that the defendant "provided substantial assistance in the primary violation." *Ponce,* 345 F .3d at 737. The SEC points to the same factual allegations of inadequate internal controls, unsubstantiated account balances, and improper reclassifications that it relied upon to support its section 10(b) claim against Nye. For the reasons discussed in III.A, *supra,* the court finds that the complaint sufficiently alleges the first three elements.

"[T]o establish an aiding and abetting violation of the securities laws, the [government] must show that [the defendant] knowingly provided substantial assistance" in connection with the primary violation. *SEC v. Rogers,* 790 F.2d 1450, 1460 (9th Cir.1986); *see also Abbott v. Equity Group, Inc.,* 2 F.3d 613, 621 (5th Cir.1993). At least one district court has held that "mere awareness and approval of the primary violation is insufficient to make out a claim for substantial assistance" and inaction is insufficient "unless it was designed intentionally to aid the primary violator or it was in conscious or reckless violation of a duty to act." *S.E.C. v. Treadway,* 430 F.Supp.2d 293, 339 (S.D .N.Y.2006). The SEC alleges that Nye provided substantial assistance by (1) signing the forms 10-K and 10-Q and (2) failing to take prompt and effective action to correct Cornerstone's sections 13(a) and 13(b) violations. The SEC does not cite to any particular factual allegations that support a finding of substantial assistance. However, the court notes that elsewhere in the complaint the SEC alleges that Nye participated in drafting the false and misleading disclosures regarding the 2001 write-off, reviewed the financial statements, directed the reclassification of unsubstantiated balances to conceal such balances from the auditors, and signed the management representation letters. *See, e.g.,* FAC ¶¶ 58, 87-96. While not a strong showing, these allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss as to the SEC's aiding and abetting claims. *Compare Ponce,* 345 F.3d at 737-38 (finding substantial assistance because defendant "undeniably played a major role in preparing and certifying the financial statements, and as [the company's] accountant and auditor ... facilitated the reporting and record-keeping responsibilities to the SEC, [and] played an essential and integral part of the process").

**\*10** For the foregoing reasons, the court DENIES defendant Nye's motion to dismiss.

N.D.Cal.,2007.
S.E.C. v. Baxter
Slip Copy, 2007 WL 2013958 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.