1  LATHAM & WATKINS LLP
      Steven M. Bauer (Bar No. 135067)
2      steven.bauer@lw.com
      Robert E. Sims (Bar No. 116680)
3      bob.sims@lw.com
      David M. Friedman (Bar No. 209214)
4      david.friedman@lw.com
      Risha N. Jamison (Bar No. 230820)
5      risha.jamison@lw.com
      Christopher W. Johnstone (Bar No. 242621)
6      chris.johnstone@lw.com
      Heather L. Thompson (Bar No. 246321)
7      heather.thompson@lw.com
   505 Montgomery Street, Suite 2000
8  San Francisco, California 94111-2562
   Telephone:    415.391.0600
9  Facsimile:    415.395.8095

10 Attorneys for Defendant
   CARL W. JASPER

11

12                  UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14                       SAN JOSE DIVISION

15

16 SECURITIES AND EXCHANGE              CASE NO. CV 07-6122 (JW)
   COMMISSION,
17                                      **DEFENDANT'S REPLY MEMORANDUM**
                                        **IN SUPPORT OF MOTION TO DISMISS**
                   Plaintiff,           **AND STRIKE**
18
         v.
19
   CARL W. JASPER,                      Judge:      Hon. James Ware
20                                      Date:       April 7, 2008
                   Defendant.           Time:       9:00 a.m.
21                                      Courtroom: 8, Fourth Floor

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.    ARGUMENT ................................................................................................. 3

    A.    The Amended Complaint Should Be Dismissed In Its Entirety As
          It Does Not Plead The Particularized Facts Required By Rule 9(b) ..................... 3

          1.    Fraud By Example ............................................................... 3

          2.    Corporate Officer Status Pleading ........................................... 5

    B.    The SEC Has Failed To Plead Facts To Infer That Mr. Jasper
          Acted With Scienter ...................................................................... 7

    C.    The SEC Fails To Allege That The Alleged Omissions And
          Misstatements Were Material ........................................................... 9

    D.    The Statute Of Limitations Requires That The Majority Of The
          SEC's Claims And Allegations Be Stricken ........................................ 11

    E.    The SEC's Requests For Disgorgement And Other Remedies Must
          Be Stricken ................................................................................ 13

          1.    The SEC Fails To Explain Why Section 304 Should Be
               Applied Retroactively ......................................................... 13

          2.    The SEC Is Not Entitled To Disgorgement As A Matter Of
               Law .............................................................................. 14

III.    CONCLUSION ............................................................................................. 15

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4

*Adam v. Silicon Valley Bancshares*,
  1994 U.S. Dist. LEXIS 2797 (N.D. Cal. Feb. 7, 1994) ........................................................ 8

5

*Bureerong v. Uvawas*,
  922 F. Supp. 1450 (C.D. Cal. 1996) ................................................................................. 14

6

7

*FEC v. Williams*,
  104 F.3d 237 (9th Cir. 1996) ............................................................................................ 13

8

9

*Feldman v. Glaze*,
  1988 U.S. Dist. LEXIS 17472 (N.D. Cal. May 12, 1988) .................................................... 8

10

11

*Howard v. Everex Sys., Inc.*,
  228 F.3d 1057 (9th Cir. 2000) ............................................................................................ 6

12

*Humetrix, Inc. v. Gemplus S.C.A.*,
  268 F.3d 910 (9th Cir. 2001) ............................................................................................ 13

13

14

*In re AFC Enterprises, Inc. Deriv. Litig.*,
  224 F.R.D. 515 (N.D. Ga. 2004) ....................................................................................... 13

15

16

*In re Affiliated Computer Servs. Deriv. Litig.*,
  No. 3:06-CV-1110-M, 2007 U.S. Dist. LEXIS 92401 (N.D. Tex. Dec. 13,
  2007) ................................................................................................................................ 12

17

18

*In re CNET Networks, Inc.*,
  483 F. Supp. 2d 947 (N.D. Cal. 2007) ................................................................................ 5

19

20

*In re Goodyear Tire & Rubber Co. Deriv. Litig.*,
  2007 U.S. Dist. LEXIS 1233 (N.D. Ohio Jan. 5, 2007) ..................................................... 14

21

*In Re Hansen Natural Corp. Sec. Litig.*,
  527 F. Supp. 2d 1142 (C.D. Cal. 2007) ............................................................................... 6

22

23

*In re Linear Technologies, Inc. Deriv. Litig.*,
  2006 U.S. Dist. LEXIS 90986 (N.D. Cal. Dec. 7, 2006) ...................................................... 5

24

25

*In re McKesson HBOC Sec. Litig.*,
  26 F. Supp. 2d 1248 (N.D. Cal. 2000) ................................................................................ 3

26

*In re Stac Electronics Sec. Litig.*,
  89 F.3d 1399 (9th Cir. 1996) ............................................................................................ 10

27

28

*In re VeriSign, Inc. Deriv. Litig.*,
  No. C 06-465 PJH, 2007 U.S. Dist. LEXIS 72341 (N.D. Cal. Sep. 14, 2007) ...................... 6

ii

*Kay v. Wells Fargo & Co. N.A.*,
  No. C 07-01351 WHA, 2007 U.S. Dist. LEXIS 55519 (N.D. Cal. Jul. 24,
  2007) ........................................................................................................... 12

*Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*,
  No. 07-CV-912 IEG, 2007 U.S. Dist. LEXIS 77132 (S.D. Cal. Oct. 16, 2007).................... 7

*Santa Maria v. Pacific Bell*,
  202 F.3d 1170 (9th Cir. 2000) ............................................................................ 12

