IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Securities and Exchange Commission, | NO. C 07-06122 JW |
| Plaintiff,<br>v.<br>Carl Jasper,<br>Defendant. | **ORDER GRANTING IN PART AND DENYING DEFENDANT'S MOTION TO DISMISS** |

## I. INTRODUCTION

The Securities and Exchange Commission ("SEC") brings this civil enforcement action against Carl W. Jasper ("Defendant") alleging, *inter alia*, violation of § 10(b) of the Securities Exchange Act of 1934 and various SEC rules. The SEC alleges that Defendant unlawfully backdated options grants and submitted false financial statements for Maxim Integrated Products, Inc. ("Maxim" or the "Company").

Presently before the Court is Defendant's Motion to Dismiss the First Amended Complaint. (hereafter, "Motion," Docket Item No. 16.) The Court conducted a hearing on April 7, 2008. Based on the papers submitted to date and oral argument, the Court GRANTS in part and DENIES Defendant's Motion to Dismiss.

## II. BACKGROUND

**A.      Factual Allegations**

In a First Amended Complaint filed on December 21, 2007, the SEC alleges as follows:

Defendant is the former Chief Financial Officer of Maxim. (First Amended Complaint ¶ 9, hereafter, "FAC," Docket Item No. 7.) From 2000 to 2005, he engaged in a

scheme to illegally backdate stock options granted to Maxim employees and directors. (<u>Id.</u> ¶ 1.) Defendant prepared numerous falsely dated option grant approval documents to create the appearance that options had been granted at the market price on an earlier date. (<u>Id.</u>) He then prepared numerous false financial statements that concealed millions of dollars in expenses from investors and significantly overstated the Company's income. (<u>Id.</u>)

**B.      Stock Option Granting, Dating and Pricing**

A stock option granted to an employee of a corporation allows the employee to purchase at some future date a specified number of shares of corporate stock at a specified price, called the "exercise price." If the exercise price is the same as the market price of the stock on the date the option is granted, the option is said to be "at-the-money." Under Generally Accepted Accounting Principles ("GAAP"), a company that grants an option "at-the-money" is not required to record the grants as compensation expenses. On the other hand, if the exercise price of the option is less than the market price of the stock on the date the option is granted, the options is said to be "in-the-money." Under GAAP, the company must record a compensation expense for the "in-the-money" option grant, equal to the difference between the exercise price and the market price of the stock on the date the option is granted. Walter L. Lukken and James A. Overdahl, Financial Product Fundamentals: A Guide for Lawyers § 18:2 (5th ed. 2004).

**C.      Stock Option Backdating**

"Stock option backdating" is a phrase that describes a practice in which the record of the option grant deviates from the actual grant date. A stock option is said to have been "backdated" if it was actually granted on one date, but the option itself is dated and is "recorded" on the books of the company as granted on an earlier date. Backdating a stock option is not necessarily improper. Backdating may be improper, however, if the practice misleads shareholders. For example, if the grant date of a stock option to an employee is backdated to a date when the market price was lower than the market price on the actual grant date, the option would be "in-the-money." If the company does not record and report a compensation expense as required by GAAP, any subsequently issued

financial statement would be misleading. See 6 Bromberg & Lowenfels on Securities Fraud § 17:1 (2d ed. 2007).

**D.     Causes of Action**

On the basis of the allegations outlined in the First Amended Complaint, the SEC alleges eleven causes of action: (1) Fraud in violation of § 10(b) of the Exchange Act and SEC Rule 10b-5; (2) Fraud in violation of § 17(a)(1) of the Securities Act; (3) Fraud in violation of § 17(a)(2) and (3) of the Securities Act; (4) Filing false reports in violation of § 13(a) of the Exchange Act and SEC Rules 12b-20, 13a-1, 13a-11, and 13a-13; (5) Aiding and abetting the maintenance of false books and records in violation of § 13(b)(2)(A) of the Exchange Act; (6) Aiding and abetting inadequate internal accounting controls in violation of § 13(b)(2)(B) of the Exchange Act; (7) Falsifying books and records in violation of § 13(b)(5) of the Exchange Act; (8) Falsifying books and records in violation of SEC Rule 13b2-1; (9) Making false statements and omissions to accountants and auditors in violation of SEC Rule 13b2-2; (10) Making false certifications in violation of SEC Rule 13a-14; and (11) Filing false proxy statements in violation of § 14(a) of the Exchange Act and SEC Rule 14a-9.

Presently before the Court is Defendant's motion to dismiss.

