**United States District Court**
For the Northern District of California

1

2                                    *E-FILED 5/26/2009*

3

4

5

6

7                              NOT FOR CITATION

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                             SAN JOSE DIVISION

11   SECURITIES AND EXCHANGE                No. C07-06122 JW (HRL)
     COMMISSION,
12                                          **ORDER GRANTING PLAINTIFF'S**
            Plaintiff,                      **MOTION FOR A PROTECTIVE ORDER**
13
        v.
14   CARL W. JASPER,                        **[Re: Docket No. 40]**

15            Defendant.
                                    /
16

17        The Securities and Exchange Commission ("SEC" or "Commission") moves for a

18   protective order precluding defendant Carl W. Jasper from proceeding with a Fed. R. Civ. P.

19   30(b)(6) deposition of the Commission.  Jasper opposes the motion.  Upon consideration of the

20   moving and responding papers, as well as the arguments of counsel, this court grants the

21   motion.

22                              **I.  BACKGROUND**

23        The SEC filed this lawsuit, alleging that Jasper violated federal securities laws by

24   participating in a scheme to illegally backdate stock options during his tenure as Chief Financial

25   Officer of Maxim Integrated Products, Inc. ("Maxim").  During the course of its pre-litigation

26   investigation, the SEC deposed a number of witnesses and later produced transcripts of those

27   depositions to Jasper.  At issue in the instant discovery dispute are statements made by two

28   individuals who reportedly were interviewed, but not deposed by the SEC before it filed this

**United States District Court**
For the Northern District of California

1    suit: (1) John Gifford, Maxim's former Chief Executive Officer and (2) Michael Byrd,

2    Maxim's Chief Financial Officer before Gifford. Both were identified as potential witnesses

3    over a year ago in the SEC's Fed. R. Civ. P. 26 initial disclosures. (Fickes Decl., ¶ 3). Gifford

4    died several months ago in January 2009.

5         During the course of discovery, and with the exception of a cross-notice for Gifford's

6    deposition (discussed more fully below), Jasper did not attempt to obtain discovery from either

7    Gifford or Byrd. Instead, he served document requests on the SEC, seeking, among other

8    things, "All documents that refer to, relate to, or reflect any communications, discussions,

9    statements, meetings, interviews, teleconferences involving" the SEC and Gifford and Byrd and

10   their attorneys. (Fickes Decl., Ex. A at 5 and 6). He also served interrogatories asking that the

11   SEC "[d]escribe in full all communications between the SEC" and Gifford and Byrd, or their

12   representatives, from May 2006 to the present. (Id., Ex. C at 3). The SEC says that, with

13   respect to Gifford, it produced all responsive, non-privileged documents. Other documents

14   memorializing the Commission's communications with Gifford or his counsel – i.e., notes

15   written by the SEC's attorneys and one of its staff accountants – have been identified on the

16   SEC's privilege log as attorney work product. (Jamison Decl., Ex. K). As for Byrd, the

17   Commission says that it is unaware of any non-privileged responsive documents that relate to

18   stock option practices at Maxim, but it agrees to continue to search for such documents and to

19   produce any that are found. The Commission answered Jasper's interrogatories by referring to

20   its document production. (Fickes Decl, Exs. C and D). Neither the Commission's document

21   production nor its interrogatory responses are at issue here.

22        In September 2008, the Commission served a notice for Gifford's deposition to take

23   place on January 29, 2009. However, as noted above, he died in early January before the parties

24   were able to agree on firm dates for his deposition.

25        Meanwhile, on December 9, 2008, Jasper served a Fed. R. Civ. P. 30(b)(6) deposition

26   notice on the Commission, seeking testimony from the SEC on the following two topics:

27        (1)   "Any and all statements made by John Gifford to the SEC regarding
              stock option practices and/or the alleged backdating of options at
28            Maxim Integrated Products, Inc." and

1       (2)     "Any and all statements made by Michael Byrd to the SEC regarding
2                stock option practices and/or the alleged backdating of options at
                 Maxim Integrated Products, Inc."

3   (Fickes Decl., Ex. E).  The SEC now moves for a protective order on the ground that the

4   deposition is merely an attempt by Jasper to intrude upon its attorneys' work product and

5   privileged communications.