*SEC v. Baxter*,
  2007 U.S. Dist. LEXIS 52829 (N.D. Cal. July 11, 2007)...................................... 4

*SEC v. First Pac. Bancorp*,
  142 F.3d 1186 (9th Cir. 1998) ............................................................................ 14

*SEC v. ICN Pharm., Inc.*,
  84 F. Supp. 2d 1097 (C.D. Cal. 2000) ................................................................ 7

*SEC v. Reyes*,
  No. C 06-04435, CRB, Slip Copy, 2008 WL 410614 (N.D. Cal. Feb. 12,
  2008) ........................................................................................................... 15

*SEC v. Tambone*,
  417 F. Supp 2d. 127 (D. Mass. 2006) ................................................................ 5

*SEC v. Todd*,
  No. 03-CV-2230 BEN (WMc), 2007 U.S. Dist. LEXIS 38985 (S.D. Cal.
  May 30, 2007)................................................................................................ 15

*SEC v. Trabulse*,
  526 F. Supp. 2d 1001 (N.D. Cal. 2007) .............................................................. 4, 9

*SEC v. Yuen*,
  221 F.R.D. 631 (C.D. Cal. 2004) ........................................................................ 4, 6

*Silver Valley Partners, LLC v. De Motte*,
  No. 06-429-N-ELJ, 2007 U.S. Dist. LEXIS 70591 (D. Idaho Sep. 24, 2007)...................... 6

*Sparling v. Daou (In re Daou Sys.)*,
  411 F.3d 1006 (9th Cir. 2005) ............................................................................ 10

*Stoll v. Ardizzone*,
  No. 07 Civ. 00608(CM), 2007 U.S. Dist. LEXIS 75769 (S.D.N.Y. Oct. 9,
  2007) ........................................................................................................... 12

*Survivor Prods. LLC v. Fox Broad. Co.*,
  CV 01-3234 LGB (SHx), 2001 U.S. Dist. LEXIS 25512 (C.D. Cal. June 2001)................. 14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

CARL W. JASPER'S REPLY ISO MOTION TO
DISMISS AND STRIKE

*TSC Indus. v. Northway, Inc.*,
    426 U.S. 438 (1976)........................................................................................... 10

*United States v. Reyes*,
    2007 U.S. Dist. LEXIS 95452 (N.D. Cal. May 30, 2007) ...................................... 9

*Vess v. Ciba-Geigy Corp.*,
    317 F.3d 1097 (9th Cir. 2003) ............................................................................... 7

**STATUTES**

28 U.S.C. § 2462............................................................................................... 11, 13

**RULES**

Fed. R. Civ. P. 9(b) .............................................................................................passim

Fed. R. Civ. P. 12(b)(6)................................................................................. 1, 5, 11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CARL W. JASPER'S REPLY ISO MOTION TO
DISMISS AND STRIKE

1  **I.     INTRODUCTION**

2         The SEC's Amended Complaint and opposition papers reveal that this is not just

3  another run-of-the-mill Rule 9(b) and 12(b)(6) briefing exercise.  Rather, the SEC seeks to

4  establish several pro-plaintiff pleading principles which, we believe, are unsupported by

5  established legal rules and completely unnecessary as a matter of public policy.  When the SEC

6  has the benefit of 18-months of investigation, the cooperation of the corporate entity, and has

7  made a no-fraud settlement deal with the CEO (Maxim's one-man option-granting committee),

8  surely the SEC should be held to established Rule 9(b) pleading standards when suing the CEO's

9  subordinate for fraud.

10        The first new idea the SEC advocates is the "fraud by example" exception to the

11  statutory Rule 9(b) particularity requirements.  The SEC has attempted to plead only four

12  specific instances of fraud:  (1) the October 1, 2001 employee grant (¶ 31), (2) the October 2,

13  2001 employee grant (¶ 29), (3) the March 25, 2002 new-hire grant (¶ 30), and (4) the June 30,

14  2003 employee grant (¶ 31).  Whether these allegations meet Rule 9(b) standards may be a

15  matter of debate, but what is not a matter of debate is that the SEC pleads no other instances at

16  all.  Yet the SEC argues it should be allowed to prosecute a case of fraud "during the relevant

17  time period" – apparently June 2000 to June 2005 – on a theory that pleading four so-called

18  "examples" of backdated options should be deemed good enough to satisfy fraud-by-particularity

19  pleading requirements.  There is no basis in law or policy for allowing a plaintiff to get by with

20  this strategy, and certainly no good reason for relaxing basic pleading standards when the

21  government prosecutes a single individual.  If the SEC believes there are 4 or 8 or 12 instances

22  of fraud, the SEC should simply plead each instance in detail, just like any other federal court

23  plaintiff.

24        The SEC's second new idea for this case is "status pleading," or a "corporate

25  officer relaxed-fit pleading standard."  The SEC is quite direct in arguing that its pleading task is

26  done after it alleges that officer-certified reports such as 10-Qs or annual reports "were rendered

27  false and misleading because options were repeatedly granted 'in-the-money.'" (¶ 36, and also

28  ¶¶ 35, 37-44).  The SEC contends that all it must do is simply allege that an executive knew how

1

CARL W. JASPER'S REPLY ISO MOTION TO
DISMISS AND STRIKE

1   to account for stock options and then signed, for example, 10-Qs which the SEC vaguely or

2   implicitly claims were false because of *unspecified* stock options accounting issues. Without

3   adopting a lower pleading standard for corporate officers, however, alleging that a certification

4   was false, without alleging the details of exactly what made it false and material, is not enough to

5   satisfy pleading specificity requirements. Similarly, a plaintiff does not get a pass on pleading

6   facts indicating scienter by alleging only that the defendant is a CFO and that he must have

7   known better. He must have known better than to do exactly what? This intentional vagueness

8   is not rescued by the next relaxed-fit allegation: that Mr. Jasper had scienter because he received

9   salary, options and bonuses. Obviously, that does not very well distinguish him from every other

10  executive in the world. The allegation is a bit cagey, also, since the SEC does not allege that Mr.