**III.  STANDARDS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief can be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-534 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

1 However, mere conclusions couched in factual allegations are not sufficient to state a cause
2 of action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845
3 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim for relief
4 that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. __ , 127 S. Ct. 1955, 1974
5 (2007). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect
6 by amendment. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

## IV. DISCUSSION

8 Defendant moves to dismiss the First Amended Complaint on the grounds that (1) it fails to
9 adequately plead a securities fraud claim, (2) the claims are time barred, and (3) the request for relief
10 is not permitted by law. (Motion at 1-2.) The Court considers each issue in turn.

**A.     Adequacy of the Complaint in Pleading Securities Fraud Claims**

12 Defendant contends that the SEC has inadequately pleaded securities fraud because the First
13 Amended Complaint fails to (1) identify the circumstances of the alleged misrepresentations with
14 particularity, (2) allege scienter, and (3) show that the alleged misrepresentations were material.
15 (Motion at 5-8.)

16 The Private Securities Litigation Reform Act of 1995 ("PSLRA") imposes additional
17 pleading requirements on private litigants. For instance, under the PSLRA, plaintiffs must "state
18 with particularity facts giving rise to a strong inference" that the defendant acted with scienter. 15
19 U.S.C. § 78u-4(b)(2). However, these heightened pleading requirements do not apply to actions
20 brought by the SEC. See S.E.C. v. ICN Pharm., Inc., 84 F. Supp. 2d 1097, 1099 (C.D. Cal. 2000).
21 Rather, the SEC is only required to plead securities fraud claims in accordance with Federal Rule of
22 Civil Procedure 9(b). Id.

**1.     Fraud Allegations**

24 In dispute is whether the SEC has adequately pleaded the alleged misrepresentations.
25 Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting
26 fraud or mistake shall be stated with particularity." This means that a plaintiff must identify "the

4

circumstances constituting fraud" with sufficient particularity "so that the defendant can prepare an adequate answer." Walling v. Beverly Enterprises, 476 F.2d 393, 397 (9th Cir. 1973). To plead circumstances constituting fraud, a plaintiff must allege an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG, LLP, 476 F.3d 756, 764 (9th Cir. 2007); Fecht v. Price Co., 70 F.3d 1078, 1082 (9th Cir. 1995) (noting that the plaintiff must "set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading when made.").

A plain reading of the First Amended Complaint reveals that options backdating forms the basis for the falsity of many of the statements, but that the statements themselves are the alleged misrepresentations. For example, with respect to annual reports, the First Amended Complaint alleges as follows:

> Defendant "drafted, reviewed, and signed Maxim's annual reports filed on Forms 10-k for its 2000 through 2005 fiscal years." (FAC ¶ 35.) These annual reports overstated the Company's net income by more than 10 percent. (Id. ¶ 37.) Defendant knew the statements were false and misleading because he knew the company was not properly accounting for the backdated option grants. (Id. ¶ 36.)

These allegations clearly identify the time and place of the allegedly false statements because they allege that the Form 10-k annual reports for fiscal years 2000 through 2005 misstated the Company's income. The allegations clearly identify the parties to the misrepresentation because they allege that Defendant "drafted, reviewed, and signed" the reports. The allegations also identify why the statements were false because they state that the company's income was overstated by ten percent.

In addition, with respect to quarterly reports, the First Amended Complaint alleges as follows:

> Defendant reviewed the quarterly reports filed with the SEC for the quarters ended September 28, 2002 (filed November 8, 2002), December 28, 2002 (filed February 11, 2003), March 29, 2003 (filed May 12, 2003), September 27, 2003 (filed November 6, 2003), December 27, 2003 (filed February 5, 2004), March 27, 2004 (filed May 6, 2004), September 25, 2004 (filed November 4, 2004), December 25, 2004 (filed February 3, 2005), and March 26, 2005 (filed May 5, 2004). (FAC ¶¶ 38-39.) Defendant knew these reports were false because they did not properly account for compensation expenses related to backdated options. (Id.)

5

These allegations identify nine reports that are allegedly false and the dates on which they were filed. They further identify that Defendant was a party to the misrepresentation because he reviewed the reports. They also state why the reports were false; namely, because they didn't properly account for expenses related to option grants.