6   ## II.  DISCUSSION

7        Upon a showing of "good cause," Fed. R. Civ. P. 26(c) authorizes courts "to protect a

8   party or person from annoyance, embarrassment, oppression, or undue burden or expense" in

9   discovery by "forbidding the disclosure or discovery" or "forbidding inquiry into certain

10  matters, or limiting the scope of disclosure or discovery to certain matters."  See FED. R. CIV. P.

11  26(c)(1)(A), (D).  The party seeking a protective order has the burden of showing that the

12  protection is warranted.

13       Preliminarily, the parties dispute whether Jasper really seeks to depose the

14  Commission's attorneys at all.  Jasper argues that a Fed. R. Civ. P. 30(b)(6) witness need not

15  have personal knowledge of the matters on which examination is sought.  Thus, he contends,

16  the SEC is free to designate and prepare any non-attorney to testify on its behalf.  Jasper adds

17  that he merely wants factual information as to what Gifford and Byrd told the SEC.  However,

18  rather than seeking testimony directly from Gifford or Byrd, the record presented indicates that

19  Jasper has devoted his energies in discovery to repeated attempts to ascertain what the

20  Commission has to say about what Gifford and Byrd said.  And, the Commission argues that

21  because its attorneys are most knowledgeable about the topics of examination, any witness that

22  is produced for deposition would necessarily have to be prepared by the Commission's

23  attorneys.  Thus, this court finds that what Jasper really seeks is the practical equivalent of an

24  examination of the SEC's attorneys.  See SEC v. Buntrock, 217 F.R.D. 441, 444 (N.D. Ill.

25  2003) ("The investigation in this matter was conducted by SEC attorneys and by SEC

26  employees working under the direction of attorneys.  Thus, the 30(b)(6) notice would

27  necessarily involve the testimony of attorneys assigned to this case, or require those attorneys to

28

United States District Court
For the Northern District of California

1   prepare other witnesses to testify."); see also SEC v. Rosenfeld, No. 97CIV1467, 1997 WL

2   576021, *2 (S.D.N.Y., Sept. 16, 1997) (same).

3          The Commission argues that this court should follow the three-part test set out by the

4   Eighth Circuit in Shelton v. Am. Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986).  In that

5   case, the court recognized that, while there is no prohibition against deposing an attorney of

6   record in a case, such depositions generally are disfavored.  It held that attorney depositions

7   therefore should be permitted only where the party seeking the deposition shows that (1) no

8   other means exist to obtain the information; (2) the information sought is relevant and

9   nonprivileged; and (3) the information is crucial to the preparation of the case.  Shelton, 805

10  F.2d at 1327.

11         Defendant disagrees and urges this court to adopt a somewhat more flexible standard

12  espoused by the Second Circuit in In re Subpoena Issued to Dennis Friedman, 350 F.3d 65 (2d

13  Cir. 2003) and followed by a district court in this circuit in Younger Mfg. Co. v. Kaenon, Inc.,

14  247 F.R.D. 586 (C.D. Cal. 2007).  This approach also recognizes that while attorneys of record

15  are not automatically insulated from being deposed, it is nonetheless "a circumstance to be

16  considered."  Younger Mfg. Co., 247 F.R.D. at 588.  Under this framework, the court is to

17  consider several factors, including (1) the need to depose the lawyer, (2) the lawyer's role in

18  connection with the matter on which discovery is sought and in relation to the pending

19  litigation; (3) the risk of encountering privilege and work product issues; and (4) the extent of

20  discovery already conducted.  Id.

21         The parties have not cited binding precedent; and, this court notes that Shelton generally

22  is recognized as the leading case on attorney depositions by a number of district courts within

23  this circuit, including several within this district.[1]  Nevertheless, even under the Younger

24  standard urged by Jasper, this court concludes that the requested deposition of the Commission

25  is not warranted.

26

27         [1]     See, e.g., Massachusetts Mutual Life Ins. Co. v. Cerf, 177 F.R.D. 472, 479
    (N.D. Cal., 1998); Fausto v. Credigy Servs. Corp., No. C07-05658, 2008 WL 4793467 (N.D.
    Cal., Nov. 3, 2008); Graff v. Hunt & Henriques, No. C08-0908, 2008 WL 2854517 (N.D.
28  Cal., July 23, 2008); Nocal, Inc. v. Sabercat Ventures, Inc., No. C04-0240, 2004 WL
    3174427 (N.D. Cal., Nov. 15, 2004).