11  Jasper ever personally received a single backdated stock option.

12        The third new civil procedure idea is the end of the motion to strike. When the

13  defendant moved to strike allegations outside of the limitations period, the government's lead

14  response is that one of the examples is inside the limitations period. Yes, that is true, but it is

15  also no response to a motion to strike allegations outside of the period.

16        The fourth new idea is universal equitable tolling. The SEC argues that the

17  statute of limitations does not apply because there is equitable tolling in a fraud case. The

18  Amended Complaint, however, never mentions the words "equitable tolling," and never alleges

19  any specific acts of fraudulent concealment that would permit equitable tolling to be a part of this

20  case. Under the SEC's argument, it seems that there would never be an effective limitations

21  period in a fraud case, because simply alleging the fraud would be enough to allege equitable

22  tolling.

23        While there are also some more run-of-the-mill problems with the Amended

24  Complaint, what is striking here is the SEC's insistence on relaxing basic pleading standards, as

25  opposed to making more direct, specific allegations. Why spend resources and stall the case

26  with a lengthy debate over simple fraud pleadings? Why not instead add five more pages of

27  specific allegations to tee up the lawsuit on the issues the SEC is concerned about? It would be

28  more fair to the defendant and more efficient for us all if the Court requires the SEC to make its

1   pleadings specific, so we all know what we are dealing with. If not, the issues in this exchange

2   of briefs will arise again and again throughout this case (discovery, summary judgment, motions

3   in limine). Further, the SEC will cite a favorable ruling on this motion as precedent for future

4   pleading strategies.

5   **II.    ARGUMENT**

6       **A.    The Amended Complaint Should Be Dismissed In Its Entirety As It Does Not
           Plead The Particularized Facts Required By Rule 9(b)**

7

8          **1.    Fraud By Example**

9         In our motion, we made the unremarkable argument that the SEC is held to the

10   same pleading standard as any plaintiff alleging fraud – particularity, including the "who, what,

11   where, when, and how" of the alleged fraudulent conduct. *In re McKesson HBOC Sec. Litig.*,

12   126 F. Supp. 2d 1248, 1266 (N.D. Cal. 2000). We noted that even if viewed generously, the

13   SEC's allegations suggest only four specific instances of stock options backdating. In response,

14   the SEC argues that it "sufficiently alleges" an as-yet unnamed, unknown number of backdated

15   option grants through "a scheme at Maxim from at least 2000 to 2005." Opp. at 10. Rather than

16   simply identify the grants and what is wrong with them, the SEC criticizes Mr. Jasper as follows:

17           [B]y focusing narrowly on the FAC's backdating allegations,
            Jasper tries to gloss over a key aspect of *what* the fraud was and

18           "*how*" he was involved: that, as part of this scheme, Jasper,
            Maxim's CFO, knowingly or recklessly made numerous false and

19           misleading statements in Maxim's public filings and reports.

20   Opp. at 10 (emphasis in original). The SEC then proceeds to argue that various "annual reports,

21   quarterly reports, periodic current reports, proxy statements, and registration statements" were

22   fraudulent because of these unspecified, unnamed backdated stock options grants. *Id.*

23         First, an observation about this rhetorical maneuver: Why shouldn't Mr. Jasper

24   focus on the Amended Complaint's backdating allegations, however "narrowly"? Isn't that the

25   point of Rule 9(b)? The fraud-with-particularity rule exists so a defendant is not required to

26   think broadly about what the SEC might be talking about when it generally alleges that dozens of

27   reports were allegedly rendered false in some unspecified way, by unspecified people, doing

28   unspecified acts, at unspecified times, with unspecified motives, that make the reports

1    misleading, in an unspecified material way, because of a so-called "scheme."  Under the

2    established pleading rules, a defendant is entitled to the narrow-minded focus that we have

3    advanced on behalf of Mr. Jasper.

4              Under the law, four alleged examples of fraudulent grants and the incantation of

5    "scheme" accusations do not meet the requirements of Rule 9(b).[1]  While one might imagine

6    scenarios where some pleading by example could be sufficient, the general rule is that even the

7    SEC must allege "precisely the time, place and nature of the misleading statements,

8    misrepresentations and specific acts of fraud."  *SEC v. Yuen,* 221 F.R.D. 631, 634 (C.D. Cal.

9    2004).[2]  In fact, the SEC had a much stronger argument in *Yuen* than here.  In that case it alleged

10   a pervasive scheme by defendants to inflate revenues, and cited to 11 purportedly fraudulent

11   transactions over a three-year period.  The SEC alleged exactly which transactions were

12   purportedly fraudulent, and alleged the amount in which each transaction artificially inflated the

13   company's revenues.  The court, nonetheless, dismissed the complaint, finding that "the SEC has

14   not plead any specifics as to the individual Defendants' alleged participation in the scheme such

15   as who devised the scheme, when it was devised and when each Defendant joined it."  *Id.*

16             There is little in the emerging case law on backdated options that suggests courts

17   will not hold plaintiffs to traditional Rule 9(b) standards.  For instance, in *In re Linear*

18   *Technologies, Inc. Deriv. Litig.*, this Court held that plaintiffs failed to plead with particularity

19

20   _____

21   [1]   As to these four examples, Plaintiff has not alleged whether the alleged failure to properly
          account for these four grants was material in any way.