Similarly, with respect to current reports filed on Form 8-k, registration statements filed on Form S-8, proxy statements, and management verification letters, the First Amended Complaint alleges as follows:

> Defendant signed the current reports filed on April 29, 2003, August 12, 2003, October 28, 2003, February 5, 2004, April 27, 2004, August 6, 2004, November 1, 2004, February 1, 2005, and May 3, 2005. (FAC ¶ 40.) As Defendant knew, these reports contained false and misleading financial information because Maxim failed to record compensation expenses associated with undisclosed grants of "in-the-money" stock options. (Id.)
> Defendant signed registration statements for the sale of securities which were filed with the SEC on April 12, 2001, February 13, 2003, and April 24, 2005. (Id. ¶ 41.) Each of these statements incorporated by reference false annual, quarterly, and current reports. (Id.)
> Defendant drafted or reviewed Maxim's proxy statements which were filed with the SEC on August 19, 2004, and October 7, 2005. (Id. ¶ 42.) These proxy statements falsely represented that all of Maxim's stock options are granted at fair market value. Defendant knew these representations were false. (Id.)
> Defendant signed management representation letters to auditors in connection with Maxim's fiscal years ending June 24, 2000, June 29, 2002, June 28, 2003, and June 26, 2004, and quarters ending March 29, 2003, September 27, 2003, March 27, 2004, September 25, 2004, and December 25, 2004. (Id. ¶ 44.) Defendant understood that these statements were false because they did not disclose the repeated, concealed backdating. (Id.)

These allegations clearly identify the specific reports and filings alleged to be false, when they were made, why they were false, and Defendant's knowledge of their falsity. Thus, the Court finds that the First Amended Complaint adequately identified the circumstances of the alleged misrepresentations.

**2. Scienter Allegations**

In dispute is whether the SEC has adequately pleaded scienter.

Under Rule 9(b), "malice, intent, knowledge, and other conditions of mind of a person may be averred generally." To satisfy the requirements of Rule 9(b) with respect to scienter, plaintiffs need simply say that scienter existed.[1] Fecht, 70 F.3d at 1082 n.4.

---

[1] As noted above, the heightened pleading requirements of the PSLRA do not apply to a complaint brought by the SEC. ICN, 84 F. Supp. 2d at 1099.

In this case, with respect to scienter, the SEC alleges as follows:

> Defendant was aware that Maxim granted options on purported dates that had been selected with hindsight, which resulted in the issuance of undisclosed "in-the-money" options to Maxim employees and directors. (FAC ¶ 3.) Defendant also knew, or was reckless in not knowing, that Maxim was failing to report expenses for its "in-the-money" stock options and was falsely reporting that it only granted options at fair market value. (Id.)

The allegations state that Defendant knew that Maxim was not properly accounting for option grants. This supports the allegation that Defendant knew the reports, forms, and letters he allegedly prepared, signed, and submitted were false. Fecht, 70 F.3d at 1082 n.4. Thus, the Court finds that the SEC has adequately pleaded scienter.

### 3. Materiality Allegations

In dispute is whether the SEC has adequately pleaded the materiality of the alleged misrepresentations.

Sections 17(a) and 10(b) forbid the making of material misrepresentations, such as misstatements or omissions, in securities filings. 15 U.S.C. §§ 77q, 78j; 17 C.F.R. § 240.10b-5. Misrepresentations are material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988). Information relating to a company's financial position and profitability is generally material. See S.E.C. v. Murphy, 626 F.2d 633, 653 (9th Cir. 1980). "Determining materiality in securities fraud cases should ordinarily be left to the trier of fact." S.E.C. v. Phan, 500 F.3d 895, 908 (9th Cir. 2007).

The First Amended Complaint alleges that Defendant signed financial statements that misstated the company's income by more than 10 percent from 2000 to 2005. (FAC ¶ 37.) The First Amended Complaint further alleges that Defendant deliberately avoided the Company's internal controls and accounting mechanisms with respect to the misrepresentations. (Id. ¶¶ 23, 44.) The Court finds that these alleged misrepresentations are material because reasonable investors would consider intentional misconduct by the company's chief financial officer and a ten percent

1  overstatement of income significant in the making investment decisions. Thus, the First Amended
2  Complaint adequately alleges material misrepresentations.

3  Since the SEC has alleged material misrepresentations and scienter with the requisite
4  specificity, the Court finds that the SEC has adequately pleaded its securities fraud claims.
5  Accordingly, the Court DENIES Defendant's motion to dismiss on this ground.

6  **B.** **Statute of Limitations**

7  Defendant contends that the claims against him are barred by the statute of limitations.
8  (Motion at 9.)

9  If the expiration of the applicable statute of limitations is apparent from the face of the
10  complaint, the defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion to
11  dismiss. Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980). This is true even though
12  expiration of the limitations period is an affirmative defense because Federal Rule of Civil
13  Procedure Rule 9(f) "makes averments of time and place material for the purposes of testing the
14  sufficiency of a complaint." Suckow Borax Mines Consol. v. Borax Consol., 185 F.2d 196, 204 (9th
15  Cir. 1950).