4

United States District Court

For the Northern District of California

1    With respect to Byrd, Jasper claims that he has no choice but to proceed with plaintiff's

2    deposition.  However, the record shows that he has never sought discovery of Byrd's statements

3    from Byrd himself.  At oral argument, defendant acknowledged that (a) his "need" as to Byrd is

4    not the same as it is with respect to Gifford; and (b) he can depose Byrd directly to obtain the

5    information he wants, rather than seeking the information secondhand from the SEC.

6    As for Gifford, this court is unpersuaded by Jasper's assertions that he seeks only the

7    factual contents of Gifford's statements.  Instead, it appears that what defendant really seeks is a

8    probing examination as to Gifford's (reconstructed) statements through the recollections of the

9    SEC counsel who are prosecuting this matter – recollections which this court finds are not

10   easily segregated from those attorneys' thoughts, mental impressions, opinions or conclusions

11   about this case.[2]  Indeed, Jasper's own papers indicate that he wants to obtain discovery as to

12   "[t]he SEC's state of knowledge at the time it filed the Maxim and Jasper complaints –

13   including what it learned from Mr. Gifford . . .."  (Opp. at 6).  Here, Jasper says that he needs

14   the SEC's testimony in order to develop a judicial estoppel defense.  In essence, Jasper

15   contends that the SEC has taken inconsistent positions by alleging in the instant action that he

16   engaged in intentional misconduct, while claiming in the lawsuit filed against Maxim and

17   Gifford that Gifford did not.  The SEC maintains that there is nothing suspect about its

18   allegations and that it has simply alleged different levels of culpability as between Jasper and

19   Gifford.  It is not for this court to decide upon the validity of Jasper's defense.  Suffice to say

20   that for discovery purposes and on the record presented, this court is unpersuaded that the stated

21   need for the SEC's deposition outweighs the SEC's interest in protecting its attorneys' work

22   product.

23   Jasper nonetheless argues that, in view of Gifford's death a few months ago, he has no

24   choice but to now proceed with a deposition of the SEC.  But the record indicates that at no

25   time did Jasper attempt to seek discovery from Gifford directly, save for an eleventh-hour

26

27   _____

      [2]      Because this court concludes that a deposition of the SEC would
28   unnecessarily intrude upon SEC counsel's work product, it does not reach the SEC's
     alternate arguments that the requested testimony is also protected by the governmental
     deliberative process privilege and the "settlement privilege."

"cross-notice" for his deposition, which reportedly was served in late December 2008 only after the Commission advised that it would be filing the instant motion. (Mot. at 3 n.1; Fickes Decl. ¶ 4). Moreover, while it may not be ideal, Gifford's attorneys are an alternate source of the information Jasper seeks.

### III. ORDER

Based on the foregoing, IT IS ORDERED THAT the SEC's motion for protective order is GRANTED.

Dated:   May 25, 2009

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**United States District Court**
For the Northern District of California

6

**United States District Court**
For the Northern District of California

**5:07-cv-6122 Notice has been electronically mailed to:**

Christopher William Johnstone chris.johnstone@lw.com, #sfdocket@lw.com, sara.higgins@lw.com

David Michael Friedman david.friedman@lw.com, #sfdocket@lw.com, sara.higgins@lw.com

Erin E. Schneider schneidere@sec.gov

Heather Lynn Thompson heather.thompson@lw.com, #sfdocket@lw.com, gina.tercero@lw.com, Judy.Thomason@lw.com

Judith L. Anderson andersonju@sec.gov, alcairoe@sec.gov, johnstonj@sec.gov

Marc J. Fagel fagelm@sec.gov

Mark Philip Fickes fickesm@sec.gov, alcairoe@sec.gov, dewingm@sec.gov, huangw@sec.gov, johnstonj@sec.gov, maguirep@sec.gov

Risha Nickelle Jamison risha.jamison@lw.com, #sfdocket@lw.com

Robert Lootfi Tashjian tashjianr@sec.gov, alcairoe@sec.gov, johnstonj@sec.gov

Steven Bauer steve.bauer@lw.com, #sfdocket@lw.com, doreen.griffin@lw.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program**.