22   [2]   The SEC cites two cases in which they contend example style pleading was deemed
          sufficient.  Opp. at 10.  In both of these cases, however, the SEC's complaints contained

23        allegations well beyond the allegations contained in the complaint against Mr. Jasper.   In
          *SEC v. Trabulse*, 526 F. Supp. 2d 1001 (N.D. Cal. 2007), the SEC alleged that a single

24        investment advisor, acting alone, regularly committed fraud by routinely mailing to more
          than 100 investors false account information, and provided examples of such false statements

25        and described how they were false.  *SEC v. Baxter*, 2007 U.S. Dist. LEXIS 52829 (N.D. Cal.
          July 11, 2007), the other case cited by the SEC, did not even address whether example-style

26        pleading was sufficient under Rule 9(b).  In any event, in that case, the SEC alleged who the
          defendant conspired with, how each alleged fraudulent transaction resulted in a material

27        misstatement of the company's financial statements, and how the defendant was involved in
          the alleged wrongdoing.

28

1    that options were backdated, and therefore failed to excuse demand.  No. 06-3290 MMC, 2006

2    U.S. Dist. LEXIS 90986 (N.D. Cal. Dec. 7, 2006).  The court stated:

> With respect to the allegation of "backdating," the only factual allegation offered by plaintiffs is that on seven occasions over a period of seven years, stock options were dated "just after a sharp drop" in Linear's stock and "just before a substantial rise," which, plaintiffs allege, constitutes a "striking pattern that could not have been the result of chance." Because plaintiffs provide no facts as to how often and at what times the Committee Defendants have granted stock options in the past, no "pattern," let alone a "striking" one, is apparent.

8    *Id.* at *9 (citations omitted); *In re CNET Networks, Inc.*, 483 F. Supp. 2d 947 (N.D. Cal. 2007)

9    (accord).  Pleading fraud by example remains insufficient under the Rules of Civil Procedure,

10    and we urge the Court to require specific allegations of each alleged fraudulent act or to strike

11    and dismiss the vague scheme allegations, particularly in light of the government's 18-month

12    prelitigation investigation.  *See, e.g., SEC v. Tambone*, 417 F. Supp 2d. 127, 131 (D. Mass. 2006)

13    (granting motion to dismiss and refusing to relax Rule 9(b) given the SEC's extensive

14    prelitigation investigation).

### 2.    Corporate Officer Status Pleading

16            Just as fraud by example is an inappropriate pleading strategy, so is corporate

17    officer status pleading.  There is no justification for relaxing basic pleading standards for

18    corporate officers.

19            We submit that it is clear – indeed, essentially conceded – that the SEC's

20    Amended Complaint does not make sufficiently particular allegations of fraudulently backdated

21    options beyond the four examples.  And to the contrary, the law requires specific pleading, even

22    (or especially) in backdating cases.  The SEC does not seriously fight that analysis.

23            Instead, the SEC urges a second new principle.  The SEC generally names the

24    numerous financial statements filed or approved by Mr. Jasper, alleges that he "and others" were

25    involved in fraud, and then concludes that Mr. Jasper knew these financial statements were false.

26    *See* Opp. at 9-10.  The mere allegation that financial statements are false and that Mr. Jasper was

27    aware of that fact is not the type of particularized pleading that Rule 9(b) requires.  These type of

28    conclusory allegations are insufficient to meet the stringent requirements of Rule 9(b).  *See In re*

1   *VeriSign, Inc. Deriv. Litig.*, No. C 06-465 PJH, 2007 U.S. Dist. LEXIS 72341, at *42-45 (N.D.

2   Cal. Sep. 14, 2007) (holding that allegations that financial statements were false and that

3   defendants knew of option backdating were not sufficient to state a claim for Section 10(b)); *In*

4   *Re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1152-54 (C.D. Cal. 2007) (where

5   plaintiff alleged, inter alia, that defendant filed false financial statements in connection with a

6   scheme to backdate options, court dismissed claims for failure to sufficiently allege facts to

7   support how grants were backdated or who was involved in alleged backdating scheme under

8   either PSLRA or Rule 9(b)); *Silver Valley Partners, LLC v. De Motte*, No. 06-429-N-ELJ, 2007

9   U.S. Dist. LEXIS 70591, at *15  (D. Idaho Sep. 24, 2007) (where plaintiffs alleged racketeering

10  and fraud scheme, court dismissed fraud claims under Rule 9(b) because complaint was

11  "extremely lacking in particularity as to the identity of who was involved and to what extent they

12  were involved in the various misstatements alleged to have been made").[3]

13          It seems to be fair to ask, what is really going on here?  The SEC has investigated

14  the case for 18 months.  It has struck a deal with Maxim's CEO (the one-man stock option

15  committee) concluding that he did not commit a fraud.  *See* Request for Judicial Notice, Exs. A-

16  C.  The SEC brings this case with great fanfare, alleging a scheme stretching over years, but then

17  months after the complaint and press releases, argues that it really does not have to allege any

18  details about the fraud, because the CFO signed financial statements throughout the years.  To

19  support this remarkable position, it cites cases like *Howard v. Everex Sys., Inc.*, 228 F.3d 1057,

20  1061 (9th Cir. 2000), which has nothing to do with whether plaintiff had adequately pled who

21  defendants conspired with under Rule 9(b).  Rather, the issue in *Howard* was whether a