16  An action by the government seeking the enforcement of any civil fine, penalty, or forfeiture
17  must be brought within five years from the date the claim accrued. 28 U.S.C. § 2462. However,
18  there is no implied statute of limitations applicable to SEC actions seeking equitable remedies, such
19  as disgorgement, or injunctive relief. S.E.C. v. Rind, 991 F.2d 1486, 1492 (9th Cir. 1993).

20  In this case, the SEC seeks both legal remedies, such as payment of a civil fine, and equitable
21  remedies, such as an injunction against future violations, an injunction against serving as an officer
22  or director of a public company, and disgorgement. (FAC at 20-21.) Under § 2462, the SEC's
23  claims seeking payment of a civil fine are limited to statements, reports, and representations made
24  within the five years preceding the First Amended Complaint. Since the First Amended Complaint
25  was filed on December 4, 2007, the SEC's legal claims are limited to those based on alleged
26  misrepresentations made after December 4, 2002. The First Amended Complaint alleges more than
27  thirty reports, statements, or filings that were made within this time period. (See Part IV.A.1, supra.)
28

Moreover, under Rind, the SEC's claims seeking equitable remedies are not barred by any statute of limitations. Thus, SEC's legal and equitable claims are timely.

The Court finds the SEC's claims are not barred by the statute of limitations. Accordingly, the Court DENIES Defendant's motion to dismiss on this ground.

**C.     The SEC's Entitlement to Remedies Requested**

Defendant contends that the SEC is not entitled to the monetary remedies of reimbursement and disgorgement. (Motion at 10.)

Under § 304 of the Sarbanes-Oxley Act, the SEC may require a chief financial officer to reimburse the corporation for any bonus or stock profits received if the corporation is required to prepare an accounting restatement due to material non-compliance under the securities laws. 15 U.S.C. § 7243. Section 304 was enacted on July 30, 2002. Pub. L. 107-204. The parties do not dispute that the SEC may not apply § 304 retroactively. Thus, the Court finds that the SEC may not seek reimbursement under § 304 for events that occurred prior to July 30, 2002.

The SEC is also authorized to seek disgorgement of profits realized from violations of the securities laws. S.E.C. v. Clark, 915 F.2d 439, 453 (9th Cir. 1990). Disgorgement is a remedy designed to force a defendant to surrender his unjust enrichment. Rind, 991 F.2d at 1493. A defendant may also be required to disgorge the profits of a third-party if the defendant's violation of the securities laws was intended to unjustly enrich the third-party. See Clark, 915 F.2d at 454.

In this case, the SEC alleges that Defendant received stock options and annual bonuses for filing false financial statements and reports. (FAC ¶ 46.) If these allegations are true, the SEC is entitled to seek disgorgement of Defendant's unlawfully obtained gains. Accordingly, the Court finds that the SEC has properly alleged that it is entitled to the remedy of disgorgement.

### V. CONCLUSION

The Court GRANTS in part and DENIES in part Defendant's motion to dismiss. The Court GRANTS Defendant's motion to the extent it seeks to strike the SEC's prayer for reimbursement under § 304 for events that occurred prior to July 30, 2002. The Court DENIES Defendant's motion on all other grounds.

In light of this Order, the Court VACATES the Case Management Conference currently set for October 6, 2008. The Court sets a Further Status Conference for **November 17, 2008 at 10 a.m.** The parties shall meet and confer about how to proceed with this litigation. The parties are referred to the assigned Magistrate Judge to develop a discovery plan consistent with the Court's April 2, 2008 Scheduling Order. (See Docket Item No. 30.) On or before **November 7, 2007**, the parties shall file a Joint Statement to update the Court on the status of the discovery. The November 17, 2008, conference may be vacated if the parties are working in good faith through the discovery plan developed in conjunction with the assigned Magistrate Judge

Dated: September 30, 2008

JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

David Michael Friedman david.friedman@lw.com
Erin E. Schneider schneidere@sec.gov
Heather Lynn Thompson heather.thompson@lw.com
Judith L. Anderson andersonju@sec.gov
Marc J. Fagel fagelm@sec.gov
Mark Philip Fickes fickesm@sec.gov
Risha Nickelle Jamison risha.jamison@lw.com

**Dated: September 30, 2008**          Richard W. Wieking, Clerk

                                       **By:   /s/ JW Chambers**
                                               **Elizabeth Garcia**
                                               **Courtroom Deputy**