22  "corporate official (here, the CEO) who, acting with scienter, signs a SEC filing containing

23  misrepresentations, makes a statement so as to be liable as a primary violator under § 10(b)."  *Id.*

24

25

26  [3]  Plaintiff claims that it is not subject to the heightened pleading standards of the Private
        Securities Litigation Reform Act.  This is true.  But this does not alleviate them from the
27      burden of pleading fraud with particularity, and identifying the 'who, what, when, where, and
        how' of the supposed fraud.  *See Yuen*, 221 F.R.D. at 634.
28

1        Few would dispute that a corporate officer could be held to a higher standard of

2  knowledge about financial issues than an employee in the mailroom.  Further, the cases above

3  indicate that in some instances, a corporate officer can be found responsible for making

4  certifications on behalf of a company.  Those are different propositions, however, than what the

5  SEC urges.  Here, the SEC seeks the power to charge an officer with fraud without specifying

6  the fraudulent acts beyond broadly alleging a scheme and executed corporate paperwork.  That

7  would be a significant dilution of pleading requirements.

8        Ultimately, the failure to meet the pleading requirements of Rule 9(b) is also fatal

9  to both SEC's fraud and non-fraud claims.  When an entire complaint is ground in fraud, and its

10  allegations fail to satisfy the heightened pleading requirements of Rule 9(b), the district court

11  may dismiss the entire complaint.  *See Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097 (9th Cir. 2003).

12  While the SEC argues that its non-fraud claims do not require scienter (Opp. at 17-18), the fact

13  that its entire complaint sounds in fraud requires it to plead with particularity facts to support the

14  elements of those claims – i.e., the who, what, when, where, and how.  The SEC's failure to do

15  so requires that all of its claims be dismissed.

16  **B.**    **The SEC Has Failed To Plead Facts To Infer That Mr. Jasper Acted With**
**Scienter**
17

18        The SEC also fails to allege facts to support the inference that Mr. Jasper acted

19  with scienter – a necessary element of Plaintiff's Section 10(b) and 17(a) claims.  True, Rule 9(b)

20  allows allegations of scienter to be averred generally in fraud cases.  At the same time, that rule

21  does not permit a plaintiff to fall back on boilerplate allegations of scienter, when the plaintiff

22  has not sufficiently alleged what the fraud was, when it was committed, or how the defendant

23  was involved.  The plaintiff must still "point to facts" which are sufficient to form the basis for

24  scienter.  *Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*, No. 07-CV-912 IEG, 2007 U.S.

25  Dist. LEXIS 77132, at *12 (S.D. Cal. Oct. 16, 2007); *cf. SEC v. ICN Pharm., Inc.*, 84 F. Supp. 2d

26  1097, 1099 (C.D. Cal. 2000) ("When a complaint alleges with particularity the circumstances

27  constituting fraud, as required by [Rule 9(b)] then generally it will also have set forth facts from

28  which an inference of scienter could be drawn . . .") (citation omitted).

1    The SEC has not pointed to facts sufficient to suggest scienter – i.e., intent or

2  recklessness.  In its opposition, the SEC argues that Mr. Jasper acted with scienter because Mr.

3  Jasper has a general knowledge of accounting principles from his education, his former work as

4  an auditor, and his responsibilities at Maxim.  Opp. at 12-14.  But Mr. Jasper's general

5  knowledge of accounting should not permit an inference of intent or recklessness.  The crux of

6  the issue is whether Mr. Jasper knew of the pervasive backdating scheme, or was reckless in not

7  knowing that the backdating rendered the financial statements false and misleading.  To this end,

8  the Amended Complaint contains few specific facts.  While the SEC has alleged Mr. Jasper's

9  role in four specific option grants, and alleged that Mr. Jasper was told to expense some of these

10  options "if it is material," the SEC has not alleged facts to suggest that these specific option

11  grants were in fact material.  FAC ¶ 33.  As to the rest of the purportedly backdated option grants

12  over the five year period, the SEC relies entirely on the same generalized pleading of its fraud

13  allegations – that Mr. Jasper knew of, or should have known of the alleged backdating, and that

14  this purported scheme materially affected the Company's financials.  *See, e.g.*, FAC ¶ 20, 23, 38,

15  and 40.[4]  In some cases, a plaintiff is able to combine specific allegations of fraud with a

16  generalized scienter allegation.  Here, the SEC wants to proceed on generalized allegations on

17  both topics.

18    The SEC tries to shore up its scienter failing by arguing that Mr. Jasper acted with

19  scienter because he "profited handsomely from his misconduct."  Opp. at 7.  Yet the Amended

20  Complaint contains no allegation saying how this is so.  The "fact[s]" underlying this argument

21  is only this:

22        During the relevant period, Jasper received Maxim stock options
        and sold maxim stock.  Jasper also received annual bonuses tied in
23        part to the Company's achievements and profitability.

24  [4]  Conclusory allegations, such as these, cannot support an inference of scienter.  *See, e.g.,*
    *Feldman v. Glaze*, 1988 U.S. Dist. LEXIS 17472, at *5 (N.D. Cal. May 12, 1988) (while

25  noting that knowledge may be averred generally under Rule 9(b), Court found that plaintiff's
    reliance on defendants' status as officers and directors was an insufficient factual basis from

26  which to infer scienter); *Adam v. Silicon Valley Bancshares*, 1994 U.S. Dist. LEXIS 2797, at

27  *8 (N.D. Cal. Feb. 7, 1994) (plaintiffs failed to allege facts supporting an inference of
    scienter where complaint contained "no facts from which to infer defendant's knowledge or

28  reckless disregard of the "adverse information" alleged in complaint).

1  (¶ 46).  That is all.  The SEC does not allege that Mr. Jasper received any backdated options, that

2  he tried to backdate his own options, that his salary or bonuses were tied to his participation in a

3  supposed scheme to backdate options or to underreport non-cash expenses, or that his exercise

4  and sale of stock was inappropriate.  After all these months of investigation, the crux of the

5  scienter allegation is that Mr. Jasper was paid to be a corporate officer.

6          The last punch from the SEC is an argument that the Court should infer scienter

7  because Mr. Jasper asserted his Fifth Amendment rights when the SEC demanded a deposition

8  before any discovery and during a threatened criminal investigation.  The question of whether a

9  Fifth Amendment invocation during a regularly scheduled deposition can support any inferences

10  in an SEC fraud case is something that we may or may not have to debate in this case.  It is

11  crystal clear, however, the SEC cannot rescue its faulty pleading strategy by criticizing a

12  defendant's reliance of his constitutional rights in a brief.[5]

13  **C.    The SEC Fails To Allege That The Alleged Omissions And Misstatements
         Were Material**

14

15          There has been a lot of back and forth in securities litigation about the adequacy

16  of materiality allegations.  As with scienter, the plaintiff is typically allowed some leeway in

17  pleading, we believe, based on the general notion that facts pleaded to support the fraud

18  allegation support the assertion that the fraud was material.  In contrast, here, the SEC relies on

19  generalized allegations of fraud, combined with a generalized materiality allegation.  One can

20

21  _____

22  [5]  Plaintiff's citation to *SEC v. Trabulse*, 526 F. Supp. 2d 1001 (N.D. Cal. 2007) is curious.  *See*
     Opp. at 14.  There, the district court actually refrained from making an adverse inference in
     assessing the sufficiency of the Complaint's 10(b) and 17(a) claims even though the
23   defendant chose to invoke the Fifth Amendment.  *Trabulse*, 526 F. Supp. 2d  at 1104-06.
     Instead, the court assessed the defendant's dismissal motion based on the facts averred in the
24   Amended Complaint.  *Id.*

25   The SEC also relies on *United States v. Reyes*, 2007 U.S. Dist. LEXIS 95452 (N.D. Cal. May
     30, 2007) for the proposition that it has adequately alleged scienter.  *See* Opp. at 14.  The
26   citation to *Reyes*, however, is misplaced.  In *Reyes*, a criminal prosecution, the court did not
     address the issue of whether the government had adequately pled scienter.  Instead, the
27   court's opinion focused on the defendant's challenge to the indictment on due process
     grounds.  *Id.* at *5.  The court simply ruled that APB 25 was not so impermissibly vague as
28   to violate the defendant's due process rights.

1  take any example in the Amended Complaint to reveal the inadequacy of this strategy. For

2  instance, in Paragraph 44, the SEC alleges that:

3           Jasper signed management representation letters in connection
            with Maxim's quarterly periods beginning March 29, 2003,
4           September 27, 2003 . . . . Those statements were untrue, as Jasper
            understood, because the repeated, concealed backdating rendered
5           the financial statements false and misleading.

6  With no allegation of how the letters were false, for what reason, and in what amount, there is no

7  reasonable way to infer that the alleged falsehood was material. This SEC pleading strategy, if

8  accepted, reduces materiality from a pleading requirement to a typing exercise.

9           How does the SEC respond? The SEC argues that claims are not to be dismissed

10 for failure to plead materiality as it is a question of fact. Although it is true that materiality is

11 often an issue of fact, courts are still permitted to, and do, dismiss cases for failure to plead

12 materiality in situations where reasonable minds cannot differ. *See In re Stac Electronics Sec.*

13 *Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996).

14          The SEC next claims that an allegation that financial statements violated GAAP

15 by itself establishes materiality. That argument is far broader than the case law. The SEC still

16 must allege facts that show how each alleged false statements attributed to Mr. Jasper affected

17 the Company's financial statements and state facts to suggest that they "were material in light of

18 the company's overall financial position." *Sparling v. Daou (In re Daou Sys.)*, 411 F.3d 1006,

19 1016-17 (9th Cir. 2005). The Amended Complaint does not suggest that the alleged

20 misstatements were more than technical violations, such that there is a substantial likelihood that

21 a reasonable investor would have considered the information important in making an investment

22 decision. *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). Although the SEC argues in

23 conclusory fashion that the misstatements affected profitability and resulted in an overstatement

24 in income,[6] the Amended Complaint makes clear that the alleged violations relate to stock option

25

26 [6]  The SEC alleges that Maxim overstated its net income by 10 percent during the years 2003-
       2005 by failing to properly account for the non-cash charges associated with option
27     accounting. FAC ¶ 36. Plaintiff, however, has not alleged facts to suggest how this affected
       the Company's overall financial position or whether it would have been viewed as important
28

1    accounting, which had no impact on past, present, or future cash flows of the Company.  FAC

2    ¶¶ 2, 36; *see also* Request for Judicial Notice, Ex. D (noting that the restatement effects non-cash

3    items).   Moreover, the SEC has not alleged how the alleged wrongful conduct made **each** false

4    statement attributed to Mr. Jasper –each 8-K, each 10-Q, etc. – materially false and misleading.

5           Finally, the SEC argues that the false and misleading statements were

6    "qualitatively material," because they concealed the true amount of management compensation

7    or bear on the integrity of management.  But again, there are no facts pleaded showing exactly

8    what was wrong, by whom and in what amount.  We have no qualms with the general idea of

9    qualitative materiality, but it is not a magic phrase that permits the SEC to avoid pleading basic

10   fraud-with-particularity facts.

11       **D.    The Statute Of Limitations Requires That The Majority Of The SEC's
              Claims And Allegations Be Stricken**

12

13          Mr. Jasper also requests that this Court dismiss, or strike claims and allegations

14   that alleged to have occurred prior to December 4, 2002 as they fall outside of the statute of

15   limitations, 28 U.S.C. § 2462.  The SEC acknowledges, of course, that much of the conduct

16   occurred more than five years before the filing of this action.  The SEC argues, however, that:

17   (1) its claims cannot be dismissed under 12(b)(6) where some of the conduct the claims are based

18   upon fall within the statute; (2) equitable tolling should apply; and (3) even if the claims

19   themselves are barred, it may still pursue equitable relief.  We will respond to each.

20          First, the SEC suggests that if some of the conduct with which the claims are

21   predicated on falls within the statute of limitations, then the claims cannot be dismissed under

22   Rule 12(b)(6).  That is true.  But Mr. Jasper is not asking that entire claims be dismissed on

23   limitations grounds if some of the alleged conduct occurred within five years of the filing of the

24   complaint.  Rather, Mr. Jasper moves to dismiss and strike claims and allegations based entirely

25   on conduct outside of the statute of limitations, such as claims predicated on alleged false

26   statements in SEC filings prior to December 4, 2002.

27          to a reasonable investor.  It is also worth noting that Plaintiff has not alleged facts to suggest
            that Mr. Jasper was aware of this purported over-reporting of net income.

28

CARL W. JASPER'S REPLY ISO MOTION TO
DISMISS AND STRIKE

1    In the backdating context, many courts have rejected attempts to avoid the effects

2  of the statute of limitations by combining recent allegations with conduct which is time-barred,

3  which the SEC tries to do here.  For example, in *In re Affiliated Computer Servs. Deriv. Litig.*,

4  the court rejected plaintiffs argument that those of its claims which were based on allegations

5  outside of the statute of limitations should be tolled holding that, a claim "under § 10(b) that is

6  based upon the backdating itself accrues on the date the option grant was made."  No. 3:06-CV-

7  1110-M, 2007 U.S. Dist. LEXIS 92401, at *13 (N.D. Tex. Dec. 13, 2007) (citations omitted); *see

8  also Stoll v. Ardizzone,* No. 07 Civ. 00608(CM), 2007 U.S. Dist. LEXIS 75769, at *2 (S.D.N.Y.

9  Oct. 9, 2007).[7]

10    Second, the SEC now asks this Court to rule that alleging fraud is sufficient to toll

11  the statute of limitations.  However, to apply equitable tolling, the SEC must plead (as opposed

12  to argue) particularized facts that Mr. Jasper actively concealed the alleged fraud.  *See Kay v.

13  Wells Fargo & Co. N.A.*, No. C 07-01351 WHA, 2007 U.S. Dist. LEXIS 55519, at *5 (N.D. Cal.

14  Jul. 24, 2007) ("To toll the statute of limitations, plaintiff must plead fraudulent concealment

15  with particularity.").  Fraudulent concealment "necessarily requires active conduct by a

16  defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent

17  the plaintiff from suing in time."  *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1171 (9th Cir.

18  2000).  Here, the Amended Complaint is completely devoid of allegations that suggest Mr.

19  Jasper actively covered up the alleged wrongdoing in an effort to prevent the SEC from timely

20  filing this action.[8]

21    Third, the SEC argues that even if the claims themselves are barred by the five

22  year statute of limitations, it is still permitted to pursue injunctive relief and other equitable

23  remedies based on conduct that falls outside the statute.  Recent case law from the Ninth Circuit

24  _____

25  [7]  Courts have also rejected the SEC's apparent argument (Opp. at 21) that the alleged option backdating scheme was a "continuing wrong" and therefore the statute of limitations should not apply.  *See, e.g., Stoll*, 2007 U.S. Dist. LEXIS 75769, at *2.

26  [8]  The fact that Mr. Jasper is now asserting his rights under the Fifth Amendment is irrelevant
27  to the issue of whether the statute of limitations should be tolled.  Plaintiff has conducted a lengthy investigation, and despite this fact, it failed to allege any facts to suggest Mr. Jasper
28  fraudulently concealed the wrongdoing.

1   makes clear, however, that where the underlying claim is barred by statute of limitations set forth

2   in 28 U.S.C. § 2462, claims for equitable relief based on the same conduct are also barred.  *See*

3   *FEC v. Williams*, 104 F.3d 237, 240 (9th Cir. 1996) ("Because the claim for injunctive relief is

4   connected to the claim for legal relief, the statute of limitations applies to both.").  It is clear that

5   the SEC's request for injunctive relief is connected to the underlying claim, and as a

6   consequence, the government is not entitled to seek equitable relief against Mr. Jasper for

7   conduct outside of the statute of limitations.

8          The SEC's claims based on false statements made prior to December 4, 2002

9   must therefore be dismissed and stricken.

10  **E.     The SEC's Requests For Disgorgement And Other Remedies Must Be
            Stricken**

11

12         **1.     The SEC Fails To Explain Why Section 304 Should Be Applied
                    Retroactively**

13

14         The SEC concedes that Section 304 of the Sarbanes-Oxley Act cannot apply

15  retroactively.  However, the SEC argues that while it cannot recoup bonuses and salary that

16  predate Sarbanes-Oxley (July 30, 2002) if the wrongful conduct occurred prior to the enactment

17  of the statute, it can still recoup any bonus and salary received by Mr. Jasper after the statute was

18  passed.  Opp. at 21.  In making this argument, the SEC ignores the basic presumption against

19  retroactivity.  Statutes cannot be applied retroactively absent a clear indication to the contrary

20  from Congress.  *See Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 922 (9th Cir. 2001) (noting

21  that the aversion to retroactivity is grounded in "elementary considerations of fairness").  Courts

22  have already determined that Sarbanes-Oxley was not intended to have retroactive application.

23  *See In re AFC Enterprises, Inc. Deriv. Litig.*, 224 F.R.D. 515, 521 (N.D. Ga. 2004) ("There is no

24  'clear indication' from Congress that this forfeiture provision of the Sarbanes-Oxley Act was

25  intended to have retroactive application to misconduct which occurred before its effective

26  date.").

27

28

1              Indeed, courts have rejected the exact argument the SEC now makes.  For

2    instance, in *In re Goodyear Tire & Rubber Co. Deriv. Litig.*, 5:03CV2180, 2007 U.S. Dist.

3    LEXIS 1233, at \*25 (N.D. Ohio Jan. 5, 2007), the district court stated the following:

4           Section 304 … still would not apply to the vast majority of the
       alleged wrongful conduct about which the Plaintiff complains,

5           because that alleged conduct took place prior to the statute's
       enactment in July 2002.  Nothing in the text of Section 304

6           suggests retroactive application of any of its provisions.

7    *Id.*  The SEC fails to reconcile this case with its attempt to artificially lengthen the reach Section

8    304.  If adopted, the SEC's argument would allow it to unfairly pursue forfeiture actions against

9    individuals for conduct that occurred years, or even decades, before the statute's enactment.

10   Because there is no basis for this approach, the SEC's prayer for relief cannot be recovered as a

11   matter of law, and the request should be stricken from the Amended Complaint.  *See Survivor*

12   *Prods. LLC v. Fox Broad. Co.*, CV 01-3234 LGB (SH), 2001 U.S. Dist. LEXIS 25512, at \*12

13   (C.D. Cal. June 2001).

14         **2.**      **The SEC Is Not Entitled To Disgorgement As A Matter Of Law**

15             The SEC also argues that its request for disgorgement should not be stricken

16   because it "is inappropriate on a motion to dismiss."  Opp. at 21.  The SEC cites no authority for

17   this baseless proposition.  In fact, it is entirely proper to strike prayers for relief where such relief

18   is not available as a matter of law.  *See, e.g., Survivor Prods. LLC*, 2001 U.S. Dist. LEXIS

19   25512, at \*12 (striking plaintiff's prayer for treble damages); *Bureerong v. Uvawas*, 922 F. Supp.

20   1450, 1479 n.34 (C.D. Cal. 1996) ("A motion to strike may be used to strike any part of the

21   prayer for relief when the damages sought are not recoverable as a matter of law.").

22             In this case, the SEC is not entitled to disgorgement remedies as a matter of law.

23   The SEC has not alleged any facts to suggest that Mr. Jasper was unjustly enriched – a

24   prerequisite for disgorgement remedies.  *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1191 (9th

25   Cir. 1998) (the remedy of disgorgement is designed to "deprive a wrongdoer of unjust

26   enrichment, and to deter others from violating securities laws by making violations

27   unprofitable.").  Instead, the SEC argues that Mr. Jasper "profited handsomely from his

28   misconduct," because he, like nearly every other officer, received a salary, a bonus, and sold

1   some stock.  Opp. at 21.  But the SEC does not allege that Mr. Jasper's sale of stock was

2   somehow wrongful or that his salary, bonus, or options were tied to the alleged wrongdoing.

3   This is fatal to the SEC's request for disgorgement remedies.  *Compare* Pl.'s Opp. at 21 *with*

4   *SEC v. Todd*, No. 03-CV-2230 BEN (WMc), 2007 U.S. Dist. LEXIS 38985, at *53 (S.D. Cal.

5   May 30, 2007) (disgorgement considered unfairly punitive when there is no relationship between

6   the requested relief and the defendant's supposed unjust enrichment).[9]

7          Because the SEC has failed to allege facts demonstrating any form of unjust

8   enrichment by Mr. Jasper, its request for disgorgement should be stricken from the Complaint.

9   **III.    CONCLUSION**

10          We respectfully request that the Court hold the SEC to the same basic pleading

11  standards of any fraud plaintiff.  In doing so, the Court should dismiss all claims for pleading

12  failures.  Alternatively, the Court should strike all allegations beyond the single "example" that is

13  inside the statute of limitations period.

14  Dated:  March 17, 2008                    Respectfully submitted,

15                                            LATHAM & WATKINS LLP
                                              Steven M. Bauer
16                                            Robert E. Sims
                                              David M. Friedman
17                                            Risha N. Jamison
                                              Christopher W. Johnstone
18                                            Heather L. Thompson

19                                            By _____/S/_____

20                                            Risha N. Jamison
                                              Attorneys for Defendant
21                                            Carl W. Jasper

22

23

24

25  _____
      [9]  Plaintiff cites to *SEC v. Reyes,* No. C 06-04435 CRB, Slip Copy, 2008 WL 410614 (N.D.
26   Cal. Feb. 12, 2008) (Opp. at 21) for the proposition that a motion to strike disgorgement
     remedies in an option backdating case should be denied.  But in *Reyes* the issue was not
27   whether the SEC could pursue disgorgement remedies, but whether it alleged conduct not
     barred by the statute of limitations.
28